**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1]<br><br>             Debtor. | Chapter 11<br><br>Case No:  21-20687 (JJT)<br><br>July 16, 2021 |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING DEBTOR TO (I) CONTINUE INSURANCE COVERAGE AND
INSURANCE PROGRAMS ENTERED INTO PREPETITION AND SATISFY
PREPETITION OBLIGATIONS RELATED THERETO; (II) RENEW, AMEND,
SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES;
AND (III) GRANTING RELATED RELIEF**

The Norwich Roman Catholic Diocesan Corporation, debtor and debtor-in-possession in

the above-captioned chapter 11 case (the "Debtor" or the "Diocese"), through the instant motion

(the "Motion") hereby moves the pursuant to sections 105(a), 363, and 1112(b) of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and final orders:  (i)

authorizing but not directing the Debtor to continue administering the Insurance Programs (as

defined herein) for the Debtor and Participating Entities (as defined herein) in the ordinary course

of business consistent with past practices; (ii) authorizing but not directing the Debtor to continue

funding all premiums, contributions, reserves, and service fees related to Insurance Coverage (as

defined herein) and receiving reimbursement for same; (iii) authorizing but not directing the

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Diocese of Norwich.  The last four digits of the Debtor's federal tax identification number are 7373.

Debtor to renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business; (iv) authorizing but not directing the Debtor to pay any and all amounts related to the Insurance Programs that remain unpaid on the Petition Date; and (v) granting related relief.  This Motion is supported by the *Declaration of Rev. Peter J. Langevin Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed with the Court.  Proposed forms of interim order (the "Proposed Interim Order") and final order (the "Proposed Final Order") granting this Motion are attached as **Exhibits A and B** hereto.  In further support of the Motion, the Debtor states as follows:

## INTRODUCTION

1.      The Debtor is a Roman Catholic diocese in Connecticut and a small part of New York founded in 1953 by Pope Pius XII, encompassing Middlesex, New London, Windham and Tolland counties in Connecticut, as well as Fisher Island, New York.  The Most Reverend Michael R. Cote, D.D. has been the Bishop of the Diocese since May 14, 2003.  Monsignor Leszek T. Janik is the Diocese's Vicar General.

2.      On July 15, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      No trustee or examiner has been appointed and the Debtor continues to operate and manage its assets and affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      Information regarding the Debtor's history, business operations and structure, and the events leading up to this chapter 11 case is set forth in the First Day Declaration, which was filed on the Petition Date and is incorporated herein by reference.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### The Diocese and Its Mission

7.      The 51 parishes located within the Debtor's geographic region (the "Parishes") play a central role in the lives of Catholics by administering key aspects of the Catholic Faith, including: baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services, and support.  Each of the Parishes is a nonprofit organization separately incorporated under the laws of the State of Connecticut.  None of the Parishes are debtors herein. As more fully described below, the Debtor provides certain administrative services to the Parishes.

8.      The Debtor also provides services for three high schools within its geographic region:  Mercy High School Corporation; Xavier High School Corporation of Middletown; and Saint Bernard School of Montville, Incorporated (the "High Schools").  Each of the High Schools is a nonprofit organization separately incorporated under the laws of the State of Connecticut. None of the High Schools are debtors herein.

9.      And the Debtor provides services for several charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves (the "Other Catholic Entities"), which include The Annual Catholic Appeal, Inc.; St. Vincent de Paul Place, Norwich, Inc.; St. Vincent DePaul, Middletown, Inc.; Diocese Of Norwich Outreach To Haiti, Inc.; Norwich Diocesan Cemetery Corporation; Catholic Charities, Diocese of Norwich, Incorporated; Holy Apostles College and Seminary, Inc.; Holy Family Home

and Shelter, Inc.; St. Joseph's Living Center, Inc.; St. James School Associations, Inc.; and Saint John Paul II School.  The Other Catholic Entities are not debtors herein.

10.     Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth the First Day Declaration.

## RELIEF REQUESTED

11.     In the ordinary course of business, the Debtor maintains various forms of insurance coverage (the "Insurance Coverage") for itself and certain of the Parishes, High Schools, and Other Catholic Entities within the geographic bounds of the Diocese (the "Participating Entities").  In order to maintain appropriate and cost-effective Insurance Coverage, the Debtor maintains certain insurance policies and participates in a risk-sharing pool (the "Insurance Programs").

**The Insurance Programs**

12.     The Debtor and Participating Entities are insured for property, general liability, bodily injury, sexual misconduct, flood, and other liability through the Catholic Mutual Relief Society of America ("Catholic Mutual"), a pooled self-insurance fund for Catholic organizations in North America.[2]  Depending on the type of liability and subject to certain terms, coverage limits, and exclusions, Catholic Mutual provides coverage for the Debtor and Participating Entities through its pooled self-insurance fund and various reinsurance arrangements.

13.     The Debtor's annual premium to provide coverage for itself and the Participating Entities through Catholic Mutual for the coverage year beginning July 1, 2021, is $1,178,742.[3]

---

[2] Catholic Mutual is a nonprofit organization classified under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.  It is not an insurance company.
[3] The Debtor is considering adding cyber-risk coverage, which could potentially increase the premium for the coverage year.

14.     In addition to an annual premium, Catholic Mutual participants must meet certain thresholds in the pooled self-insurance fund, which are calculated on an annual basis.  Depending on the status of the fund in each particular coverage year, the Debtor may be required to contribute money into the fund or entitled to receive a distribution from the fund.  For coverage year 2021, the required contribution amount is $41,116.  This amount is included in the 2021 premium above.

15.     Subject to certain terms, coverage limits, and exclusions, The Travelers Indemnity Company ("Travelers") provides automobile coverage for the Debtor and the Participating Entities.  The annual premium for automobile coverage for the coverage year beginning July 1, 2021, is $80,298.

16.     Subject to certain terms, coverage limits, and exclusions, the Debtor has a WorldRisk Foreign Commercial Package Policy through American International Group, Inc. ("AIG," and with Catholic Mutual and Travelers, the "Insurance Providers"), which it obtained through insurance broker the Gowrie Group ("Gowrie").  The annual premium for this policy for the coverage year beginning July 1, 2021 is approximately $5,426, which the Debtor pays through Gowrie.

**Other Insurance-Related Expenses**

17.     Catholic Mutual also provides risk management services, including an assigned risk manager, for the Debtor and Participating Entities.  The annual service fee (the "Risk Management Fee") for these risk management services is $138,000, paid in semi-annual installments.  The Risk Management Fee is mandatory and must be paid in order for the Debtor and the Participating Entities to continue to receive coverage.

18.     The Debtor is required to pay deductibles and other out-of-pocket costs up to certain amounts on a per-occurrence basis (the "Insurance Deductibles").  The Debtor budgets a reserve

to cover any such costs and pays the first $25,000 of out-of-pocket expenses for any claims made by the Debtor or the Participating Entities.  For the coverage year ending June 2021, the Debtor paid approximately $261,436 in out-of-pocket costs related to various claims covered by the Insurance Programs.

19.    The Debtor funds the premiums for the Insurance Coverage, any contributions to the pooled self-insurance fund, any reserves, and any service fees and other fees related to the Insurance Programs from (a) its own budget for Insurance Coverage and (b) billing each Participating Entity a portion of the total cost for Insurance Coverage on a monthly basis.  The amount billed to each Participating Entity takes various factors into account in order to fairly allocate costs and risk and ensure sufficient funding.

20.    By this Motion, the Debtor requests entry of the Proposed Interim Order and Proposed Final Order, pursuant to sections 105, 363 and 1112(b) of the Bankruptcy Code, authorizing but not directing the Debtor in the ordinary course of business to (i) continue administering the Insurance Programs for the Debtor and Participating Entities in the ordinary course of business consistent with past practices; (ii) continue funding all premiums, contributions, reserves, and service fees related to Insurance Coverage and receiving reimbursement for same; (iii) renew, amend, supplement, extend, purchase, or terminate Insurance Coverage in the ordinary course of business; and (iv) pay any and all amounts related to the Insurance Programs that remained unpaid on the Petition Date.

**Request for Authority for Banks to Honor and/or Reissue Checks**

21.    The Debtor also requests that the Court authorize the Debtor's banks and financial institutions (the "Banks"), when requested by the Debtor in the Debtor's sole discretion, to process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtor's bank accounts

to pay all prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date.  A listing of the Debtor's relevant accounts is attached to *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Continued Use of the Debtor's Cash Management System, Bank Accounts and Business Forms and (II) Granting Related Relief* filed contemporaneously herewith.

22.     Accordingly, by this Motion, the Debtor seeks (a) authorization for, and/or ratification of, its Banks' honoring of prepetition Insurance Coverage and Insurance Program checks and transfers on or after the Petition Date; (b) authorization for its Banks to process and honor all other checks issued for payments approved by this Motion; and (c) authorization for the Debtor to reissue checks for payments approved by this Motion where the applicable check is dishonored postpetition.

<b>BASIS FOR RELIEF REQUESTED</b>

I.     <u>**Insurance Coverage is Required by the Bankruptcy Code and U.S. Trustee Guidelines**</u>

23.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  In addition, in many instances, the Insurance Coverage is required by the regulations, laws, and contracts that govern the Debtor's activities, including the operating guidelines issued by the Office of the United States Trustee (the "<u>U.S. Trustee Guidelines</u>").  Accordingly, permitting the Debtor to continue maintaining its Insurance Coverage and amend, extend, renew, or replace its Insurance Coverage as needed, in its judgment, without further order of the Court is essential to the Debtor's estate and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines have the authority to supplement.

II.    **Section 363(c)(1) Permits the Debtor to Maintain Its Insurance Coverage and Make Expenditures Related Thereto in the Ordinary Course of Business**

24.    Section 363(c)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing.  In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that a debtor "show that a sound business purpose justifies such actions."  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as opposed to a decision made arbitrarily or capriciously), courts generally will not entertain objections to the debtor's conduct." *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3rd Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

III.    **The Court May Authorize the Debtor to Maintain its Insurance Coverage and Make Expenditures Related Thereto Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

25.    Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine . . . permit[s] immediate payment of claims of

creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid") (citations and internal quotations omitted); *In re Chateaugay Corp.,* 80 B.R. 279, 285–87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts).  In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business.") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

IV.     **The Applicable Standards Permit the Court to Authorize Continuation of the Insurance Coverage and Insurance Programs**

26.     Here, the Insurance Programs provide an efficient, cost-effective way to procure necessary insurance for the Debtor and the Participating Entities.  Satisfying possible outstanding or future obligations related to the Insurance Programs is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity.

27.     The Debtor has routinely maintained Insurance Coverage and administered the Insurance Programs in the ordinary course of its operations and must continue to do on a going

forward basis in order to operate. Further, the Insurance Programs administered by the Debtor are typical for a Roman Catholic diocese of its size and include standard coverages for nonprofits such as the Debtor and the Participating Entities.

28.     Continuation of Insurance Coverage is essential to preserving uninterrupted operations and the value of the Debtor's estate and is in the best interest of the estate and its creditors. Failing to maintain Insurance Coverage would impair the Debtor's ability to operate and potentially violate U.S. Trustee Operating Guidelines and other applicable regulations and requirements, resulting in a material adverse effect on the Debtor and the value of the estate.

29.     In addition, because the Debtor carries Insurance Coverage and administers the Insurance Programs in the ordinary course of business, the Debtor submits that Court approval to continue existing policies, programs, and related payments postpetition is not necessary because of the authority granted by section 363(c) of the Bankruptcy Code. Nonetheless, out of an abundance of caution, the Debtor requests that the Court grant the relief requested in this Motion and enter an order authorizing the continuation of the Insurance Coverage and Insurance Programs as consistent with the Debtor's operating needs, and to permit, but not require, the Debtor, in its discretion, to continue the Debtor's practices, programs, policies, and plans for Participating Entities as those practices, programs, policies, and plans were in effect as of the Petition Date, as may be modified, terminated, amended, or supplemented from time to time hereafter.

30.     Courts have routinely approved the maintenance of existing insurance programs in a variety of similar chapter 11 cases. *In re Roman Catholic Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. March 16, 2020) [Dkt. No. 118]; *In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345 (Bankr. S.D.N.Y. Nov. 17, 2020) [Dkt. No. 165]; *In re The*

*Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. June 22, 2020) [Dkt. No. 176].

## V.    The Court Should Authorize the Debtor's Banks to Honor and Pay Checks and Make Other Transfers to Pay Amounts Related to the Insurance Coverage and Insurance Programs

31.     The Debtor anticipates having sufficient funds to pay the amounts on account of postpetition Insurance Coverage and Insurance Programs in the ordinary course of business using expected cash flows from ongoing operations.  In addition, under the Debtor's existing cash management system, the Debtor can identify readily whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.

32.     In connection with the relief requested in this Motion, the Debtor requests that the Court authorize: (a) the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtor in connection with payment of the claims the Debtor requests authority to pay in this Motion, without regard to whether any check or transfer was issued before or after the Petition Date; (b) the Banks to rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion, and that the its Banks shall not have any liability to any party for relying on such representations by the Debtor; and (c) the Debtor to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtor requests authority to pay in this Motion is dishonored or rejected by the Banks.

## VI.    The Requested Relief Satisfies Bankruptcy Rule 6003

33.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to

pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition. Fed. R. Bankr. P. 6003(b). Local Bankruptcy Rule 9013-2 similarly provides that requests for relief made "with less than seven (7) days' notice and prior to the earlier of the creditors' committee formation meeting or the Section 341 meeting of creditors" are "confined to matters required to avoid irreparable harm to the assets of the estate and to maintain ongoing business operations and such other matters as the Court may deem appropriate." D. Conn. Bankr. L. R. 9013-2(a).

34.     For the reasons set forth above and in the First Day Declaration, the relief requested is necessary for the Debtor to continue to operate in the ordinary course and maximize the value of its estate for the benefit of all stakeholders.  Further, any delay in granting the relief requested herein may cause immediate and irreparable harm.  Accordingly, Bankruptcy Rule 6003 and Local Bankruptcy Rule 9013-2 are satisfied.

**VII.     Cause Exists to Waive the Requirements of Bankruptcy Rule 6004(a) and (h)**

35.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the requirements of Bankruptcy Rule 6004(a) and (h).  Under Bankruptcy Rule 2002(a), notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with section 363(b)(2) of the Bankruptcy Code.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the immediate payment of any amounts related to Insurance Coverage is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize.

Accordingly, the Debtor submits that ample cause exists to justify a waiver of the notice requirements of Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

36.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

**NOTICE**

37.    Notice of this Motion will be provided to (a) the Office of the United States Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor's estate; (b) the Internal Revenue Service; (c) the Connecticut Department of Revenue Services; (d) the Participating Entities; (e) the Insurance Providers and Gowrie; and (f) any other party that has requested service pursuant to Bankruptcy Rule 2002 as of the time of filing of this Motion (collectively, the "Notice Parties"). A copy of this Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://dm.epiq11.com/RCDNorwich. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

38.     No previous request for the relief sought herein has been made by the Debtor to this

or any other court.

*Signature on next page.*

**WHEREFORE,** the Debtor respectfully requests that the Court enter the Interim Order, and after a final hearing, the Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  July 16, 2021

/s/  Patrick M. Birney
Patrick M. Birney (CT No. 19875)
Andrew A. DePeau (CT No. 30051)
Annecca H. Smith (*pro hac vice* pending)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-8275
Facsimile:  (860) 275-8299
E-mail:  pbirney@rc.com
           adepeau@rc.com
           asmith@rc.com

-and-

Louis T. DeLucia (*pro hac vice* pending)
Alyson M. Fiedler (*pro hac vice* pending)
**ICE MILLER LLP**
1500 Broadway, 29th Floor
New York, NY 10036
Telephone: (212) 824-4940
Facsimile: (212) 824-4982
E-Mail:  louis.delucia@icemiller.com
           alyson.fiedler@icemiller.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, a copy of the foregoing motion and the exhibits thereto were filed electronically and shall be served as required by Local Bankruptcy Rule 9013-2(b), with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system or by First Class U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties in interest may access this document through the court's CM/ECF System.

*/s/ Patrick M. Birney*
Patrick M. Birney