**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1]<br><br>Debtor. | Chapter 11<br><br>Case No:  21-20687 (JJT)<br><br>July 16, 2021 |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS; (II) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES; (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE; AND (IV) GRANTING RELATED RELIEF**

The Norwich Roman Catholic Diocesan Corporation, debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor" or the "Diocese"), through the instant motion (the "Motion") hereby moves the Court pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (I) approving the proposed form of adequate assurance of payment to Utility Providers (defined below); (II) establishing procedures for determining adequate assurance of payment for future utility services to Utility Providers; (III) prohibiting Utility Providers from altering, refusing, or discontinuing utility service on account of the commencement of this chapter 11 case or outstanding prepetition invoices, and (IV) granting related relief.  This Motion is supported by the *Declaration of Rev. Peter J. Langevin Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed with the Court.  A proposed form of order granting

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Diocese of Norwich.  The last four digits of the Debtor's federal tax identification number are 7373.

this Motion (the "Proposed Order") is attached as Exhibit A hereto. In further support of the Motion, the Debtor states as follows:

## INTRODUCTION

1. The Debtor is a Roman Catholic diocese in Connecticut and a small part of New York founded in 1953 by Pope Pius XII, encompassing Middlesex, New London, Windham and Tolland counties in Connecticut, as well as Fisher Island, New York. The Most Reverend Michael R. Cote, D.D. has been the Bishop of the Diocese since May 14, 2003. Monsignor Leszek T. Janik is the Diocese's Vicar General.

2. On July 15, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code

3. No trustee or examiner has been appointed and the Debtor continues to operate and manage its assets and affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Information regarding the Debtor's history, business operations and structure, and the events leading up to this chapter 11 case is set forth in the First Day Declaration, which was filed on the Petition Date and is incorporated herein by reference.

## JURISDICTION

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**The Utility Services and Utility Providers**

7. In the ordinary course of business, the Debtor incurs expenses for, among other things, electricity, natural gas, water, sewage, telecommunications, internet and data services, and

waste management (including trash and recycling) (the "Utility Services"). Five utility providers (collectively, the "Utility Providers") provide Utility Services to the Debtor directly or indirectly through a landlord, including those entities identified on Exhibit B hereto (the "Utility Service List").

8. The Debtor's day-to-day operations rely heavily on the provision of the Utility Services. Any interruption in the Utility Services could seriously disrupt the Debtor's ability to operate. It would also jeopardize the Debtor's restructuring efforts and, ultimately, creditor recoveries. Therefore, it is critical that utility services continue uninterrupted during this chapter 11 case.

9. On average, the Debtor spent approximately $10,673.00 per month on Utility Services for the 12-month period ending May 31, 2021. The Debtor has historically paid its Utility Providers on a regular and timely basis. As of the Petition Date, the Debtor understands that it is current with all Utility Providers, except for Utility Services that have not yet been billed, have been billed but are not yet due, and have been paid with checks that have not yet cleared (the "Gap Period Obligations").

**Proposed Adequate Assurance**

10. Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse, or discontinue a debtor's utility service if the utility does not receive "adequate assurance of payment" from the debtor within thirty (30) days after the commencement of the debtor's chapter 11 case. Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1).

11. The Debtor intends to pay all Gap Period Obligations and ongoing postpetition utility obligations owed to the Utility Providers for Utility Services in a timely manner and projects that its cash on hand and future cash flow will be sufficient to pay such obligations to Utility Providers in the ordinary course of business. Further, each Utility Provider that currently holds a deposit will be entitled to retain that deposit as security. The Debtor contends that the assurances detailed in this paragraph (the "Proposed Adequate Assurance") satisfy the requirements of section 366.

**Proposed Adequate Assurance Procedures**

12. The Debtor further requests the authority to implement the following procedures if a Utility Provider believes it is entitled to additional or different adequate assurance based on its individualized circumstances (the "Adequate Assurance Procedures").

13. The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while allowing the Debtor to continue its operations uninterrupted.

14. Under the proposed Adequate Assurance Procedures, the Debtor will fax, e-mail, serve by overnight mail, or otherwise expeditiously cause a copy of this Motion and the Proposed Order, which include the proposed Adequate Assurance Procedures, to be served on each Utility Provider within two business days after entry of the Proposed Order.

15. Any Utility Provider seeking additional assurance of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") so that it is actually received by the following parties (collectively, the "Adequate Assurance Notice Parties") at the following addresses:

      a. Proposed counsel for the Debtor:

           i. Ice Miller LLP, 1500 Broadway, 29th Floor, New York, NY 10036, Attn: Louis DeLucia and Alyson Fiedler, louis.delucia@icemiller.com; alyson.fiedler@icemiller.com;

           ii. Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT 06103, Attn: Patrick M. Birney, pbirney@rc.com

16. Any Additional Assurance Request must (a) be in writing, (b) set forth the location for which Utility Services are provided, (c) include a summary of the Debtor's payment history relevant to the affected account(s), including the amounts of any security deposits, and (d) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

17. If a Utility Provider fails to serve an Additional Assurance Request on the Adequate Assurance Notice Parties, under the proposed Adequate Protection Procedures, such Utility Provider shall be (a) deemed to have received adequate assurance of payment satisfactory to such Utility Provider in compliance with section 366 of the Bankruptcy Code, and (b) prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtor on account of the commencement of the Debtor's chapter 11 case or any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

18. Upon receipt of any Additional Assurance Request as provided herein, the Debtor shall have until the later of (a) 28 days after receipt of such Additional Assurance Request and (b) 30 days after entry of an order granting the Motion (the "Resolution Period"), or such other period as may be agreed to by the Debtor and the relevant Utility Provider, to negotiate a resolution to the Additional Assurance Request.

19. The proposed Adequate Protection Procedures would grant the Debtor, in its sole discretion and without further order of the Court, the authority to resolve any Additional Assurance

Request by mutual agreement with a Utility Provider, and in connection with any such agreement, in the Debtors' sole discretion, provide a Utility Provider with additional or alternative adequate assurance of future payment, which may include, but shall not be limited to, cash deposits, payments of an outstanding prepetition balance due to the Utility Provider, prepayments or other forms of security, in each case, without further order of the Court.

20. If the Debtor is not able to reach a resolution with a Utility Provider that has submitted an Adequate Assurance Request during the Resolution Period, the Debtor, during or immediately after the Resolution Period, will request a hearing to determine the adequacy of assurance of payment with respect to the Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

21. Pending resolution of such dispute at the Determination Hearing, under the proposed Adequate Protection Procedures, the relevant Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtor on account of the commencement of this chapter 11 case, any unpaid charges for prepetition services provided to the Debtor by the Utility Provider, or any objections to the Proposed Adequate Assurance.

**Subsequent Modifications**

22. The Debtor has made a good faith effort to identify Utility Providers and include them on the Utility Service List. Nonetheless, to the extent that the Debtor subsequently identifies additional Utility Providers, the Debtor seeks authority, in its sole discretion, to amend the Utility Service List to add or remove any Utility Provider before or after entry of an order by the Court granting this Motion. If the Debtor is granted such authority, it will file any such amended Utility Service List with the Court on an as-needed basis.

23. The Debtor further requests that the Court's order on this Motion be deemed to apply to any such subsequently identified Utility Provider, regardless of when such Utility

Provider is added to the Utility Service List. The Debtor will cause a copy of this Motion and the Proposed Order hereon to be served on any such Utility Provider subsequently added to the Utility Service List. Subsequently added Utility Providers may make Additional Assurance Requests in accordance with the Adequate Assurance Procedures.

24. The Debtor proposes that any Utility Provider subsequently added to the Utility Service List that objects to contents of the Proposed Order be required to, within 14 days of the filing of the modified Utility Service List adding such Utility Provider, file and serve an objection in accordance with the Bankruptcy Rules, the Local Bankruptcy Rules, and the Adequate Assurance Procedures.

25. The Debtor requests that all Utility Providers, including Utility Providers subsequently added to the Utility Service List, be prohibited from altering, refusing, or discontinuing utility services to the Debtor absent further order of the Court.

**Request for Authority for Banks to Honor and/or Reissue Checks**

26. The Debtor also requests that the Court authorize the Debtor's banks and financial institutions (the "Banks"), when requested by the Debtor in the Debtor's sole discretion, to process, honor and pay any and all checks or electronic fund transfers drawn on the Debtor's bank accounts to pay all prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date. A listing of the Debtor's relevant accounts is attached to *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Continued Use of the Debtor's Cash Management System, Bank Accounts and Business Forms and (II) Granting Related Relief* filed contemporaneously herewith.

27. Accordingly, by this Motion, the Debtor seeks (a) authorization for, and/or ratification of, its Banks' honoring of prepetition checks and transfers to Utility Providers on or after the Petition Date, (b) authorization for its Banks to process and honor all other checks issued

for payments approved by this Motion, and (c) authorization for the Debtor to reissue checks for payments approved by this Motion where the applicable check is dishonored postpetition.

## BASIS FOR RELIEF

### I. Relief is Appropriate under Section 366 of the Bankruptcy Code

28. The Debtor submits that the Utility Providers will be adequately assured of payment for future services by the relief requested herein. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtor would pay for postpetition services. *See In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *3 (Bankr. E.D. Va. Jan. 14, 2009) (citing H.R. Rep. No. 95–595, at 350 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306). Accordingly, section 366 of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing. *See* 11 U.S.C. § 366(c)(2).

29. Section 366(c) of the Bankruptcy Code requires only that a utility's assurance of payment be "adequate." 11 U.S.C. § 366(c)(2). Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., Long Island Lighting Co. v. Great Atl. & Pac. Tea Co. (In re The Great Atl. & Pac. Tea Co.)*, Case No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *Steinbach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . . '[A] Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition

services.'") (quoting *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an absolute guarantee of payment.") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co., v. Caldor, Inc.*, 117 F.3d 646 (2nd Cir. 1997).

30. When considering whether a given assurance is "adequate," a court should examine the totality of the circumstances to make an informed decision as to whether the utility provider will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)). In determining the requisite level of adequate assurance necessary, bankruptcy courts should "focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (citations omitted); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3rd Cir. 1972) (affirming bankruptcy court ruling that deposits were not necessary where such deposits could "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

31. Whether a utility company is subject to an unreasonable risk of nonpayment for postpetition services and is, therefore, entitled to receive a deposit must be determined from the facts and circumstances of each case. Courts have recognized that, absent a prepetition default, section 366(b) of the Bankruptcy Code does not require a debtor to make deposits to utilities as a form of adequate assurance. *In re Pacific Gas & Electric Co.*, 271 B.R. 626, 644 (Bankr. N.D. Cal. 2002); *In re Caldor, Inc.*, 199 B.R. 1 (Bankr. S.D.N.Y. 1996), aff'd, 117 F.3d 146 (2d Cir. 1997); *In re Heard*, 84 B.R. 454 (Bankr. W.D. Tex. 1987).

32. Based upon the foregoing, the Debtor asserts that the Utility Providers have adequate assurance of payment. The Debtor is current on all payments to the Utility Providers that came due prior to the Petition Date. Further, the Debtor has sufficient resources to pay, and intends to pay, all valid Gap Period Obligations and postpetition obligations for Utility Services in a timely manner, and all Utility Providers will be permitted to retain as a deposit any security deposits they currently hold. The Debtor's reliance on utility services is vital to its Catholic mission and preserving the value of its assets, which provides the Debtor with a powerful incentive to stay current on its utility obligations. These factors justify a finding that the Debtor is not required to make any additional adequate assurance payments in this chapter 11 case. Considering the foregoing, the Debtor respectfully submits that the Proposed Adequate Assurance is more than enough to assure the Utility Providers of future payment.

33. Courts are permitted to implement reasonable procedures to effectuate the provisions of section 366 of the Bankruptcy Code. *Circuit City Stores, Inc.*, 2009 WL 484553, at *3. The Adequate Assurance Procedures proposed herein are reasonable and similar procedures have been approved in a variety of other cases, including cases before this court. *See, e.g., In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. May 11, 2020) [ECF No. 62] (approving procedures and form of adequate assurance substantially similar to those proposed herein); *In re Carla's Pasta, Inc.*, No. 21-20111-JJT (Bankr. D. Conn. March 1, 2021) [ECF No. 190] (approving procedures substantially similar to those proposed herein with an adequate assurance deposit based on partial month's estimated utilities).

34. Absent approval of the Adequate Assurance Procedures, Utility Providers could discontinue service thirty days after the Petition Date without warning if they claim they have not yet received a "satisfactory" adequate assurance payment. 11 U.S.C. § 366(c)(2). Under the

Adequate Assurance Procedures, however, any Utility Provider that fails to submit to the Adequate Assurance Notice Parties an Additional Assurance Request shall be deemed to consent to the Adequate Assurance Procedures and shall be bound by the order granting this Motion. *See In re Syroco, Inc.*, 374 B.R. 60, 61–62 (Bankr. D.P.R. 2007) (a utility provider's failure to object, respond, or make a counter-demand after receiving notice of a utilities motion and the hearings and orders thereon constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

35. The Adequate Assurance Procedures are necessary for the Debtor to effectuate its Chapter 11 strategy without unnecessary disruptions on account of discontinued utility services. If the Adequate Assurance Procedures are not approved, the Debtor could be blindsided by a Utility Provider unilaterally deciding that it is not adequately protected and either demanding an exorbitant payment to continue providing service or discontinuing service to the Debtor altogether. Such outcomes could seriously jeopardize the Debtor's operations and its ability to reorganize.

II. **The Court Should Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers**

36. The Debtor anticipates having sufficient funds to pay the amounts on account of postpetition Utility Services in the ordinary course of business using expected cash flows from ongoing operations. In addition, under the Debtor's existing cash management system, the Debtor can identify readily whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.

37. In connection with the relief requested in this Motion, the Debtor requests that the Court authorize: (a) the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtor in connection with payment of the claims the Debtor requests authority to pay in this Motion, without regard to whether any check or transfer was issued before or after the Petition

Date; (b) the Banks to rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion, and that the Banks shall not have any liability to any party for relying on such representations by the Debtor; and (c) the Debtor to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtor requests authority to pay in this Motion is dishonored or rejected by the Banks.

### III.     The Debtor Has Satisfied Bankruptcy Rule 6003(B)

38.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition. Fed. R. Bankr. P. 6003(b). Local Bankruptcy Rule 9013-2 similarly provides that requests for relief made "with less than seven (7) days' notice and prior to the earlier of the creditors' committee formation meeting or the Section 341 meeting of creditors" are "confined to matters required to avoid irreparable harm to the assets of the estate and to maintain ongoing business operations and such other matters as the Court may deem appropriate." D. Conn. Bankr. L. R. 9013-2(a).

39.     For the reasons set forth above and in the First Day Declaration, the relief requested is necessary for the Debtor to continue to operate in the ordinary course and maximize the value of its estate for the benefit of all stakeholders.  Further, any delay in granting the relief requested herein may cause immediate and irreparable harm.  Accordingly, Bankruptcy Rule 6003 and Local Bankruptcy Rule 9013-2 are satisfied.

## IV.     The Court Should Waive Bankruptcy Rules 6004(a) and (h)

40.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the requirements of Bankruptcy Rule 6004(a) and (h).  Under Bankruptcy Rule 2002(a), notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with section 363(b)(2) of the Bankruptcy Code.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the immediate payment of any amounts related to Utility Services is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the notice requirements of Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

41.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

42. Notice of this Motion will be provided to (a) the Office of the United States Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor's estate; (c) the Internal Revenue Service; (d) the Connecticut Department of Revenue Services; (e) the Utility Providers; and (f) any other party that has requested service pursuant to Bankruptcy Rule 2002 as of the time of filing of this Motion (collectively, the "Notice Parties"). A copy of this Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://dm.epiq11.com/RCDNorwich. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

43. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

(*Signature Page Follows*)

**WHEREFORE,** the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 16, 2021

                                               */s/  Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Andrew A. DePeau (CT No. 30051)
Annecca H. Smith (*pro hac vice* pending)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
          adepeau@rc.com
          asmith@rc.com

Louis T. DeLucia (*pro hac vice* pending)
Alyson M. Fiedler (*pro hac vice* pending)
**ICE MILLER LLP**
1500 Broadway, 29th Floor
New York, NY 10036
Telephone: (212) 824-4940
Facsimile: (212) 824-4982
E-Mail: louis.delucia@icemiller.com
    alyson.fiedler@icemiller.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 16, 2021, a copy of the foregoing motion and the exhibits thereto were filed electronically and shall be served as required by Local Bankruptcy Rule 9013-2(b), with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system or by First Class U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties in interest may access this document through the court's CM/ECF System.

                                                */s/ Patrick M. Birney*_____
                                                Patrick M. Birney