**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

In re:

**THE NORWICH ROMAN CATHOLIC**
**DIOCESAN CORPORATION,**

        Debtor.

Chapter 11

Case No. 21-20687 (JJT)

---

### UNITED STATES TRUSTEE'S OMNIBUS OBJECTION AND
### RESPONSES TO CERTAIN OF DEBTOR'S "FIRST DAY MOTIONS"

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through his undersigned counsel, submits the following objections and responses to certain "first day" motions filed by chapter 11 debtor The Norwich Roman Catholic Diocesan Corporation ("Debtor").

*Preliminary Statement*

The Debtor has filed three first day motions seeking expedited relief. While the United States Trustee does not oppose all of the relief requested, the United States Trustee does have some concerns. The overarching concern is that the Debtor has not provided sufficient information and explanation to justify much of the relief requested. The Debtor seeks the right to continue to use its pre-petition cash management system and to maintain its pre-petition financial accounts. The Debtor also seeks the right to pay and process payroll and benefits for not only employees of the Debtor, but employees of non-debtor entities connected to and involved with the Debtor. The Debtor also seeks to impose restrictions on publicly available information in this chapter 11 case.

1

*Procedural Background*

1.      On Thursday, July 15, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ECF 1.

2.      Upon information and belief, the Debtor operates and manages its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in this case.  The Debtor's proposed chapter 11 counsel are the law firms of Ice Miller, LLP and Robinson & Cole, LLP. ECF 1.

3.      The United States Trustee is in the process of soliciting creditor interest in the formation of an Official Committee of Unsecured Creditors ("Committee"). The United States Trustee currently anticipates forming a Committee.

4.      The Debtor's First Day Motions were filed after 7 pm on Friday, July 16, 2021 and are the following: (a) Motion to Pay Pre-petition Wages (ECF 13) (the "Payroll Motion"), (b) Motion to Maintain Cash Management System and Waive Section 345(b) Obligations (ECF 14) ("Cash Management Motion"), and (c) Motion for Special Noticing and Confidentiality Procedures (ECF 15) ("Confidentiality Motion"). [1]  The Payroll Motion, the Cash Management Motion and the Confidentiality Motion are hereafter collectively referred to as the First Day Motions. The Debtor requested expedited consideration of the First Day Motions. ECF 16.

5.      Also on July 16, 2021, the Debtor filed the Declaration of Rev. Peter J. Langevin in support of the First Day Motions ("Langevin Declaration"). ECF 12.

6.      On Saturday, July 17, 2021, the Court entered an order scheduling a hearing on the First Day Motions for 2:00 p.m. on July 21, 2021.

---

[1] The United States Trustee has abbreviated the names of each of the First Day Motions and has used capitalized terms herein as defined and used in the First Day Motions.

*First Day Motions*

7.      The United States Trustee submits the following response, comments and/or objections to the First Day Motions as set forth below:

**A.  <u>Payroll Motion (ECF 13)</u>**

The Payroll Motion seeks authority, but not the requirement, to pay pre-petition payroll, associated taxes, insurance, medical and retirement benefits, and other benefits ("Payroll/Benefits Administration").  The Payroll Motion discloses that the Debtor handles and/or funds the Payroll/Benefits Administration for multiple non-debtor entities, defined as the Participating Employers (*see* ECF 22 for list of Participating Employers). The Debtor seeks to continue such Payroll/Benefits Administration.  The United States Trustee has the following concerns:

(i)      **Lack of information:** The Payroll Motion provides a general overview of how its Payroll/Benefits Administration functions.  Upon a closer read, however, the Payroll Motion lacks sufficient information about the flow of money and leaves unanswered the important questions of exactly what monies it is holding, what non-Debtor monies it is holding and/or using, what monies it is paying on behalf of non-debtors to the non-debtors' employees, and what monies it is loaning and/or gifting/granting to non-debtors for their employees.  A payroll/wages motion is not a proper vehicle to request authority approve lending and/or gifting/granting to non-debtors for their employees and the Debtor should not be permitted to use the Payroll Motion as a mechanism to use estate funds to pay non-estate expenses, and certainly not on an expedited basis and prior to formation of a Committee. The Payroll Motion lacks sufficient detailed information to enable the United States Trustee, the Court, creditors and

3

parties in interest to understand the flow of money and does not provide the Court with a basis to grant all of the relief sought.

Additionally, the United States Trustee has made several requests for, but has not yet received, a detailed list of all of the payments the Debtor seeks authority to make. This list should include the following information: (a) identity of the payee (which list can use a method that protects the identity of the payee but provides sufficient detail to know the position of the payee and the employment status and employer of the payee), (b) the amount and nature of the payments proposed for the immediate pre-petition period after the last pre-petition payroll, (c) a list of all previously issued, but not negotiated, payments the Debtor made on account of payroll, benefits, etc. prior to the chapter 11 filing which will be allowed to be paid/negotiated post-petition (*see* Payroll Motion at paragraph 14). The list should identify any and all persons who will receive payments, regardless of the whether they are current employees, retired employees, active clergy, retired clergy, or inactive clergy. Absent a comprehensive list, the United States Trustee cannot fully evaluate the relief requested in the Payroll Motion, nor the Debtor's alleged compliance with Section 507(a)(4) and Section 507(a)(5) reported in paragraph 16 of the Payroll Motion.

(ii)    **Proposed Order issues:** The Proposed Order has language to which the United States Trustee objects as follows:

1.    *Amounts to be paid should be added to the Order:* The Proposed Order should be revised to contain specific figures of total authorized payment amounts for each category of payments and that the Debtor is limited to such amounts absent a further court order. Language should also be added to the Proposed Order which limits the payments to those set

forth in Section 507(a)(4) and Section 507(a)(5) and specifies that severance and bonuses shall not be paid.

2.    *Notice of what has been paid pursuant to the Payroll Motion:* The Proposed Order should be revised to include a paragraph that requires the Debtor, within a certain limited time following entry of the order on the Payroll Motion (the United States Trustee suggests 10 business days), to provide the United States Trustee with a list of what payments have been made so that the United States Trustee can evaluate compliance with the order prior to the entry of a final order on the Payroll Motion.

3.    *Notice of Final Hearing:* The Proposed Order should be revised to require notice of the Final Hearing on the Payroll to the creditors listed on the 20 Largest List (ECF 21).

B.  **Cash Management Motion (ECF 14)**

Pre-petition, the Debtor utilized a centralized cash management system that featured the Debtor receiving and using both Debtor and non-debtor monies. Pursuant to the Cash Management Motion, the Debtor seeks authority to continue the pre-petition system uninterrupted. Pursuant to the Cash Management Motion, the Debtor also seeks a waiver of its obligations under Section 345 to open and use debtor-in-possession accounts at approved depositories ("DIP Accounts"), as well as a waiver of its obligations to notify third parties of its status as a "Debtor-in-Possession" by noting the "Debtor-in-Possession" designation on its Business Forms (which includes checks). The Cash Management Motion presents several issues and concerns as discussed below:

(i)    **Financial accounts and waiver of Section 345 obligations**: As disclosed in the Cash Management Motion and in Exhibit C to same, the Debtor has eighteen financial

accounts ("Pre-petition Accounts"). Of these Pre-Petition accounts, (a) seven are at Peoples United Bank ("Peoples"), (b) seven are at Janney Montgomery Scott ("Janney"), and (c) four are at Morgan Stanley. The accounts at Janney and Morgan Stanley are investment accounts ("Investment Accounts"). The Debtor seeks to maintain all of the Pre-petition Accounts and seeks a waiver of its obligations to comply with Section 345(b).

Section 345(b) of the Bankruptcy Code provides that a debtor's funds shall be insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. 11 U.S.C. § 345(b). A debtor's funds may also be deposited in an entity that has posted a bond in favor of the United States or has deposited securities with the Federal Reserve Bank in an account maintained by the United States Trustee *Id.* As required by Section 345(b)(2), securities used as collateral must be of the kind specified in 31 U.S.C. § 9303. Section 9303 specifies that government obligations may be used as security. A "government obligation" in turn is defined in 31 U.S.C. § 9301(2) as a public debt obligation of the United States Government and an obligation whose principal and interest is unconditionally guaranteed by the government. In light of this definition, only United States Treasury bills, bonds, or notes are deemed to constitute acceptable securities for purposes of the authorized depository system. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294 (3d Cir. 1994). Both Section 345(b) and the United States Trustee's Operating Guidelines and Reporting Requirements (the "Guidelines") were promulgated to protect all creditors of bankrupt entities against the loss of estate funds deposited or invested by a debtor. The Guidelines require debtors to close pre-petition books and records and to open post-petition books and records so that interest parties may analyze and compare the pre-petition activities with post-petition activities, and also provides a line of demarcation so that

6

both debtors and interested parties can define pre-petition and post-petition payables and receivables.

A court may waive the requirements of Section 345(b) only upon the showing of "cause." 11 U.S.C. § 345(b). In determining whether cause exists, courts have applied a totality of the circumstances test, examining, as relevant here, the amount of investments involved, the safeguards in place, and the debtor's ability to reorganize in the event of institutional failure. *See In re Service Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *In re Ditech Holding Corp.*, 605 B.R. 10 (Bankr. S.D.N.Y. 2019). The following is a list of factors used in employing a "totality of circumstances" test:

(1)   The sophistication of the debtor's business;

(2)   The size of the debtor's business operations;

(3)   The amount of investments involved;

(4)   The bank ratings (Moody's and Standard & Poor) of the financial institutions where debtor-in-possession funds are held;

(5)   The complexity of the case;

(6)   The safeguards in place within the debtor's own business of insuring the safety of the funds;

(7)   The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(8)   The benefit to the debtor;

(9)   The harm, if any, to the estate, and

(10)    The reasonableness of the debtor's request for relief from § 345(b)
requirements in light of the overall circumstances of the case.

*In re Service Merchandise Co., Inc.*, 240 B.R. at 896.  The court in *In re Ditech*, 605 B.R. *supra*
at 22, applied these factors and found that the debtors "failed to establish 'cause' to excuse them
from collateralizing the [accounts] as required by section 345(b)…."

To the extent the Court permits the Debtor to maintain its pre-petition accounts at Peoples
notwithstanding the Guidelines, such accounts should be internally designated by Peoples as DIP
Accounts and appropriate collateral pledged. The Proposed Order should include language that
the accounts at Peoples shall be designated as DIP Accounts. The Debtor should also be
obligated to take steps to make sure that it does not permit payment of pre-petition obligations
that are not otherwise approved by the Court.

With respect to the Investment Accounts, the requested waiver of Section 345(b) is not
supported by sufficient evidence to enable the Court to determine that a waiver is appropriate.
According to information provided by the Debtor, the amount of the funds in the Investment
Accounts is significant, with a combined principal balance of more than $10.9 million. All of the
funds in these accounts are not FDIC protected and are not otherwise protected by a bond in
favor of the United States. The Debtor does not disclose what specific investments the
Investment Accounts hold, does not address the market risks of the Investment Accounts or
whether and to what extent the Debtor earns returns on the invested funds or whether there are
fees associated with the Investment Accounts. Moreover, the Debtor does not address whether
any other safeguards are in place to protect the estate in the event of institutional insolvency or
how the Debtor could reorganize if the funds in any of the Investment Accounts were lost.  To
permit the Debtor to maintain the Investment Accounts without any collateralization creates a

risk to the estate that may not be necessary or appropriate. More information is needed to evaluate the request for a waiver of Section 345(b).

In sum, the United States Trustee suggests that any waiver of Section 345(b) be on an interim basis limited to a 45-day period so that the Debtor can transition the Peoples accounts to DIP Accounts and the Debtor provide additional information such that the United States Trustee, the Court and other parties can further assess and evaluate the risks of the Investment Accounts, and determine if they are adequately protected.

### (ii)    Checking Account (paragraph 21 of ECF 14)

The Cash Management Motion at paragraph 21 seeks authority to continue to use a Checking Account at Peoples with an associated debit card.  Paragraph 2 of the Proposed Order, however, mistakenly refers to a "Credit Card Account" and contains language authorizing continued use of a "Credit Card Account."  The Proposed Order should be revised to address this error.

### (iii)    Possible Cash Collateral Issue

According to paragraph 25 of the Langevin Declaration (ECF 12), the Debtor gave mortgages to Farmington Bank and RBS on Debtor-owned real estate to secure loans made to Mercy High School and Xavier High School, respectively.  The Cash Management Motion does not address whether Farmington Bank and RBS have liens on cash collateral of the Debtor.  To the extent they do have liens on cash collateral of the Debtor, such liens need to be addressed before the Debtor uses cash and the Debtor should take appropriate steps to seek approval to use the cash collateral.

### C.  Confidentiality Motion (ECF 15)

The Confidentiality Motion seeks implementation of procedures for restricted and limited access to information in the Debtor's case.  A request to seal documents in a bankruptcy case is governed by 11 U.S.C. § 107 of the Bankruptcy Code and Fed R. Bank. P. 9018. Section 107 codifies the longstanding presumption and strong public policy favoring public access to court records.  The procedure to invoke the Court's power under Section 107 is provided in Bankruptcy Rule 9018.

The United States Trustee opposes certain provisions of the Proposed Order on the Confidentiality Motion:

(i)      *Redaction of all employee contact information*: The Confidentiality Motion at paragraph 13 asks to keep private and redacted from public view all contact information for all current and former employees. The Debtor seeks to redact this information from the creditor matrix, the schedules, and all pleadings (including affidavits of service). This relief is also in paragraph 2(a)(ii) of the Proposed Order.  The Confidentiality Motion cites risk of identity theft and case publicity as the reasons for the redactions, as well as other cases where it has been authorized. *See* ECF 15 at paragraphs 18-20. Wholesale redaction of contact information of employees, both current and former, is not appropriate. To the extent ordinary current or former employees are creditors, Schedule EF requires contact information and such information is not automatically entitled to protection from public view. Every debtor with employees might make the same argument about privacy and identity theft, but the reality is that the internet is full of address information and the bankruptcy forms require the information. To the extent that

10

certain specific current or former employees would be at increased personal risk if their contact information were made public, the Debtor should provide a limited list of those employees for consideration by the United States Trustee and the Court and should explain why those employees are deserving of greater privacy.

(ii)    *Requirement for the United States Trustee to request redacted items filed on the case docket:*  The Confidentiality Motion at paragraph 13(d) imposes a requirement that the United States Trustee affirmatively request copies of redacted documents in order to receive them. This relief is also in paragraph 2(d) of the Proposed Order.  Such a requirement is not appropriate in light of Section 107(c)(3) which gives the United States Trustee full access to all papers filed in a case docket, regardless of whether the item is sealed/redacted.  The Proposed Order should be revised to require that all documents filed on the docket are automatically provided to the United States Trustee promptly after filing via email in a full un-redacted form.

(iii)    *Publication of Notice of Commencement*:  The Confidentiality Motion and Proposed Order provide for an unreasonably limited publication of the Notice of Commencement. Further, the Confidentiality Motion and the Proposed Order are not consistent with each other as to the universe of publications – compare paragraph 24 of the Confidentiality Motion to paragraph 4 of the Proposed Order. Focusing on the Proposed Order, the Debtor proposes that the publication will be ONCE in "USA Today, National Catholic Register *or* National Catholic Reporter, and 'Hartford Courier.'" *See* Confidentiality Motion at Proposed Order at paragraph 4.  As a preliminary matter, the United States Trustee notes that it

should say Hartford Courant, rather than Hartford Courier.  The United States Trustee also notes, with concern, that Proposed Order does not propose to publish notice in the two papers that serve the Norwich, Connecticut and surrounding communities – namely the Norwich Bulletin and The Day. The United States Trustee asks that notice be published TWICE, and that the notice is also published in (a) *both* the National Catholic Register *and* the National Catholic Reporter, (b) in addition to USA Today and the Hartford Court, notice should be published in the Norwich Bulletin, The Day, and the New Haven Register, and (c) also on all of the Debtor's social media accounts, including but not limited to, Twitter and Facebook (the Debtor's website already has a section for the chapter 11 case which can easily be updated with the Notice of Commencement).

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Payroll Motion, the Cash Management Motion, and the Confidentiality Motion until such time as the issues raised herein are addressed, or alternatively limit the interim relief as requested by the United States Trustee, and grant such other relief as is appropriate.

Dated:  New Haven, Connecticut
      July 20, 2021

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE FOR REGION 2

By:    /s/ Holley L. Claiborn
        Holley L. Claiborn
        Trial Attorney
        Office of the United States Trustee
        Giaimo Federal Building, Room 302
        150 Court Street
        New Haven, CT 06510
        Holley.L.Claiborn@usdoj.gov
        (203) 773-2210
        Federal Bar No.: ct17216 (Connecticut)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served on all appearing parties via the Court's electronic case filing system and to the counsel listed below:

<u>Via ECF</u>

- Patrick M. Birney    pbirney@rc.com, ctrivigno@rc.com
- Andrew A. DePeau    ADEPEAU@RC.COM, RBANGHAM@RC.COM
- Suzanne B. Sutton    ssutton@cohenandwolf.com

<u>Via Email on July 20, 2021</u>

Louis DeLucia at <u>Louis.DeLucia@icemiller.com</u>
Alyson Fiedler at <u>Alyson.Fiedler@icemiller.com</u>

By:    <u>/s/ Holley L. Claiborn</u>
       Holley L. Claiborn