**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1] | Case No:  21-20687 (JJT) |
| Debtor. | RE:  ECF No. 138 |

**ORDER AUTHORIZING AND APPROVING**
**THE APPLICATION OF THE NORWICH ROMAN CATHOLIC DIOCESAN**
**CORPORATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION**
**AND EMPLOYMENTOF B. RILEY ADVISORY SERVICES AS**
**FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

Upon consideration of the *Debtor's Application to Retain and Employ B. Riley Advisory Services as Financial Advisor Effective as of the Petition Date* (the "Application"),[2] pursuant to section 327 of title 11 of the United States Code (the "Bankruptcy Code"), and the Weitz Declaration and Amended Weitz Declaration and any response(s) to the Application; and due and proper notice of the Application having been given; and it appearing that no other or further notice of the Application is required; and the Court having jurisdiction to consider the Application in accordance with 28 U.S.C. §§  157 and 1334; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief requested in the Application and provided for herein being in the best interest of the Debtor, its estate, and creditors; and after due deliberation and sufficient cause appearing therefor, and due and proper notice of the

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, also known as The Roman Catholic Diocese of Norwich.  The last four digits of the Debtor's federal tax identification number are 7373, and its mailing address is 201 Broadway, Norwich, CT 06360.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Application having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and the Court having held one or more hearings to consider the relief requested in the Application and all of the proceedings had before this Court; and all objections to the Application having been withdrawn, resolved, or overruled; and the Court having determined that the Legal and factual bases set forth in the Application, the Weitz Declaration, and the Amended Weitz Declaration establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED**.

2.      Pursuant to sections 327(a), 328, and 1107(b) of the Bankruptcy Code, the Debtor is hereby authorized to retain and employ B. Riley as financial advisor to the Debtor effective as of the Petition Date.

3.      As the Debtor's financial advisor, B. Riley is authorized to perform the following services:

> (a)      Provide the necessary oversight and assistance to the Debtor in the preparation of the various financial reporting requirements in this chapter 11 case;
>
> (b)      Meet regularly with the Debtor to address any matters related to the bankruptcy proceeding;
>
> (c)      Assist the Debtor in its communications and negotiations with any secured and unsecured creditors, including the Official Committee of Unsecured Creditors of The Norwich Roman Catholic Diocesan Corporation (the "Committee"), and their related legal and financial advisor professionals;
>
> (d)      Oversee and as needed prepare and/or monitor, and modify the Debtor's cash flow forecasts and bankruptcy-related budgets on a periodic basis in order to determine and/or validate the sources and uses of cash, borrowing availability (if applicable), and timing and extent of any financing necessary to support the Debtor during the chapter 11 case;

(e)     Provide oversight with regard to daily cash management activities and assist the Debtor with prioritizing disbursements within the Debtor's availability constraints;

(f)     Work with bankruptcy counsel to assist the Debtor in the preparation of the post- filing Monthly Operating Reports (MORs) and assist with statements and schedules that are typical in any bankruptcy proceeding;

(g)     Provide testimony in any chapter 11 proceeding as needed; and

(h)     Provide such other support as may be reasonably requested by the Debtor or Debtor's counsel that fall within B. Riley's expertise, experience, and capabilities that are mutually agreeable.

4.     B. Riley does not hold or represent an interest adverse to the Debtor's estate with respect to the matters upon which it is to be employed and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

5.     B. Riley shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's case as set forth in the Application and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court. To the extent B. Riley's Engagement Letter[3] provides for an "evergreen" $75,000 retainer (the "Retainer"), B. Riley shall not use any post-petition funds to either pay for its fees in advance or to replenish the Retainer.  B. Riley shall seek authorization from the Court for payment of any interim fees in the ordinary course and shall maintain the Retainer until the Court orders otherwise.

6.     The indemnification provisions set forth in the Engagement Letter are approved with the following modifications:  (a) the indemnification provisions shall be limited only to GlassRatner Advisory and Capital Group , LLC (d/b/a B. Riley Advisory Services) and shall not apply to any affiliates or other entities; (b) the indemnification provisions shall not be construed

---

[3] A redline copy of the Engagement Letter is attached hereto as Exhibit A.

as exculpation provisions and shall not preclude the Debtor from asserting any direct claims that it may hold against B. Riley; (c) all requests by B. Riley for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to this Court and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter (as modified by this Order) and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; and (d) in no event shall B. Riley be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, fraud or willful misconduct.

7.    B. Riley shall provide advance written notice to the Debtor and the United States Trustee prior to any increases in any of B. Riley's rates for services to be provided to the Debtor. No rate increase shall be effective unless approved by this Court.

8.    The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application.

9.    Notwithstanding anything to the contrary in the Motion, the Engagement Letter or its Terms and Conditions, the Debtor shall have no obligation to indemnify B. Riley, or provide contribution or reimbursement to B. Riley, for any claim or expense that is determined to have arisen solely from B. Riley's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (if any).

10.    To the extent the provisions of the Engagement Letter seek to limit B. Riley's fiduciary obligations and responsibilities, such provisions are not approved by this Court and shall be deemed stricken during the pendency of this case.

11.    To the extent the provisions of the Engagement Letter provide rights to B. Riley to terminate its representation of the Debtor, such provisions are not approved by this Court and shall

be deemed stricken during the pendency of this case.  B. Riley shall not withdraw from the case or terminate its representation without prior notice, a hearing, and authorization of the Court.

12.    This Court shall be deemed unconditionally exempt from terms of the representation and warranties provision in the Engagement Letter.

13.    Any arbitration provision contained in the Engagement Letter is not approved by this Court and shall be deemed stricken during the pendency of this case.

14.    During the pendency of this chapter 11 case, this Court shall retain exclusive jurisdiction with respect to all matters or disputes arising from or related to the implementation, interpretation or enforcement of this Order or the related Engagement Letter and its Terms and Conditions.  Notwithstanding anything to the contrary contained therein, this engagement, and the duties, rights and responsibilities of the parties thereunder, shall be governed by the United States Bankruptcy Code and the internal laws of the State of Connecticut, without giving effect to its conflict of law, forum selection, or arbitration provisions.

15.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated at Hartford, Connecticut this 17th day of September, 2021.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

**EXHIBIT A**
**(REDLINE ENGAGEMENT LETTER)**

Date:      February 3, 2021

To:        Norwich Roman Catholic Diocesan Corporation
           201 Broadway
           Norwich, CT 06360-4328
             Attn: Most Reverend Michael R. Cote, D.D.

From:    Perry Mandarino and Wayne Weitz

**RE:       Engagement Letter to Serve as Financial Advisor**

**Introduction**
This letter agreement (this "Agreement") confirms our understanding that Roman Catholic Diocese of Norwich (the "Diocese") is engaging GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley") as its Financial Advisor, including as Financial Advisor retained pursuant to Section 307 of the Bankruptcy Code upon the Filing of a Case by the Diocese under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code").  Perry Mandarino and Wayne Weitz will have overall engagement responsibility and report directly to you.  They will assign appropriate B. Riley staff to the matter as needed.

**Scope of Work**
Engagements such as this are dynamic, requiring a broad scope of services that may or may not be required as the matter progresses.  As such, the services may include the following:

- assist the Diocese in a review of its strategic options;
- assist the Diocese in developing financial projections and liquidity projections;
- assist the Diocese with negotiations with various stakeholders;
- assist the Diocese in implementing potential operational and/or strategic; enhancements;
- if a chapter 11 bankruptcy filing or similar insolvency proceeding is necessary:
    - assist the Diocese with First Day Order data collection;
    - assist the Diocese with financial reporting;
    - assist the Diocese in preparation of the statutory reporting requirements during the chapter 11 proceedings, including the statements of financial affairs and associated schedules and, during the pendency of the case, the Monthly Operating Reports (MORs);
    - assist with the preparation of reports for, and communications with, the Bankruptcy Court, creditors, and any other constituents;
    - review, evaluate and analyze the financial ramifications of proposed transactions for which the Diocese may seek Bankruptcy Court approval;
    - provide financial advice and assistance to the Diocese in connection with a sale transaction;
    - assist the Diocese in developing and supporting a proposed Plan of Reorganization; and/or
    - render Bankruptcy Court testimony in connection with the foregoing, as required, on behalf of the Diocese;
- any other duty or task which falls within the normal responsibilities of a Financial Advisor at the direction of Management and/or Board.

**Compensation**
Our professional fees are based on the number of hours worked at our standard hourly billing rates. B. Riley's current standard hourly rates for the persons who may work on this engagement range from $150 to $675 per hour.  Standard rates for the various categories of B. Riley professionals that may be involved in this matter are as follows:

| Senior Managing Directors | $495-675 |
|---|---|
| Directors and Managing Directors | 295-525 |
| Associates, Sr Associates, Assoc Directors | 150-370 |

~~The hourly rates charged will increase by 5% on January 1st of each year during this Agreement.~~

Any future fee increases must be approved by the Bankruptcy Court.

Without prior authorization from the Diocese we will not bill for travel time or costs.  Reasonable out-of-pocket expenses incurred in connection with this engagement, and not related to travel shall also be reimbursed. Travel-related costs shall be reimbursed to the extent such expenses have been pre-authorized by the Diocese. The provisions of this paragraph shall not in any way limit the Diocese's obligations pursuant to the paragraph entitled "Indemnity" or Appendix I hereto. The above fees are not contingent on the outcome of the matter.

**Retainer/Billing**
We will require a retainer of $75,000. ~~This retainer is meant to be evergreen; invoices shall be applied against the retainer as they are rendered and payments shall replenish the retainer~~. To the extent the Diocese has not filed a chapter 11 insolvency proceeding, the Diocese agrees to replenish the retainer as requested.  At the end of the engagement, any retainer balance shall be applied to our final billing for this matter or refunded to the extent it exceeds unpaid billings. This retainer is not intended to be an estimate for the total cost of work that may be performed, nor have we provided such an estimate.  We are certain that you recognize that it is difficult to estimate the amount of time that this engagement may require.  The time involved depends upon the extent and nature of available information.  It also depends upon the developments that occur as our work progresses.  It is our intention to work closely with you to structure our work so that you are aware of the scope and direction of our work as it progresses.  Should the time demands increase, we may require an addition to our retainer.

B. Riley may bill for services as frequently as monthly, and invoices are payable upon receipt.~~We reserve the right to suspend service for non-payment, in which event we will not be liable for any costs that arise from such suspension.~~

**No Third Party Beneficiary**
The Diocese acknowledges that all advice (written or oral) given by B. Riley to the Diocese in connection with this engagement is intended solely for the benefit and use of the Diocese (limited to the ~~shareholders of the~~ Diocese, ~~the~~ Board and management) in considering the matters to which this engagement relates.

The Diocese agrees that, except as otherwise set forth herein, no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without B. Riley's prior approval (which shall not be unreasonably withheld), except as required by law.

**Conflicts**
B. Riley is not currently aware of any relationship that would create a conflict of interest with the Diocese or those parties-in-interest of which you have made us aware.  Because B. Riley is a consulting firm that serves companies on an international basis in numerous cases, both in and out of court, it is possible that B. Riley may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Diocese, including creditors of the Diocese.  If B. Riley becomes aware of any conflict or potential conflict during the engagement, B. Riley will promptly advise the Diocese of same in writing.

**Scope Limitations**

It is understood that B. Riley is not a public accounting firm and that Messrs. Mandarino and Weitz and their staff on this engagement are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.  In the course of their provision of the services specified in the scope of work, Messrs. Mandarino and Weitz and B. Riley are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Diocese. B. Riley will not be expressing an audit opinion on any of the financial or other data received in this engagement. B. Riley is not a law firm and will not provide legal or tax advice on any transaction or financing in conjunction with this assignment. B. Riley is not an investment banking firm and any investment banking services requested by the Diocese will be provided pursuant to a separate engagement letter with B. Riley Securities, Inc. ("BRS"), an affiliate of B. Riley, in form and substance acceptable to the Diocese and BRS.

**Employment by B. Riley**

Messrs. Mandarino and Weitz and other team members will continue to be employed by B. Riley and while rendering services to the Diocese, continue to work with other personnel at B. Riley in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.

**Limitations**

All working papers and other materials created by us during this engagement are our property.  At the completion of our engagement, all of your documents will be returned to you at your request.  Unless we are notified otherwise, or unless you request the files to be returned to you, all documents in our possession may be destroyed one year from the completion of the settlement of the matter, or the passage of one year without our actively participating in the matter.

**Indemnification**

The Diocese agrees to indemnify B. Riley and the other Indemnified Parties, as defined in and in accordance with, the indemnification provisions set forth in Appendix I hereto, which is incorporated herein by this reference, and agrees to the other provisions of Appendix I hereto.  The obligations of the Diocese pursuant to this paragraph and Appendix I hereto shall survive any expiration or termination of this Agreement or B. Riley's engagement hereunder.

**Termination**

This Agreement may be terminated immediately by either party, in its sole discretion, for any reason whatsoever and without prior notice.  Upon termination of this Agreement, B. Riley shall be entitled to all fees and expenses incurred pursuant to this Agreement prior to notice of termination and shall be entitled to the remaining unpaid balance of any fee, subject to the dispute provision included in this letter, which is due and payable pursuant hereto; provided that if the Diocese contests the reasonableness of the fees and expenses incurred by B. Riley, in accordance with the dispute provision in this letter (i) the Diocese may withhold payment of such disputed fees and expenses until the dispute is resolved by the Bankruptcy Court, arbitrator, or settlement between the Parties; and (ii) the Diocese shall only pay to B. Riley the disputed amount determined as reasonable by the Bankruptcy Court, arbitrator, or upon agreement by the Parties. The termination of this Agreement shall not relieve the Diocese or B. Riley from the provisions of this Agreement (including Appendix I) relating to indemnification, contribution, limitation of liability, integration, settlement, the provisions relating to the payment of the fees, costs and expenses payable hereunder whether or not accrued prior thereto, confidentiality, the status of B. Riley as an independent contractor, the limitation on the use, reliance on and disclosure of B. Riley's  advice, limitation to whom B. Riley shall owe any duties, governing law and dispute resolution.

**Confidentiality**

B. Riley agrees, for a period of one year from the date hereof, not to disclose or permit the disclosure of any of the terms of this Agreement or any information relating to the project to be performed hereunder, provided that such disclosure may be made (a) to any person who is an officer, director or employee of B. Riley or its affiliates or advisors solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior written consent of the Diocese, or (c) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official.  In the event that B. Riley shall receive a request to disclose any of the terms of this Agreement under a subpoena or order, B. Riley shall, to the extent legally permissible, (i) promptly notify the Diocese, (ii) consult with the Diocese on the advisability of taking steps to resist or narrow such request and (iii) if disclosure is required or deemed advisable, cooperate with the Diocese, at the Diocese's sole cost and expense, in any attempt it may make to obtain an order or other assurance that confidential treatment will be accorded those terms of this Agreement that are disclosed. The confidentiality restrictions contained herein shall not apply to information that: (i) at the time of disclosure by the Diocese to B. Riley is, or thereafter becomes, generally available to the public, other than as a direct result of a breach by B. Riley of its obligations under this Agreement; (ii) prior to or at the time of disclosure by the Diocese to B. Riley was already in the possession of B. Riley or any of its affiliates; (iii) at the time of disclosure by the Diocese to B. Riley or thereafter, is obtained by B. Riley or any of its affiliates or advisors from a third party whom B. Riley reasonably believes to be in possession of the information not in violation of any contractual, legal or fiduciary obligation to the Diocese with respect to that information; or (iv) is or was independently developed by B. Riley or its affiliates or advisors, but not using or referencing the confidential information provided to B. Riley by the Diocese.

**Independent Contractor; No Fiduciary Duty**

~~The~~ Prior to the Bankruptcy Case, the Diocese acknowledges and agrees that B. Riley has been retained pursuant to this Agreement as an independent contractor and not as an agent or fiduciary to the Diocese or its shareholders, and any duties of B. Riley arising out of its engagement pursuant to this Agreement shall be contractual in nature and shall be owed solely to the Diocese. Each party disclaims any intention to impose any fiduciary duty on the other.  Upon the Filing of the Bankruptcy Case, the terms of this provision shall be modified by the Bankruptcy Code and Order retaining B. Riley.

**Representations and Warranties**

The Diocese is duly organized, validly existing and in good standing under the laws of the State of Connecticut and has the requisite power and authority to enter into and carry out the terms and provisions of this Agreement.

Nothing contained in the Diocese's charter documents, by-laws, or any other document, agreement, contract or instrument to which the Diocese is a party, to which the Diocese is subject, or in any order, judgment or settlement of any court or governmental agency to which the Diocese is bound conflicts with or in any way restricts or otherwise limits or conditions the Diocese's ability to enter into, and perform under, this Agreement and consummate the transactions herein.

Neither the entering into of this Agreement nor the consummation of the transactions contemplated herein will trigger any payment by the Diocese to a third party (including, but not limited to, any "tail" payments) or require the authorization, registration, qualification or approval of any government agency to which the Diocese is subject.

**Severability**

If any portion of this Agreement shall be held or made unenforceable or invalid by a statute, rule,

regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of the Agreement shall be severable.

### Integration

This Agreement contains the entire agreement and understanding between the parties hereto concerning this engagement. This Agreement supersedes and replaces all prior negotiations, estimates, proposed agreements, and/or agreements (oral and written) concerning B. Riley's services in conjunction with this engagement.

### Limitation of Liability

In no event shall B. Riley or any of its agents, affiliates, or contractors be liable for any incidental, indirect, special or consequential damages (including but not limited to lost profits) arising out of, or in connection with, this Agreement, whether or not such party was advised of the possibility of such damage.  ~~The liability limit of B. Riley and its affiliates, agents, or contractors shall in no event be greater than the aggregate dollar amount which the Diocese paid to B. Riley during the term of this Agreement, including any reasonable attorneys' fees and court costs.~~

### Governing Law; Dispute Resolution

~~The laws of the State of New York shall govern this Agreement and any controversy arising under it.  To the extent they are not resolved by the Bankruptcy Court, any disputes arising out of or relating to this Agreement, including for recovery of fees by B. Riley, shall be resolved by binding arbitration in accordance with the Commercial Rules of the American Arbitration Association (the "AAA"), and the AAA's Expedited Procedure shall be used where applicable. The arbitration shall be conducted through the AAA by a single arbitrator chosen from the AAA's panel of arbitrators. the Diocese and B. Riley agree that the arbitration shall take place in New York, NY. Judgment upon the award rendered by the arbitrator may be entered in any court having personal jurisdiction over the party responsible for payment under the award. The prevailing party in any dispute arising out of or relating to this Agreement shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs of arbitration, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy, and in any appellate proceedings as well.~~

### Conclusion

All correspondence to B. Riley should be directed to:
Wayne P. Weitz   (wweitz@brileyfin.com)
B. Riley Advisory Services
299 Park Avenue, 21st Floor
New York, NY 10171


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

If the arrangements described herein are acceptable to the Diocese and the services outlined are in accordance with your requirements, please sign and return a copy of this letter.  We look forward to working with you on this matter.

Yours very truly,

GLASSRATNER ADVISORY & CAPITAL GROUP LLC d/b/a B. Riley Advisory Services

_____                     Feb. 3, 2021_____
Wayne P. Weitz                                                                          Date
Senior Managing Director

Agreed and accepted:

Norwich Roman Catholic Diocesan Corporation


_____          _____
Most Reverend Michael R. Cote, D.D.                                     Date
Bishop


**B. Riley Wire Instructions:**
Wells Fargo Bank
San Francisco, Calif.
Beneficiary: B. Riley Advisory Services
Routing Number: 121 000 248
Account Number: 4208 220418

Reference:
Swift code for incoming international wires in US$: WFBIUS6S
Swift code for incoming international wires in foreign currency: WFBIUS6W

Wells Fargo Bank
Phone: 626-572-1530

**Appendix I**

The Diocese agrees to indemnify and hold harmless each of B. Riley, and B. Riley's affiliates and its and their respective members, managers, directors, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the reasonable costs for counsel or others (including employees of B. Riley, based on their then-current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent that it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such loss, claim, damage, liability or expense shall have primarily resulted from such Indemnified Party's gross negligence or willful misconduct.  The Diocese also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Diocese for or in connection with the engagement of B. Riley, except to the extent that it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any such liability for losses, claims, damages, liabilities or expenses primarily resulted from such Indemnified Party's gross negligence or willful misconduct. If the indemnification provided for in this Agreement is for any reason held unenforceable by or unavailable to an Indemnified Party, except to the extent such losses, claims, damages, liabilities or expenses primarily resulted from such Indemnified Party's gross negligence or willful misconduct, the Diocese agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable or is unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Diocese, on the one hand, and B. Riley, on the other hand, of the services contemplated by the Agreement or, (ii) if (but only if) the allocation provided for in clause (i) is for any reason unenforceable or unavailable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Diocese, on the one hand and B. Riley, on the other hand, as well as any other relevant equitable considerations. Notwithstanding the foregoing, and except in the case of gross negligence or willful misconduct, the Diocese expressly agrees that B. Riley shall not be required to contribute any amount in excess of the amount by which fees paid B. Riley hereunder (excluding reimbursable expenses) exceeds the amount of any damages which B. Riley has otherwise been required to pay. Except in the event a court of competent jurisdiction (not subject to further appeal) approves such settlement (whether or not over the objection of an Indemnified Party), the Diocese further agrees that it will not, without the prior consent of an Indemnified Party (which consent shall not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

The preceding paragraph shall be modified by the Final Order retaining B. Riley as the Diocese Financial Advisor entered in the Bankruptcy Case.  So long as the Bankruptcy Case remains pending and B. Riley retained as the Diocese Financial Advisor any conflict between this Appendix I and the Final Order, the Final Order shall prevail.