**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

In re:                                                                          **Chapter 11**

**THE NORWICH ROMAN CATHOLIC**
**DIOCESAN CORPORATION,**

                                                                          **Case No. 21-20687 (JJT)**

            Debtor.

---

### UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO
### THE FIRST INTERIM FEE APPLICATIONS OF DEBTOR'S PROFESSIONALS

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"),

through counsel, in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3)

and (a)(5), respectfully submits this objection and statement of concerns regarding the first interim

fee applications filed by all of the professionals retained by The Norwich Roman Catholic

Diocesan Corporation ("Debtor").[1]

### *Preliminary Statement*

The first interim fee applications for the Debtor's professionals reflect aggregate billings of

$1,225,471.00 for the three and a half month time period of July 15, 2021 to October 31, 2021.

The amounts billed by the Debtor's professionals are significant and, as discussed herein, invite

valid criticisms.  The time entries are often vague, excessive in certain respects, are for work done

that potentially did not benefit the Debtor's estate, as well as for work that is not appropriate for

the Debtor's estate to bear. Further, some of the expenses for which reimbursement is requested

---

[1] This objection raises any concerns the United States Trustee would have raised in regard
to the monthly compensation requests filed by the Debtor's professionals.

are not appropriate and/or not adequately explained. As described herein, the United States Trustee seeks reductions from the Debtor's professionals.

The Debtor's representatives have no objection to the fees requested, which is concerning given the size and scope of the fees. Based on the monthly reporting provided to the United States Trustee and the Committee by the Debtor as required by the final order on the Debtor's cash management motion (ECF 239), the Debtor has netted approximately $715,000.00 in post-petition income through October 2021 from the Debtor's primary income source of administration of insurance and benefits programs for non-debtors. Unfortunately, the cost of Debtor's professionals during this chapter 11 for that same period is a disproportionate total of $1,225,471.00 (175% of that net income).

### ***Procedural Background***

1.      On Thursday, July 15, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Petition Date").  ECF 1.

2.      The Debtor operates and manages its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

3.      The Debtor has retained the law firms of Ice Miller, LLP ("IM") and Robinson & Cole, LLP ("R&C") as its chapter 11 counsel. ECF 272, 256, 321.  Per their retention applications, Ice Miller and R&C are co-counsel to the Debtor. *Id.*

4.      The Debtor has employed GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services ("B. Riley") as its financial advisor. ECF 271. B. Riley is providing

accounting services, assistance with debtor reporting requirements and services relating to monitoring cash flow. ECF 138.

5.      The Debtor has employed Brown Jacobson P.C. as special counsel for corporate matters ("Brown Jacobson"). ECF 234.

6.      On July 29, 2021, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee"). ECF 90.  The Committee has employed the law firm of Zeisler & Zeisler, P.C. as its counsel ("Z&Z"). ECF 233. The United States Trustee filed a statement of no objection to the employment of Z&Z. ECF 161.

7.      The United States Trustee filed objections/responses to the employment of Ice Miller, R&C, Brown Jacobson, and B. Riley.  ECF 196, 197, 198, 199 ("UST Retention Objections"). The UST Retention Objections were primarily focused on a failure to disclose and the failure to address conflict issues.  *Id.* The United States Trustee also noted the expense of having two firms represent the Debtor.  To address and resolve the UST Retention Objections, as well as concerns of the Court, all of the Debtor's professionals filed additional disclosures and responses to the UST Responses Objections. ECF 175, 188, 191, 210, 211, 212, 213 and 214.

8.      R&C was initially approved on an interim basis, and ultimately on a final basis. ECF 256, 321.

### ***Compensation Requests***

9.      By order dated October 18, 2021, the Court authorized a monthly compensation process for retained professionals which allows professionals to receive 70% of requested monthly fees (with a 30% holdback) and 100% of requested expenses by filing a monthly fee statement ("Monthly Compensation Order"). ECF 314.  The Monthly Compensation Order provides for an

objection process. *Id.*

10.     As described below, the Debtor's professionals filed two sets of monthly compensation requests – one for July 15, 2021 to September 30, 2021 and one for October 2021. The Debtor's professionals also filed interim fee applications for the period of July 15, 2021 through October 30, 2021.

11.     By order dated November 22, 2021, the Court extended the deadline to object to the monthly fee requests to December 8, 2021.  ECF 390. The Court also set December 8, 2021 as the deadline to object to the interim fee applications. *Id.*

### *IM Fees*

12.     On November 1, 2021, IM filed a monthly fee statement seeking fees of $372,923.95 (70% of $532,748.50) and $13,006.21 in expenses for the period of July 15, 2021 through September 30, 2021. ECF 338. On November 8, 2021, IM filed an amended monthly fee statement that reduced its fee request to $361,572.50 (70% of $516,572.50). ECF 352. On November 15, 2021, IM filed a second amended fee statement that further reduced its fee request to $350,658.00 (70% of $500,940.00) ("IM Fee Statement"). ECF 367. The IM Fee Statement reflects total hours of 790.4 hours. *Id.*

13.     On November 15, 2021, IM filed its Second Monthly Fee Statement seeking fees of $90,286.00 (70% of $128,980.00) and expenses of $174.30 for the month of October 2021 ("IM October Statement"). ECF 370. The IM October Statement reflects total hours of 207.10. *Id.*

14.     On November 15, 2021, IM filed its First Interim Fee Application seeking fees of $629,920.00 and expenses of $13,180.51 ("IM First Interim"). ECF 374. The IM First Interim reflects total hours of 997.50, yielding an overall blended rate of $641.40. *Id.*

### *R&C Fees*

15.     On November 1, 2021, R&C filed a monthly fee statement seeking fees of $120,390.55 (70% of $171,986.50) and expenses of $2,321.09 for the period of July 15, 2021 through September 30, 2021 ("R&C Fee Statement"). ECF 335. The R&C Fee Statement reflects total hours of 382.4. *Id.*

16.     On November 15, 2021, R&C filed its Second Monthly Fee Statement seeking fees of $21,904.75 (70% of $31,292.50) and expenses of $115.36 for the month of October 2021 ("R&C October Statement"). ECF 371. The R&C October Statement reflects total hours of 64.5. *Id.*

17.     On November 15, 2021, R&C filed its First Interim Fee Application seeking fees of $203,279.00 and expenses of $2,436.45 ("R&C First Interim"). ECF 375. The R&C First Interim reflects total hours of 446.9 yielding an overall blended rate of $454.86. *Id.*

### *B. Riley Fees*

18.     On November 1, 2021, B. Riley filed a monthly fee statement seeking fees of $240,041.55 (70% of $342,916.50) and expenses of $76.53 for the period of July 15, 2021 through September 30, 2021 ("B. Riley Fee Statement"). ECF 337.  The B. Riley Fee Statement reflects total hours of 801.5. *Id.*

19.     On November 15, 2021, B. Riley filed its Second Monthly Fee Statement seeking fees of $30,752.75 (70% of $43,932.50) and expenses of $.60 for the month of October 2021 ("B. Riley October Statement"). ECF 368. The B. Riley October Statement reflects total hours of 111.7. *Id.*

20.     On November 15, 2021, B. Riley filed its First Interim Fee Application seeking fees of $386,849.00 and expenses of $77.13 ("B. Riley First Interim"). ECF 372. The B. Riley First Interim reflects total hours of 913.20, yielding an overall blended rate of $423.62. *Id.*

### *Brown Jacobson Fees*

21.     On November 1, 2021, Brown Jacobson filed a monthly fee statement seeking fees of $3,403.40 (70% of $4,862.00) and expenses of $186.00 for the period of July 15, 2021 through September 30, 2021 ("Brown Jacobson Fee Statement"). ECF 336. The Brown Jacobson Fee Statement reflects total hours of 44.2. *Id.*

22.     On November 15, 2021, Brown Jacobson filed its Second Monthly Fee Statement seeking fees of $392.70 (70% of $561.00) and expenses of $68.06 for the month of October 2021 ("Brown Jacobson October Statement"). ECF 369.

23.     On November 15, 2021, Brown Jacobson filed its First Interim Fee Application seeking fees of $5,423.00 and expenses of $254.06 ("Brown Jacobson First Interim"). ECF 373.

### *Overall Fees*

24.     Based on the monthly reporting provided to the United States Trustee and the Committee by the Debtor as required by the final order on the Debtor's cash management motion (ECF 239), the Debtor has netted approximately $715,000.00 in post-petition income through October 2021 from the Debtor's primary income source of administration of insurance and benefits for non-debtors.  The cost of Debtor's professionals during this chapter 11 for that same period, however, is a disproportionate total of $1,225,471.00 (175% of that net income).

25.    As discussed herein, the United States Trustee has objections and/or concerns about the reasonableness and appropriateness of the fees requested by IM, R&C, B. Riley, and Brown Jacobson, as well as certain expenses.

## LEGAL ARGUMENT

### A. Standards for Fee Applications

Section 330 authorizes payment to professionals retained by order of the Court.  11 U.S.C § 330 (a).  Section 330(a) allows a court to award "reasonable compensation for actual, necessary services rendered."  11 U.S.C. §330(a)(1)(A).   Section 330(a)(1) of the Bankruptcy Code specifically provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).  In determining reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> A.    the time spent on such services;
>
> B.    the rates charged for such services;
>
> C.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

7

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

E.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

F.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).[2]

Pursuant Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut, a fee applicant, must also, consider and follow L. Bankr. R. 2016-1 and the Court's guidelines set forth at Appendix D which require*, inter alia*, that a fee application contain the date of the order of appointment of the counsel, the terms and conditions of employment, the time period for the compensation request, a discussion of the status of the case, detailed time records, and provide, *inter alia*, information identifying the names and hourly rates of the professional, hours billed, and overall blended rate.  *See* L. Bankr. R. 2016-1 and Appendix D. Reimbursement of expenses requires itemization as to purpose, amount, dated incurred and supporting documentation.  *Id.*  Lastly, when preparing a fee application, counsel must also consider and follow the United States Trustee Fee Guidelines.  *See* Appendix A to 28 C.F.R. § 58.

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir.

---

[2] Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

8

1993).  To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought. *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)*, 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). This burden also requires the applicant to "demonstrate – not just recite – that the fees sought are reasonable, necessary and of benefit to the estate."  *In re Fibermark, Inc.,* 349 B.R. 385, 395 (Bankr. D. Vt. 2006).

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365, 371 (11th Cir. 1988). Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses). The Court must disallow requests for compensation for services that were not reasonably likely to benefit the debtor's estate or were not necessary to the administration of the case.  11 U.S.C. §330(a)(4)(A).

---

Fed. R. Bankr. P. 2016(a).

Lastly, the Court has an independent burden to review fee applications "'lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors.'" *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (quoting *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 844 (3d Cir. 1994)); *In re CCT Commc'ns, Inc.*, No. 07–10210 (SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010). Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself. *In re Temple Retirement Community, Inc.*, 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989). "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." *In re Child World, Inc.*, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) (citation omitted). In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." *In re Barron*, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987); *see, e.g., In re ACT Manufacturing, Inc.*, 281 B.R. 468, 474 (Bankr. D. Mass. 2002). At the interim fee stage, there is no legal entitlement or requirement for payment prior to the final fee award. *See In re Child World, Inc.*, 185 B.R. at 17.

## B.    Retention Applications

### a.   IM and R&C

Both IM and R&C spent considerable time preparing their respective retention applications. Not including any pre-petition time, IM spent at least 13.6 hours at a cost of $9,412.00 preparing its retention application. Not including any pre-petition time, R&C spent 26.6 hours at a cost of $8,986.00 preparing its retention application. It is possible that both firms may

10

have billed more, but due to the vagueness of some of the time entries it is hard to determine. As just one example, see page 33 of IM First Interim Statement where Attorney Torf billed 5.2 hours on July 15, 2021 for a variety of work including retention applications with no breakdown as to task.

Despite that considerable time and cost, neither IM nor R&C prepared retention applications that met the requirements of Section 327(a) and Rule 2014. The United States Trustee filed objections to both applications based on a number of disclosure issues (ECF 198 and 196) and both IM and R&C then spent significant time responding and addressing the deficiencies through supplemental pleadings, declarations, explanations, and, in some instances, conflict waivers (ECF 175, 210, 211, 212, 214). The cost of fixing the self-created issues was significant: (a) IM billed 3.0 hours at a cost of $4,160.50 to fix the IM retention; (b) IM billed 1.6 hours at a cost of $1,336 to fix the R&C retention; and (c) R&C billed 52.8 hours at a cost of $22,897.50 to fix their retention. The Debtor's estate and its creditors should not be required to pay for the cost of the cure. As such, the United States Trustee seeks a reduction of $5,496.00 from IM and $22,897.50 from R&C.

### b.  B. Riley and Brown Jacobson

The retention applications filed for B. Riley and Brown Jacobson were also deficient and prompted the United States Trustee to raise concerns, which included the failure to satisfy the disclosure obligations of Section 327(a) and Rule 2014 (ECF 197, 199). In response, B. Riley filed two supplemental declarations (ECF 188, 213) and Brown Jacobson filed one supplemental declaration (ECF 191).

Excluding pre-petition time and hearing time, B. Riley spent .7 hours at a cost of $472.50 preparing its retention application and spent 2.1 hours at a cost of $1,659.50 to address the disclosure deficiencies and other issues raised by the United States Trustee. Excluding pre-petition time and hearing time, IM also billed 3.6 hours at a cost of $2,862.00 for preparing the B. Riley retention and .6 hours at a cost of $477.00 addressing the deficiencies. Because the Debtor's estate and its creditors should not have to pay for corrective actions, the United States Trustee seeks a reduction of $1,650.00 from B. Riley and $500.00 from IM.

Excluding hearing time, Brown Jacobson spent 2.2 hours preparing its retention application and spent 3.5 hours to address disclosure deficiencies raised by the United States Trustee. Excluding hearing time, IM billed 4.7 hours at a cost of $3,283.00 for preparing the Brown Jacobson retention and 4.8 hours at a cost of $3,816.00 addressing the deficiencies. Because the Debtor's estate and its creditors should not have to pay for corrective actions, the United States Trustee seeks a reduction of $3,816.00 from IM. Given that Brown Jacobson bills only at $110.00 per hour, the United States Trustee does not seek a reduction from Brown Jacobson.

**C.    Excessive billing, expensive staffing, and vague time entries**

**a.    B. Riley**

*i.    Schedules*

The B. Riley First Interim reflects 147.3 hours at a cost of $63,705.50 to prepare the schedules and statement of financial affairs.  Of this approximately $55,000 was for the first set of schedules and statement of financial affairs.  From the United States Trustee's perspective, informed in part by the schedules and statement of financial affairs, such an amount appears to be disproportionate to the overall size and complexity of the Debtor's assets and debts. B. Riley has

12

the obligation to demonstrate its time and the resulting cost is reasonable and necessary. The United States Trustee disputes that fees are reasonable and seeks a reduction of half of the cost ($32,000).

ii.  *UST Fee Category*

The B. Riley First Interim contains a fee billing category titled "Analysis on behalf of the U.S. Trustee" (number 28) which includes 210.9 hours for a total of $90,256.50. This category can be found at pages 12 through 19. Many of the entries in this category are for required chapter 11 events that all debtors attend, such as the Initial Debtor Interview, the Section 341 Meeting and for work related to preparing for and attending same, as well as work on required reporting, such as monthly operating reports.  Further, there are entries for preparing the schedules and other documents required to be filed by a chapter 11 debtor, and for locating/reviewing documents that were needed to correct the schedules.  Some of the entries for such work are written as if they are requirements of the United States Trustee created by this case, when in fact the Bankruptcy Code and the Bankruptcy Rules set forth the Debtor's obligations to prepare and file complete and accurate schedules and statements of financial affairs, attend all required meetings, and file all required documents.

The majority of the entries in this category contain some kind of reference to the "UST" and "UST deliverables" or "UST request" or "info requested by the UST."  But many of the entries do not describe what documents or information is being reviewed, gathered, organized or analyzed. In connection with the Debtor's initial motions relating to cash management, insurance, payroll/benefits, the Debtor had the obligation to provide detailed information and explanations as to the specific relief it sought. In those filed motions, the Debtor's operations and programs of

13

funding and processing non-debtor insurance and benefits, as well as its processing of payroll for non-debtor entities, were not fully explained nor were they supported by attached documentation which clearly explained the flow of money, the accrued accounts receivable, and the accrued accounts payable so that a reviewer could assess the financial impact to the Debtor's estate. To understand the flow of money, the United States Trustee requested documents that are normally kept by debtors, such information are lists of accounts payable, accounts receivable, aging reports for same, payroll information, bank statements for investment accounts, and proof of insurance. The United States Trustee did not request documents or information that did not exist in the Debtor's records – and the majority of the information for accounts payable and accounts receivable should have been a function of running reports from accounting software.[3]

Ultimately, the Debtor provided information that demonstrated that the Debtor was engaged in the business of advancing funds for non-debtors for certain insurance and benefits programs and then collecting from those non-debtors and that, historically, not all non-debtors paid what they owed.  To the extent that B. Riley analyzed and reviewed information and created charts/summaries to support the motions filed by the Debtor, such work was not done at the insistence of the United States Trustee and such work is not justified by referencing the United States Trustee in time entries.  B. Riley has the burden to keep time records that explain the work being done with enough specificity as to allow for an assessment of reasonableness and necessity and it failed to do so.  To the extent that work was done to respond to objections raised by written pleadings filed the United States Trustee and to validate or justify the relief requested by the

---

[3] The United States Trustee notes that the Debtor's figures on accounts receivable was not static and changed in the three iterations of Schedule AB filed by the Debtor. *See* ECF 136, 183, and 277.

Debtor, such work is not automatically compensable. Further, with respect to the work done to update/enter/correct data in the Debtor's accounting system, such work is the Debtor's obligation but, as noted by the United States Trustee at the hearing on B. Riley's retention, likely could have been done more cost effectively by adding Debtor personnel in the finance department.

The time entries must be specific and detailed enough to allow a reviewer to determine what work was done, as well as the reasonableness and necessity for the work. *See, e.g., In re Hudson*, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007); *In re Baker*, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). B. Riley has not met its burden to describe with specificity the work being performed. In sum, the United States Trustee has two major concerns: (1) many of the entries refer to preparing or working on things for the United States Trustee or responding to the United States Trustee without actually describing what is being done – thus the entries lack enough specificity to assess reasonableness, and (2) to characterize fees of $90,256.50 as "Analysis on behalf of the U.S. Trustee" inappropriately characterizes the work done and the reasons for it. Based on the lack of adequate description for many of the entries in this category, B. Riley has not met its burden to provide detailed entries and the United States Trustee is unable to assess the reasonableness of the entries in this category.

### iii. *Meetings/Hearings*

The B. Riley First Interim reflects a significant number of meetings, events and hearings that were attended by three B. Riley personnel – Weitz, Prager, and Beresin. It is the recollection of the undersigned that only Weitz has ever communicated directly with United States Trustee personnel and addressed the Court. One hour of time for all three is an aggregate cost of $1,420

15

and regularly billing for all three to attend hearings, meetings and intra-office conferences is not reasonable.  Below is a summary of some, but not all, of the time this group of three has billed:

1) **<u>Hearings - $21,949.50</u>**: July 21 (3.5 hours each at a cost of $4,970); July 30 (1.3 hours at $1,846); August 16 (4.8 hours each for a cost of $6,816); August 10 (1.5 hours at a cost of $2,130); September 9 (10.6 hours at a cost of $5,365); and September 22 (1.7 hours at a cost of $822.50). *See* pages 9-10.

2) **<u>Meetings with IM - $6,532</u>**: August 9 meeting with two IM attorneys (1.8 hours each at a cost of $2,556); August 10 meeting with one IM attorney (.8 hours each at a cost of $1,136); August 11 meeting with two IM attorneys (2.0 hours each at a cost of $2,840); August 19 meeting with one IM attorney (1.0 hours at a cost of $1,420); August 24 meeting with two IM attorneys (1.0 hours at a cost of $1,420; note one IM lawyer billed 1.5 and the other billed 1.0). *See* pages 14, 18.

3) **<u>Intra-office meetings just between Weitz, Prager, Beresin</u>**:  At least 15 meetings of all three took place between August 5 and September 29. Those meetings aggregate 23.4 hours at a cost of $33,228.  Other meetings between just two of the three also took place, and as such, the foregoing calculation is not a full list of intra-office meetings.

4) **<u>341 Meetings - $10,508</u>**: August 16 (4.8 hours each at a cost of $6,816); September 1 (2.1 hours each at a cost of $2,982); and September 29 (.5 hours each at a cost of $710.00).

16

B. Riley's staffing choices and billing is not reasonable. While some interactions within B. Riley are necessary to keep personnel up to date, there is no justification for three personnel to attend the majority of events.  The United States Trustee requests an approximately 50% reduction of $35,000.00 to address this issue.

    iv.    *MORs*:

        a.   ***July MOR***: The July MOR covered a roughly two-week period of July 15 to July 31. B. Riley personnel billed 47.3 hours at a cost of $19,535.50 for this one MOR.  The July MOR required some revisions and the addition of omitted bank statements.  B. Riley personnel billed 10.1 hours to preparing the amended July MOR at a cost of $3,596.50. While the first MOR filed by a debtor is often the most challenging, the amount of time spent on the July MOR by B. Riley is not reasonable. The United States Trustee seeks a reduction of $9,000.00 (approximately a 40 % reduction).

        b.   ***August MOR***: B. Riley billed 23.7 hours at a cost of $8,823.50 for preparing the August MOR. The amount of time spent on the August MOR by B. Riley is not reasonable. The United States Trustee seeks a reduction of $2,000.00 (approximately a 22 % reduction), which would allow B. Riley to be paid for the equivalent of 18.9 hours at $350.00 per hour.

        c.   ***September MOR***: B. Riley billed 26.8 hours at a cost of $10,703.50 for preparing the September MOR. The amount of time spent on the September MOR by B. Riley is not reasonable. The United States Trustee seeks a reduction of $4,000.00 (approximately a 35 % reduction), which would

allow B. Riley to be paid for the equivalent of 19.1 hours at $350.00 per hour.

**b.**    ***IM***

   *i.*    *Schedules/Statement of Financial Affairs*

The IM First Interim does not include a fee category for the preparation of schedules and the statement of financial affairs, and instead included the majority (but not all) of those typical entries in a catch-all category called "case administration" where the total billed for slightly more than two months between July 15 through September 30 was $272,807.50.  The IM First Interim reflects that IM spent over 30 hours at a cost of over $20,000 preparing the initial set of schedules and the statement of financial affairs (ECF 136 and 137).  This amount is in addition to B. Riley's 129.1 hours at cost of $55,990 for preparing those same initial schedules and statement of financial affairs.  Further, those initial schedules and statement of financial affairs, however, had to be amended not once, but twice, to correct information and/or provide complete information responsive to the questions. *See* ECF 183, 184, 277, and 278.  IM billed approximately $3,700 for amending the schedules and statement of financial affairs. Between IM and B. Riley, the aggregate cost of preparing schedules and the statement of financial affairs was in excess of $88,000. The United States Trustee seeks a reduction of $2,000 from IM for this area.

Of other concern is that, based on time entries in the Brown Jacobson First Interim, it appears that, as of the Petition Date, either the Debtor or counsel for the Debtor was holding a deposit of earnest funds for a purchase and sale agreement for property related to St. Bernard High School in Uncasville, Connecticut.  *See* Brown Jacobson First Interim time entries at pages 2, 3, 5 and 8. Neither this deposit nor the purchase and sale agreement was disclosed on the three sets of

schedules and statement of financial affairs. *See* ECF 136, 137, 183, 184, 277, and 278. The time entries indicate that IM personnel were aware of this deposit and agreement. *See* Brown Jacobson First Interim time entries at pages 2 and 5. On November 15, 2021, the United States Trustee inquired about this in a conference call with Debtor's counsel (IM and R&C) but, to date, has not received an explanation as to these time entries. The absence of the information as to the deposit and the agreement from the schedules and statement of financial affairs should be explained.

  *ii.   Administrative time*

  The IM First Interim shows over 30 hours at a cost of over $8,000.00, billed by a paralegal (J. Acquaviva) at $270.00 hour, performing services that were administrative in nature and which could have been done either by a legal clerk or by non-billing professional.[4] Such services included calendaring, indexing documents, and electronically saving/organizing documents. Some examples of such administrative time entries can be found at pages 3-14. With respect to the entries regarding organizing/saving/indexing documents, the entries are routinely vague and do not describe the types or quantities of documents so as to enable a reviewed to assess reasonableness. The United States Trustee seeks a reduction of $4,000.00 to address this issue.

  *iii.   Staffing issues/Lumping/Vagueness*

  The IM First Interim demonstrates a variety of staffing concerns and corresponding costs. A few examples are below:

1) No IM associates billed time to the Debtor's case.

2) Of the $629,920.00 billed in the IM First Interim, 71% was billed by two partners: (a) Attorney DeLucia who billed 267.70 hours for a total of $220,189.50 with a billing rate

---

[4] The United States Trustee did not include in such calculations any time spent

of $835.00 per hour and (b) Attorney Fiedler who billed 286.40 hours for a total of $225,303.00 with a billing rate of $795.00.

3) Between September 2 and September 9, IM professionals billed 71.1 hours at a cost of $45,667.50 for *preparing* for the hearing on September 9 (see pages 41-43). This calculation does not include attending the September 9 hearing.

4) There are multiple entries for work that could have been done by personnel who bill at lower rates. Some examples are page 5 at Attorney Fiedler entry on 7/22/21 for .8 for "work on creditor matrix" and page 16 at Attorney Fiedler entry on 8/26/21 for .2 for "review motion to redact case captions."

5) There are multiple vague and/or lumped time entries throughout the IM First Interim. Just a few illustrative examples are:

- M Ott entry on 9/16/21 for "legal research regarding client question per DeLucia" for 1.5 hours (page 24)
- M Ott entry on 9/17/21 for "legal research regarding client question" for 4.5 hours (page 25)
- M Ott entry on 9/28/21 for "continue research regarding real estate ownership" for 3.5 hours (page 28)
- Entries where description is only "prepare for hearing" or its equivalent with no detail as to what the preparation work was (for some examples see pages 20, 34, 35, 36, 37, 38)
- A Fiedler entry on 8/5/21 for "work on second day motion" for 2.1 hours (page 36)
- L DeLucia entry on 7/19/21 for "conference calls" for 4.0 hours with no breakdown as to each call (page 34)
- M Ott entry on 9/8/21 for "assess property of the estate" for 1.9 hours (page 21)

Because of the nature of these issues, it is difficult to assess and determine a proposed reduction. The United States Trustee would suggest that IM review its billings and propose an appropriate reduction.

---

communicating with others or preparing documents.

*iv.  "UST" issues*

The IM First Interim contains a fee billing category titled "Respond to UST Requests" (number 28) which includes 69.0 hours for a total of $51,112.00. This category can be found starting at page 56.  Many of the entries in this category are for required chapter 11 events that all debtors attend such as the Initial Debtor Interview, the Section 341 Meeting, and work related to preparing for and attending same, as well as work on monthly operating reports.  Further, there are entries for preparing the schedules and other documents required to be filed by chapter 11 debtor, and for locating/reviewing documents that were needed to correct the schedules.  Some of the entries for such work are written as if they are requirements of the United States Trustee, notwithstanding the Debtor's obligations to prepare and file complete and accurate schedules and statements of financial affairs, attend all required meetings, and file all required documents. As discussed *infra*, in connection with the motions relating to cash management, insurance, payroll/benefits, the United States Trustee requested documents that are normally kept by debtors seeking such relief, especially where monies are received and used for non-debtors relating to payroll, benefits, and insurance – such information are lists of accounts payable, accounts receivable, aging reports for same, bank statements for investment accounts, and proof of insurance. The United States Trustee did not request documents or information that did not exist in the Debtor's records – and the majority of the information for accounts payable and receivable should have been a function of running reports from accounting software.

In sum, the United States Trustee has two major concerns: (1) many of the entries refer to preparing or working on things for the United States Trustee or responding to the United States Trustee without actually describing what is being done – thus the entries lack enough specificity to

assess reasonableness, and (2) to characterize fees of $51,112.00 as "Respond to UST Requests" inappropriately characterizes the work done and the reasons for it.  Based on the lack of adequate description for many of the entries in this category, IM has not met its burden to provide detailed entries and the United States Trustee is unable to assess the reasonableness of the entries.

### (v) Committee Discovery Requests

The IM First Interim contains $49,568.00 in billed time (90.5 hours) for addressing and responding to the Committee's request for documents issued pursuant to Rule 2004 (category 29). *See* pages 57-61. The vast majority of the time entries in this category are vague and lacking sufficient description to assess the reasonableness of the time spent.  There are no descriptions of the documents, quantity of documents or type of documents, nor are there any descriptions of information being gathered. Because of the failure to adequately describe the work done, the United States Trustee is unable to assess the reasonableness of the entries and IM has not met its burden to provide adequate detailed time entries.

### (vi)   Boy Scouts of America chapter 11 case

The IM First Interim contains time entries for filing pleadings in the Boy Scouts of America chapter 11 case pending in Delaware.  On November 15, 2021, the United States Trustee inquired about this in a conference call with Debtor's counsel (IM and R&C) and IM explained to the United States Trustee the reasons for this activity.  The United States Trustee notes, however, that the time entries span the dates of August 2 through August 19 and involve the use of local counsel in Delaware, yet no retention application for the Delaware counsel has been filed.  The United States Trustee noted the absence of a retention application for local counsel during the November 15, 2021 conference and IM acknowledged it needed to be addressed.

**D.    Lack of meaningful benefit to the estate**

*a.    Utilities Motion*

IM filed and prosecuted a motion under Section 366 ("Utilities Motion" at ECF 19) seeking to impose restrictions on utilities, some of which were noted by the United States Trustee (ECF 105) and utility creditor Norwich Public Utility ("Norwich") (ECF 104), as well as the Court, to be at odds with Section 366.  The Utilities Motion only listed five utilities in total: AT&T, Comcast, Frontier, Norwich and Safeway Petroleum. ECF 19.

As noted in the United States Trustee's objection, the Utilities Motion was not accurate and did not appear to be necessary because there were no overdue bills due to the utilities given that the Debtor had been paying its bills pre-petition as they came due. In fact, according to the list of 20 largest unsecured creditors of the chapter 11 filing, Comcast was listed as being due $659.77. ECF 21.  According to the Amended Schedule F, Frontier was owed $807.96, Comcast was owed $659.77, the debt to Norwich was listed as undetermined, and neither AT&T nor Safeway are listed as creditors.  ECF 183. The IM First Interim reflects at least 8 hours was spent on dealing with the Utility Motion at a cost of approximately $4,800.00 (the IM First Interim does not reflect any time that clearly refers to the Utility Motion prior to its filing on July 16 so the United States Trustee posits that the Debtor paid for the preparation of this motion pre-petition in an unknown amount).  Additionally, because many of IM's entries refer to "second day motions" without noting which motions, it is likely that there is additional unidentified time that was spent on the Utilities Motion. In the end, there is no dispute that IM spent more on the Utilities Motion than was owed to the utilities. The United States Trustee seeks a reduction of $4,800.00.

23

R&C also spent 13.6 hours at a cost of $7,058.00 related to the Utilities Motion.  For the reasons described, the United States Trustee seeks a reduction from R&C of $7,058.00.

B. Riley also spent 6.8 hours at a cost of $2,842.50 related to the Utilities Motion.  For the reasons described, the United States Trustee seeks a reduction from B. Riley of $2,842.50.

       *b.*     *Rule 2019 Motion*

The IM First Interim contains approximately $6,300.00 in time on the Rule 2019 motion (ECF 343).  The R&C First Interim contains approximately 1.2 hours at a cost of $620.00 in time on the Rule 2019 motion. The benefit to the estate and its creditors for this motion is not obvious. The United States Trustee suggests that all fees associated with the Rule 2019 motion be deferred to after the outcome of the motion is known.

**E.**     **Expenses**

The IM First Interim requests expenses totaling $13,006.21.  The United States Trustee requested proof of expenses for Westlaw, "Parish Org Documents" and Corporation Service Company and reviewed the documentation provided by IM for same.  The expenses for "Parish Org Documents" totaling $3,400.00 appear to be for copies of corporate records from the Connecticut Secretary of State for the parishes affiliated with the Debtor.  The need for such records is not clear to the United States Trustee and absent further explanation demonstrating the need for same, the United States Trustee objects to reimbursement of the $3,400.00 at this time.

The B. Riley First Interim seeks $56.10 for meals. Absent travel or other appropriate circumstances, meals are not reimbursable expenses and the United States Trustee objects to same.

## CONCLUSION

WHEREFORE, for all the foregoing reasons discussed, the United States Trustee objects to the fees requested by IM, B. Riley, R&C, and Brown Jacobson and certain expenses of IM and B. Riley, and disputes that the Debtor's professionals have met their burdens under Section 330, Rule 2016 and Local Rule 2016-1 to demonstrate that all of the amounts requested are reasonable, necessary and beneficial to the Debtor's estate.

Dated:  New Haven, Connecticut
       December 7, 2021

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE FOR REGION 2

By:    /s/ Holley L. Claiborn
       Holley L. Claiborn
       Trial Attorney
       Office of the United States Trustee
       Giaimo Federal Building, Room 302
       150 Court Street
       New Haven, CT 06510
       Holley.L.Claiborn@usdoj.gov
       (203) 773-2210
       Federal Bar No.: ct17216 (Connecticut)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent on December 7, 2021 by the Court's CM/ECF to the parties noted below:

- **Kellianne Baranowsky**   kbaranowsky@gs-lawfirm.com, aevans@gs-lawfirm.com;kbaranowsky@ecf.courtdrive.com

- **Patrick M. Birney**   pbirney@rc.com, ctrivigno@rc.com

- **Christopher H. Blau**   cblau@zeislaw.com

- **Harrison H.D. Breakstone**   hbreakstone@archerlaw.com, chansen@archerlaw.com

- **Daniel Allen Byrd**   dbyrd@zeislaw.com

- **John C. Cannizzaro**   john.cannizzaro@icemiller.com

- **Louis T. DeLucia**   louis.delucia@icemiller.com, john.acquaviva@icemiller.com

- **Andrew A. DePeau**   ADEPEAU@RC.COM, RBANGHAM@RC.COM

- **Alyson M. Fiedler**   alyson.fiedler@icemiller.com

- **Joseph Mark Fisher**   mfisher@schiffhardin.com

- **Lawrence S. Grossman**   LGrossman@gs-lawfirm.com, aevans@gs-lawfirm.com;ngolino@gs-lawfirm.com;lawrencegrossman@ecf.courtdrive.com;mbuckanavage@gs-lawfirm.com;eross@gs-lawfirm.com

- **Honor S. Heath**   honor.heath@eversource.com, honor.heath@hotmail.com

- **Jeffrey Hellman**   jeff@jeffhellmanlaw.com, christen@jeffhellmanlaw.com

- **Eric A. Henzy**   ehenzy@zeislaw.com, kjoseph@zeislaw.com

- **Allen G. Kadish**   akadish@archerlaw.com

- **Stephen M. Kindseth**   skindseth@zeislaw.com, swenthen@zeislaw.com;kjoseph@zeislaw.com

- **Jon P. Newton**   jnewton@reidandriege.com, umongrain@rrlawpc.com

26

- **Kelly E. Reardon**    kreardon@reardonlaw.com

- **Scott D. Rosen**    srosen@cb-shea.com, kseaman@cbshealaw.com

- **Jeffrey M. Sklarz**    jsklarz@gs-lawfirm.com, aevans@gs-lawfirm.com;mbuckanavage@gs-lawfirm.com;eross@gs-lawfirm.com;jsklarz@ecf.courtdrive.com

- **Annecca H. Smith**    asmith@rc.com

- **Suzanne B. Sutton**    ssutton@cohenandwolf.com

- **Daniel R. Swetnam**    daniel.swetnam@icemiller.com

- **Patrick Tomasiewicz**    pt@ftlawct.com, mdimock@ftlawct.com

- **Jason M. Torf**    jason.torf@icemiller.com

/s/ Holley L. Claiborn
Holley L. Claiborn