**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1] | Case No: 21-20687 (JJT) |
| Debtor. | |

**SUPPLEMENT TO ORDER ESTABLISHING MARCH 15, 2022 DEADLINE**
**FOR FILING PROOFS OF CLAIM AND APPROVING THE FORM**
**AND MANNER OF NOTICE THEREOF**

Upon the Motion of The Norwich Roman Catholic Diocesan Corporation (the "Diocese" or "Debtor"), this Court entered its *Order Establishing March 15, 2022 Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice* on November 19, 2021 after due notice and a hearing (the "Bar Date Order") [Dkt. No. 386].[2]

On March 22, 2022, this Court presided over a status conference to discuss this Court's access to Sexual Abuse Proofs of Claim that have been filed in this Case and are subject to the Bar Date Order's Confidentiality Protocol (the "Status Conference"). A copy of the transcript of the Status Conference is attached hereto as Exhibit A. In accord with the discussions that took place at the Status Conference,

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, also known as The Roman Catholic Diocese of Norwich. The last four digits of the Debtor's federal tax identification number are 7373, and its mailing address is 201 Broadway, Norwich, CT 06360.

[2] Terms not otherwise defined herein shall have the same meaning ascribed in the Bar Date Order.

IT IS HEREBY ORDERED THAT:

1.      Paragraph 11(c) of the Bar Date Order is supplemented to provide that Epiq shall provide this Court, through the Clerk of the Court, with electronic access to a copy of all proofs of claim filed with Epiq, including the Sexual Abuse Proofs of Claim.

2.      Notwithstanding the Clerk of the Court's access to the Sexual Abuse Proofs of Claim in accord with Paragraph 1, the Sexual Abuse Proofs of Claims shall not be filed on the docket of this Court or considered part of the public record.

Dated at Hartford, Connecticut this 18th day of April, 2022.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*

## **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT


In Re                          *   Case No. 21-20687(JJT)
                               *
THE NORWICH ROMAN CATHOLIC     *   Hartford, Connecticut
 DIOCESAN CORPORATION,         *   March 22, 2022
                               *
              Debtor.          *
                               *
* * * * * * * * * * * * * * * *


       TRANSCRIPT OF ORDER SETTING STATUS CONFERENCE TO
  DISCUSS A PUBLIC SURVEY OF ALL CLAIMS FILED OR SCHEDULED,
          AS WELL AS ACCESS TO PROOFS OF CLAIMS
         BEFORE THE HONORABLE JAMES J. TANCREDI
              UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                LOUIS T. DeLUCIA, ESQ.
                               ALYSON FIEDLER, ESQ.
                               Ice Miller, LLP
                               1500 Broadway
                               New York, NY  10036

                               ANNECCA H. SMITH, ESQ.
                               Robinson & Cole, LLP
                               280 Trumbull Street
                               Hartford, CT  06103

For the U.S. Trustee:          STEVEN E. MACKEY, ESQ.
                               Office of the U.S. Trustee
                               Giaimo Federal Building
                               150 Court Street, Room 302
                               New Haven, CT  06510

For the Official Committee     ERIC A. HENZY, ESQ.
 Of Unsecured Creditors:       CHRISTOPHER H. BLAU, ESQ.
                               Zeisler & Zeisler
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:  (Cont'd)

| | |
|---|---|
| For Catholic Mutual<br> Relief Society of America,<br> Creditor: | J. MARK FISHER, ESQ.<br>Schiff Hardin<br>233 South Wacker Drive<br>Suite 7100<br>Chicago, IL  60606 |
| For the Oceania Province<br> Of the Congregation of<br> Christian Brothers,<br> Interested Party: | ALLEN G. KADISH, ESQ.<br>Archer & Greiner, P.C.<br>1211 Avenue of the Americas<br>Suite 2750<br>New York, NY 10036 |
| For the Victims: | PATRICK TOMASIEWICZ, ESQ<br>Fazzano Tomasiewicz and Barall<br>96 Oak Street<br>Hartford, CT  06106 |
| For the Claimants: | KELLY E. REARDON, ESQ.<br>The Reardon Law Firm, P.C.<br>160 Hempstead Street<br>New London, CT  06320 |
| For the Tort Claimants: | FRANK BARTLETT, ESQ.<br>Bartlett Law Group<br>36 Wallingford Road<br>Cheshire, CT  06410 |

1    (Proceedings commenced at 3:35 p.m.)

2         THE CLERK:  Case No. 21-20687, The Norwich Roman

3    Catholic Diocesan Corporation.

4         THE COURT:  All right.  We're here on a status

5    conference that deals with access to the proofs of claim,

6    principally by the Court and senior members of the chief

7    clerk's office, as well as to discuss issues about

8    transparency.  Before we do so, can I have appearances,

9    please.

10         MR. DeLUCIA:  Good afternoon, Your Honor.  Louis

11    DeLucia, of Ice Miller, for the Diocese Debtor, Your Honor.

12    And also on the phone on behalf of the debtor as counsel is

13    Annecca Smith from Robinson Cole.

14         MR. HENZY:  Eric Henzy, of Zeisler & Zeisler, for

15    the creditors committee.

16         MR. BLAU:  Chris Blau, of Zeisler & Zeisler, on

17    behalf of the creditors committee.

18         MR. FISHER:  Mark Fisher from -- on behalf of

19    Catholic Mutual Relief Society of America.

20         MR. KADISH:  Allen Kadish on behalf -- Archer &

21    Greiner on behalf of the Oceanic Province.

22         THE COURT:  Don't be bashful, counsel.

23         MR. TOMASIEWICZ:  Your Honor, Attorney Patrick

24    Tomasiewicz on behalf of 62 victims.  Good afternoon, sir.

25         MS. REARDON:  Good afternoon, Your Honor.  Kelly

1  Reardon representing some of the claimants.

2         MR. BARTLETT:  Good afternoon, Your Honor.  Frank

3  Bartlett also representing a claimant.

4         MR. DeLUCIA:  Your Honor, I apologize.  Louis

5  DeLucia here.  I did not see Ms. Fielder, my partner, join

6  in.  I apologize.  She's here as well.

7         THE COURT:  Okay.

8         MS. FIEDLER:  Good afternoon, Your Honor.

9         THE COURT:  All right.  I think we're teeing Mr.

10 Mackey.

11        MR. MACKEY:  Your Honor, Steven Mackey for the

12 U.S. Trustee, in person.

13        THE COURT:  Okay.  Let me sort of delineate some

14 parameters for our status conference.

15        As all of you know the notice of bar date was

16 published in various places.  The bar date has now passed.

17 I would assume that there is a process of compilation and

18 reconciliation of those claims, at least on a preliminary

19 basis.

20        The Court is interested in understanding the

21 horizon in gross terms, not detailed terms, hence my staff,

22 the senior officials of the clerk's office, as well as my

23 law clerks, made efforts to obtain some access to proof of

24 claim information.  There may have been a misunderstanding

25 or a miscommunication about what we're interested in, so

1    hence the necessity for this discussion.

2         I will underscore that it is not my plan/

3    intention, nor do I hope to cause any kind of breach of

4    confidentiality consistent with the orders that I have

5    issued, but Epiq is an agent of this court, the debtor and

6    debtor's counsel are fiduciaries in this court, and this

7    court is the party who issues the orders both on Epiq's

8    retention as well as how confidentiality works.

9         And, again, there may be a misunderstanding, but

10   in gross terms, we would like to have prompt access to let's

11   call it a survey of the claims that have been filed.

12        In particular, if I could put some meat on those

13   bones, I would like to understand currently how many victims

14   claims there are pending as between scheduled and filed

15   claims so that I can put that in perspective with regard to

16   the initial vision of this case.

17        I would also like to understand not the identity

18   of those victims, which deserve protection, but if there is

19   an aggregate number that's been asserted in connection with

20   those claims, I'd like to understand that.

21        And if there are among those victim or survivor

22   claims anomalous claims that go beyond what was contemplated

23   by the debtor or the creditors committee, I would like to

24   understand that.

25        The rest of the field that I'd like to see in a

1    survey kind of form is what are the traditional creditors,

2    if you will, the trade creditors, what are the secured

3    creditors in this case, and I noticed from docket entries

4    that a variety of Catholic entities have filed proofs of

5    claim.

6            I'd like to understand who they are, the aggregate

7    of their claims, and generically the nature of their claims.

8    Again, it's to understand the context and the horizon of

9    this case.

10           I think there may have been a misunderstanding

11   that we wanted more or we wanted to disseminate more, that's

12   not the case.  But I want to make sure that there is a clear

13   understanding consistent with the orders that I've entered

14   that the Court should have prompt access to that

15   information.

16           Mr. DeLucia?

17           MR. DeLUCIA:  Yes.  Thank you, Your Honor.  And we

18   appreciate that.  And we really do believe that the Court

19   should have access to this information and more information.

20           We're kind of caught in a bind, basically the

21   amount of communication we did receive regarding the

22   request.  We did get a request that we thought was for

23   access to the claims.  And we have no problem with that,

24   should the orders permit, it of course, so we took an

25   immediate look at the Epiq retention order, particularly

1    paragraph number 3 at ECF 168.  And then it went to -- which

2    was entered early on in the case that said Epiq would

3    maintain a public record of the claims filed subject to

4    further orders of the Court.

5            And then the Court entered its bar order, 386, at

6    paragraph 11, which provided only authorized parties have

7    access to the actual claims.

8            So we suggested to Epiq -- I think we received

9    those requests -- that the clerk of the court who made the

10   request speak to us and we'd be happy to work around

11   whatever we could to get the information.

12           Your Honor, however, basically agreed to put this

13   conference together and we want to work through that with

14   you.

15           I can give you the report on what you asked now

16   verbally, as well as I believe at Your Honor's direction

17   Epiq is on the call.  And I think that is good for everyone

18   here.  Epiq can also I am sure put together a -- I'll call

19   it a sanitized report, a report that would protect the

20   identity of the claimants as well as the accused in those

21   claims, but more importantly identify what are abuse claims

22   and non-abuse claims.  We've already done that with them in

23   part, and the non -- the general trade as well as the other

24   Catholic entity claims.  So that's easy enough to dissect.

25           And I'll give you some rough numbers now if Your

1    Honor would like.

2            THE COURT:  Sure.

3            MR. DeLUCIA:  Okay.  Great.

4            THE COURT:  And as for more granular examination

5    of the claims, I mean, that undoubtedly will happen as we

6    move down the road, but that -- there's neither a necessity

7    for that currently, nor is it a priority currently.

8            MR. DeLUCIA:  Great.  Thank you, Your Honor.

9    Again, just so that the history and record is clear, we

10   always wanted to give you information.  And I think we --

11   you know, I actually look and hope I find the Court

12   (indiscernible) okay, but we didn't want to violate your

13   order.

14           So with that, Your Honor, we have 143 abuse claims

15   based upon my current record.  And I'm sure Epiq would

16   correct me if I'm wrong, 32 non-abuse claims.

17           So we have far fewer than we were anticipating

18   actually in terms of the history of other cases.  Not that

19   we (indiscernible), but we know historically diocesan cases

20   have generated a lot of claims.  But this did not in terms

21   of comparative to other cases.  So 143 abuse claims, 32 non-

22   abuse claims.  Of the --

23           THE COURT:  And that definition of non-abuse,

24   would you include traditional trade or --

25           MR. DeLUCIA:  Yes.

1          THE COURT:  -- is it other types of tort claims?

2          MR. DeLUCIA:  No.  They're traditional trade, Your

3     Honor.

4          THE COURT:  Okay.

5          MR. DeLUCIA:  They're trade and secured lenders.

6     Of the 32 trade and non-abuse claims, we have parishes,

7     lenders, and insurance companies.

8          Of those, the total and the monetary amounts for

9     the non-abuse claims is 3.7 million.  Of that 3.7 million,

10    2,029,000 are (indiscernible) secured claims asserted by

11    Peoples' United Bank.

12         Those I believe are secured by property of the

13    estate, principally real estate as well as an assertion of a

14    secured claim against fund.  Your Honor will recall about

15    200,000 and change of that was for cash collateral at the

16    inception of the case.  The balance is a secured claim

17    relating to the high school property.

18         The parish claims that were filed include

19    indemnity and other related claims.  There are some monetary

20    claims for notes and other obligations for loans by the

21    parishes directly and other Catholic entities directly to

22    the diocese.

23         There's no monetary amount for the 143 abuse

24    claims as asserted, and so they're really subject to the

25    further analysis of the parties, as well as the Court, as

1    well as the claims reviewer at a later point.

2           There are no monetary claims specifically

3    referenced.  There is one that has a monetary claim that,

4    you know, we don't know the source of, but there is a

5    monetary claim for one of them that I can recall.

6           THE COURT:  Okay.  And my recollection, I think

7    Catholic Mutual filed a claim.  What was the nature of that

8    claim?

9           MR. DeLUCIA:  That, Your Honor, I believe was just

10   for obligations due.  I'd have to pull up the claim, Your

11   Honor, to look at it.  Catholic Mutual is on the call, Your

12   Honor.

13          THE COURT:  Yes.

14          MR. FISHER:  But I'm not familiar with that claim,

15   Your Honor.  The company must have done that directly.

16          THE COURT:  Okay.  All right.

17          MR. FISHER:  If it was Catholic Mutual.

18          THE COURT:  Okay.  Anything else, Counsel,

19   regarding the filing of claims?

20          I will note that two claims came to the attention

21   of the Court that were filed directly with the clerk's

22   office sua sponte.  I entered an order that put them under

23   the confidentiality umbrella and had them delivered to Epiq.

24          MR. DeLUCIA:  Thank you, Your Honor.

25          MR. KADISH:  And, Judge, Al Kadish, Archer &

11

1   Griener, for the Oceanic Province, just to make sure the

2   record is full, we filed a claim on behalf of the Province

3   which was in the nature of let's say an indemnification, a

4   claim opener.

5          I know that was filed on the Epiq system.  And it

6   looks to me like the Epiq public docket is updated only

7   through March 14, filed claims, so we have a -- we have a

8   receipt on ours, but it hasn't come up on the public -- on

9   the public register.

10          THE COURT:  All right.  Thank you, Mr. Kadish.

11          Okay.  Anyone else want to be heard?

12          How do you see us going forward with regard to the

13   claims process, Counsel?

14          MR. DeLUCIA:  Well, what we're doing now, Your

15   Honor, is working with the committee.  We've had one call

16   already since the bar date with Mr. Kindseth, as well as Mr.

17   Henzy separately, but we've spoken about a process by which

18   the claims would be reviewed.

19          They have retained -- are seeking to retain

20   counsel, as Your Honor is aware -- I believe that hearing is

21   on March 31st -- to be insurance counsel to effect the

22   insurance implication or coverage implication with respect

23   to the claims as filed to assess what additional coverage

24   might exist for claims as filed.

25          The actual substance of the review of these claims

1    will be part of the discussions during the case, which may

2    include mediation -- which would likely include mediation.

3        We've been in discussions with counsel to the

4    committee regarding a proposed mediation that would

5    eventually we would hope lead to a resolution, not the

6    actual resolution of a dollar amount or the claims

7    themselves, but a profit by which a settlement would be

8    funded, the plan would confirmed, essentially with the

9    consent of all parties, and a claims reviewer would be --

10    would be appointed to actually do the analysis of the claim

11    allowance profit.

12        This court would not necessarily, as you would

13    expect, not be adjudicated of claims, but they would be

14    heard by -- adjudicated for value amounts by the claims

15    reviewer.

16        There would likely be in the interim as well

17    though -- as we get towards confirmation or even sooner than

18    that obviously the appointment we would hope of a future

19    claims representative to do an analysis of what should be

20    set aside for potential future claimants.

21        THE COURT:  So you're contemplating an

22    adjudication by this reviewer as opposed to a mediated

23    resolution?

24        MR. DeLUCIA:  No.  They're actually separate, but

25    both occur.  In other words, the mediation is a process by

1     which we would, as all of the interested parties,

2     participate with a mediator hopefully experienced in -- and

3     we've been talking about potentially the (indiscernible) or

4     sitting judges from the jurisdiction this court would

5     appoint to mediate how and what could be settled and

6     compromised and contributed towards a settlement, everything

7     from assets and/or property of the diocese, to third

8     parties, to insurance coverage that might be provided in

9     order to reach a resolution on a dollar amount for

10    settlement of the claims, the claims, and all claims against

11    the estate.

12           Then once that fund and that settlement is

13    generally reached, it would be memorialized by the plan,

14    that would once confirmed also appoint -- you know,

15    designate the appointment of a trust and a mediator who --

16    not a mediator, a claims reviewer who would review the

17    claims to make distributions and allocate the funds in that

18    trust for payments of those claims.

19           THE COURT:  Okay.  Anyone else want to be heard?

20           MR. HENZY:  Your Honor, for the committee,

21    obviously a lot of detail to be filled in, but I generally

22    agree with Mr. DeLucia's update on what the discussion is to

23    date.

24           We're not only talking about a mediation. The way

25    I would put it, I think that mediation will focus mostly on

14

1    the sources side of the equation.

2         You know, I think what we contemplated -- and

3    maybe haven't given as much thought to it because we have

4    been focused on the sources side -- but what certainly was

5    contemplated is what I think is some version of what I think

6    is pretty typical in the diocese cases and the other mass

7    tort type of cases which Mr. DeLucia has described.

8         I believe there's some -- there's a trust

9    mechanism with an -- a trustee of some sort and some

10   parameters to fit claims at various levels.

11        But, again, I don't think we've given as much

12   thought to that part of it because we've been focused on the

13   sources part of it, which I think primarily would be the

14   guts of the plan.

15        THE COURT:  Are you surprised at all, Mr. Henzy,

16   at the number of claims that have been asserted by

17   survivors?

18        MR. HENZY:  I'm going to be careful here, Your

19   Honor, because if you ask me and you ask Mr. Kindseth, or

20   you ask Mr. Blau, you might get different answers.

21        And I'm accused pretty frequently of being the

22   pessimist in the group.  I might have said that the number

23   would be a little bit higher.  Mr. Kindseth might have said

24   it would be a little bit lower.  I'm not sure where Mr. Blau

25   would come out.

1          But I would say this. I don't think the committee

2     expected that the claims would be the approximately 60 or 65

3     abuse claims related to Mount Saint John's Academy and that

4     that was going to be it.  We certainly expected there were

5     going to be more claims.

6          THE COURT:  Okay.

7          MR. HENZY:  I will say, Your Honor -- and I think

8     it sounds like we're at a good place on the issues -- that

9     the genesis of this conference, just to be clear, the

10    committee's position is that Epiq is an agent of the Court,

11    is a custodian of the Court.

12         We frankly did not contemplate anything in the

13    (indiscernible) presented at the beginning

14    -- the Court, the actual proof of claim, as long as it is

15    not -- they don't become public, but we'll leave that to the

16    Court.

17         I will point out that to the extent that the Court

18    does need to be added as an authorized -- I guess the

19    definition is authorized person -- and again that's not the

20    committee's position, but (indiscernible), it's a little odd

21    just for me personally because I think the Court needs to be

22    become authorized if anything -- but the -- there is a

23    process and there's a notice period so that to the extent

24    that that (indiscernible) does have to happen, it might make

25    sense to have it happen sooner rather than later so that

1    there's not a delay that's going to cause an issue for the

2    Court or for anybody else.

3            THE COURT:  I would tend to agree with you, Mr.

4    Henzy, that Epiq is the agent of this court, and there is

5    and should be no restriction on the Court's ability to

6    access that information, but I don't think I need to join

7    that issue.

8            If the debtor files a supplement that has a

9    reasonable process that assures confidentiality and broad

10   access by the Court consistent with confidentiality, I'll

11   entertain that, but that --

12           MR. DeLUCIA:  But, Your Honor --

13           THE COURT:  -- that is not a precedent in terms of

14   either any debtor or any claims processing agent restricting

15   the ability of this court to review the records of this

16   court.

17           MR. DeLUCIA:  Your Honor, I think that the --

18   because of the confidentiality that -- the order that was

19   entered regarding the -- regarding the confidentiality of

20   the claims and that the confidentiality (indiscernible) in

21   the order is protected and can only be waived by the

22   claimant, it is not, in my purview, to interpret the order,

23   nor Mr. Henzy's, in a way that might violate the

24   confidentiality and understanding of the claimants.

25           We just wanted to speak to the judge's, Your

17

1     Honor's, clerk, (indiscernible) on the same page and

2     understand how we could maintain the confidentiality.

3              THE COURT:  I defer to your -- I defer to your

4     caution --

5              MR. DeLUCIA:  Right.

6              THE COURT:  -- with the proviso that I don't think

7     it's necessary, so I will entertain your supplement to the

8     order.

9              MR. DeLUCIA:  Absolutely.  We will correct that so

10    that it will be clear.

11             And I don't think we even have to add the Court as

12    an authorized party because it does add a noticing

13    (indiscernible).  We'll just simply amend (indiscernible)

14    the order that simply says that, you know, for clarification

15    purposes, the clerk or the Court has authority to access to

16    the claims as appropriate.

17             THE COURT:  Okay.  Anything further that the

18    parties would bring to my attention in the context of a

19    status conference?

20             MR. DeLUCIA:  No, Your Honor.

21             THE COURT:  All right.

22             My apologies for the abortive hearing yesterday.

23    There was a scheduling problem that I had.  All right.

24             Mr. Mackey, did you have anything to add?

25             MR. MACKEY:  I did not, Your Honor.

18

1          THE COURT:  Okay.

2          MR. MACKEY:  Thank you.

3          THE COURT:  All right.  Well, thank you, all, for

4     joining us.  And the Court is adjourned.

5          ALL COUNSEL:  Thank you, Your Honor.

6          (Proceedings adjourned at 3:58 p.m.)

7     I, CHRISTINE FIORE, Certified Electronic Court Reporter

8     and Transcriber, certify that the foregoing is a correct

9     transcript from the official electronic sound recording of

10    the proceedings in the above-entitled matter.

11

12          *Christine Fiore*

13

14    _____          March 30, 2022

15          Christine Fiore, CERT

16             Transcriber

17

18

19

20

21

22

23

24

25