UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,** | |
| | Case No. 21-20687 (JJT) |
| Debtor. | |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO THE SECOND INTERIM FEE APPLICATIONS OF (A) ICE MILLER, LLP, (B) ROBINSON & COLE, LLP AND (C) GLASSRATNER ADVISORY & CAPITAL GROUP LLC D/B/A <u>B. RILEY ADVISORY SERVICES</u>**

William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), through counsel, in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (a)(5), respectfully submits this objection and statement of concerns regarding the second interim fee applications filed by Ice Miller, LLP ("IM"), Robinson & Cole, LLP ("R&C"), GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services ("B. Riley") as professionals (collectively "Debtor's Professionals") retained by The Norwich Roman Catholic Diocesan Corporation ("Debtor"). ECF 535, 536, and 537 (collectively "Second Interim Fee Applications").

## *Preliminary Statement*

The Second Interim Fee Applications for the Debtor's Professionals seek aggregate fees of $465,085.48 for the three-month time period of November 1, 2021 through January 31, 2022. While this total is a significant departure from the approximately $1.2 million in fees requested in

1

the first interim fee applications that covered July 15, 2021 to October 31, 2021, there are still concerns about the fees. The time entries for certain categories of work are vague, and some billing is excessive in certain respects, and some of previously agreed to reductions do not appear to be accounted for in the fee requests.

Further, the Second Interim Fee Applications do not appear to adequately address the reasonableness and/or necessity of the work done. This issue has been repeatedly raised by the United States Trustee over the past several months. Despite being aware of the obligations of Section 330/331, and aware that the United States Trustee has concerns, certain portions of the Second Interim Fee Applications are still lacking in detail that would inform the reviewer as to scope of work done, the reasonableness of the fees charged for the work done, and the necessity of the work. As described herein, the United States Trustee seeks reductions from the Debtor's Professionals.

## *Procedural Background*

1. On Thursday, July 15, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Petition Date"). ECF 1.

2. The Debtor operates and manages its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

3. The Debtor has retained the law firms of IM and R&C as its chapter 11 counsel. ECF 272, 256, 321. Per their retention applications, Ice Miller and R&C are co-counsel to the Debtor. *Id.*

4.     The Debtor has employed B. Riley as its financial advisor. ECF 271. B. Riley is providing accounting services, assistance with debtor reporting requirements and services relating to monitoring cash flow. ECF 138.

5.     On July 29, 2021, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee"). ECF 90.  The Committee has employed the law firm of Zeisler & Zeisler, P.C. as its counsel ("Z&Z" and/or "Committee Counsel"). ECF 233.

6.     To date, the Debtor has not filed a proposed plan and has obtained extensions of the exclusivity period to do so.

### *Monthly Fees*

7.     By order dated October 18, 2021, the Court authorized a monthly compensation process for retained professionals which allows professionals to receive 70% of requested monthly fees (with a 30% holdback) and 100% of requested expenses by filing a monthly fee statement ("Monthly Compensation Order"). ECF 314.  The Monthly Compensation Order provides for an objection process. *Id.*

8.     The Debtor's Professionals have routinely filed monthly fee requests and have been paid 70% of the fees pursuant to the Monthly Compensation Order.  *See* case docket.  The United States Trustee has reviewed those monthly fee requests on a regular monthly basis and has, in certain instances, raised concerns with the Debtor's Professionals and Committee Counsel, and has requested reductions. Some of the concerns have been addressed and resolved by consensual reductions, but others were not resolved.

### *First Interim Fee Applications Requests*

9. On November 15, 2021, the Debtor's Professionals and Brown Jacobson, special counsel to the Debtor, filed their first interim fee applications (collectively "First Interim Fee Applications"). ECF 372, 373, 374, and 375. Committee Counsel also filed its first interim fee application ("Committee First Interim Fee Application"). ECF 366.

10. On December 7, 2021, the United States Trustee filed an omnibus objection to the First Interim Fee Applications of the Debtor's Professionals ("UST First Interim Objection"). ECF 393.

11. On December 15, 2021, the Court held a preliminary hearing on the First Interim Fee Applications, the Committee First Interim Fee Application, and the UST First Interim Objection. The Court determined that consideration of the First Interim Fee Applications, the Committee First Interim Fee Application, and the UST First Interim Objection would be deferred to a future date, and that the Debtor's Professionals (including Brown Jacobson) and Committee Counsel would be permitted to continue to request and receive monthly compensation under the Monthly Compensation Order. ECF 415.

12. The Court is currently scheduled to consider the First Interim Fee Applications, the Committee First Interim Fee Application, the UST First Interim Objection, the Second Interim Fee Applications, and the Committee Counsel second interim fee application on May 3, 2022. ECF 549 and 550.

### *IM Second Interim Fee Application*

13. On March 31, 2022, IM filed its Second Interim Fee Application seeking fees of $295,469.98 and expenses of $10,917.85 ("IM Second Interim"). ECF 535. Without taking into

consideration voluntary reductions agreed as part of monthly compensation requests (discussed *infra*) and based on the total original hours billed of 513.80, IM had an overall blended rate of $596.49. *Id.*

### *R&C Second Interim Fee Application*

14. On March 31, 2022, R&C filed its Second Interim Fee Application seeking fees of $88,413.50 and expenses of $2,433.23 ("R&C Second Interim"). ECF 536. Without taking into consideration voluntary reductions as part of monthly compensation requests (discussed *infra*) and based on the total original hours billed of 196.4, R&C had an overall blended rate of $484.03. *Id.*

### *B. Riley Second Interim Fee Application*

15. On March 31, 2022, B. Riley filed its Second Interim Fee Application seeking fees of $81,202.00 and expenses of $262.46 ("B. Riley Second Interim"). ECF 537. Without taking into consideration voluntary reductions (discussed *infra*) and based on the total original hours billed of 186.0, B. Riley had an overall blended rate of $447.09. *Id.*

## LEGAL ARGUMENT

### *A. Standards for Fee Applications*

Section 330 authorizes payment to professionals retained by order of the Court. 11 U.S.C § 330 (a). Section 330(a) allows a court to award "reasonable compensation for actual, necessary services rendered." 11 U.S.C. §330(a)(1)(A). Section 330(a)(1) of the Bankruptcy Code specifically provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

> (A)  reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B)  reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B). In determining reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> A.  the time spent on such services;
>
> B.  the rates charged for such services;
>
> C.  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> D.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> E.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> F.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).[1]

---

[1] Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

Pursuant Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut, a fee applicant, must also, consider and follow L. Bankr. R. 2016-1 and the Court's guidelines set forth at Appendix D which require, *inter alia*, that a fee application contain the date of the order of appointment of the counsel, the terms and conditions of employment, the time period for the compensation request, a discussion of the status of the case, detailed time records, and provide, *inter alia*, information identifying the names and hourly rates of the professional, hours billed, and overall blended rate. *See* L. Bankr. R. 2016-1 and Appendix D. Reimbursement of expenses requires itemization as to purpose, amount, dated incurred and supporting documentation. *Id.* Lastly, when preparing a fee application, counsel must also consider and follow the United States Trustee Fee Guidelines. *See* Appendix A to 28 C.F.R. § 58.

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993). To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought. *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)*, 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). This burden also requires the applicant to "demonstrate – not just

recite – that the fees sought are reasonable, necessary and of benefit to the estate." *In re Fibermark, Inc.,* 349 B.R. 385, 395 (Bankr. D. Vt. 2006).

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365, 371 (11th Cir. 1988). Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses). The Court must disallow requests for compensation for services that were not reasonably likely to benefit the debtor's estate or were not necessary to the administration of the case.  11 U.S.C. §330(a)(4)(A).

Lastly, the Court has an independent burden to review fee applications "'lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors.'"  *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (quoting *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 844 (3d Cir. 1994)); *In re CCT Commc'ns, Inc.*, No. 07–10210 (SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010);  *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010).  Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself.  *In re*

*Temple Retirement Community, Inc.*, 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989). "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." *In re Child World, Inc.*, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) (citation omitted). In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." *In re Barron*, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987); *see, e.g., In re ACT Manufacturing, Inc.*, 281 B.R. 468, 474 (Bankr. D. Mass. 2002). At the interim fee stage, there is no legal entitlement or requirement for payment prior to the final fee award. *See In re Child World, Inc.*, 185 B.R. at 17.

**B.      IM Second Interim**

As a preliminary matter, the IM Second Interim correctly notes that IM agreed to a reduction in fees totaling $11,009.00 in response to issues/concerns raised by the United States Trustee to monthly fee statements. In particular, the agreed reductions after negotiation were as follows:

> a)  *November 2021*: A total reduction of $8,200, comprised of $3,000 related to time spent on the extension of exclusivity and $5,200 related to time spent preparing IM's first interim fee application;
> b)  *December 2021*: A total reduction of $1,814.50, comprised of $1,432 related to time spent on the employment of Hilco and $382.50 related to monthly fee statement preparation time; and
> c)  *January 2022*: A reduction of $994.50 related to responding to the UST First Interim Objection.

   *a.      Fees for discovery work in Category 29 (Committee Discovery Requests)*

Not all of the United States Trustee's concerns with the monthly fees were resolved. In particular, the IM Second Interim seeks fees for discovery work in Category 29 (Committee Discovery Requests) based on time entries that are not detailed. The IM Second Interim reflects fees of $42,019.00 in Category 29 (which is actually reduced to $37,817.10 after the IM 10%

9

reduction) based on 94.2 hours for addressing and responding to the Committee's request for documents issued pursuant to Rule 2004. *See* pages 15-18.[2] This same Category 29 was the subject of concerns raised by the United States Trustee in the UST First Interim Objection and during the monthly fee process, and these concerns remained unresolved prior to the filing of the IM Second Interim. For the IM Second Interim, all of the Category 29 time was incurred in November 2021.

The narrative section of the IM Second Interim does attempt to address the United States Trustee's concerns about the Category 29 time entries by describing the work performed and quantifying the amount of documents reviewed and produced. The vast majority of the actual time entries in Category 29, however, are vague and lacking sufficient description to assess the reasonableness of the time spent. The time entries do not contain meaningful descriptions of the documents, quantity of documents or type of documents, nor are there any descriptions of information being gathered.

The narrative section of the IM Second Interim, while helpful, is not a substitute for the requirement to keep detailed time records on a contemporaneous basis. *In re DiLieto*, 468 B.R. 510, 528 (Bankr. D. Conn. 2012) (discussing the requirement to keep contemporaneous detailed time records). The Second Circuit has noted its strict adherence to the rule of awarding attorneys' fees only where the applicant submitted contemporaneous time entries. *Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011) (attorneys' fees sought under Fair Labor Standards Act, 29 U.S.C. § 216(b) denied due to failure to keep contemporaneous time records). In *Scott*, the Second Circuit offered limited appropriate substitute options to meet the contemporaneous test for attorneys who

---

[2] The IM First Interim Fee application contains $49,568.00 in billed time (90.5 hours) for addressing and responding

fail to keep good time records: "We hold that entries in official court records (e.g. the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours in court at hearings and at trial and in conferences with the judge or other court personnel." *Scott v. City of New York*, 643 F.3d at 59. Those options do not appear to be of assistance to IM. Further, the lack of detailed entries was raised as a concern in the UST First Interim Objection filed on December 7, 2021, as well as in response to earlier monthly fee statements, yet the November 2021 monthly statement filed on December 15, 2021 continued to lack detail.

The time entries must be specific and detailed enough to allow a reviewer to determine what work was done, as well as the reasonableness and necessity for the work. *See, e.g., In re Hudson*, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007); *In re Baker*, 374 B.R. 489, 495 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). The United States Trustee is unable to assess the reasonableness of the entries due to their lack of specificity and IM should be obligated to address and demonstrate why the fees requested are appropriate given the inadequate time entries.

*b. Excessive billing for fee requests*

The IM Second Interim contains time entries in January 2022 regarding efforts to address the United States Trustee's criticisms of the Category 29 time entries contained in the UST First Interim Objection. These entries are found on page 34 of ECF 535 and total 2.6 hours at a cost of $1,105.00. Such fees are not compensable under Supreme Court's opinion in *Baker Botts, LLP v. Asarco, LLC,* 576 U.S. 121 (2015) which holds that professionals may not be compensated from

---

to the Committee's request for documents issued pursuant to Rule 2004 (category 29). *See* pages 57-61 of ECF 374.

the estate for defending their fees. Accordingly, the United States Trustee seeks a reduction of $1,105.00.

Additionally, the United States Trustee seeks a reduction for the time spent to prepare monthly fee requests. In December 2021, IM billed 5.7 hours at a cost of $2,940.50 for the November 2021 monthly fee statement (*see* page 24 of ECF 535). In January 2022, IM billed 5.1 hours at a cost of $3,050.50 to prepare the December 2021 monthly fee statement (*see* pages 33-34 of ECF 535). Additionally, when the United States Trustee notified IM that the IM December 2021 monthly fee statement was missing time entries, IM billed another $423.50 (.9 hours) to address the issue. In all, the time is excessive and the United States Trustee seeks a reduction of $2,500.00 for this issue.

Accordingly, with respect to the foregoing about IM's fees related to compensation requests, the United States Trustee is seeking an overall reduction of $3,605.00 for IM's Second Interim.

C.     **R&C Second Interim**

As a preliminary matter, the R&C Second Interim correctly notes that R&C agreed to a reduction in fees totaling $6,650 in response to issues/concerns raised by the United States Trustee to monthly fee statements. In particular, the agreed reductions after negotiation were as follows:

> a)  *November 2021*: A total reduction of $2,402, comprised of $1,000 related to time spent on the extension of exclusivity and $1,402 related to time spent preparing R&C's first interim fee application;
> b)  *December 2021*: A reduction of $3,205.50 related to responding to the UST First Interim Objection; and
> c)  *January 2022*: A total reduction of $1,042 related to time spent on the employment of the Gellert firm.

Upon a further review of the time entries in the R&C Second Interim, the United States Trustee seeks additional reductions. First, the United States Trustee seeks a reduction of $726.00 for time billed by R&C for correcting and amending the IM monthly fee statement for December 2021 to address the fact that such fee statement was filed without IM's time entries (*see* pages 29 and 30 of ECF 536 at time entries for P. Birney dated January 18 and 19 and time entry for A DePeau dated January 22). The foregoing time was in addition to 1 hour at a cost of $470.00 for reviewing, finalizing and filing the original IM monthly fee statement for December 2021 (to which time the United States Trustee is not objecting).

Another reduction requested by the United States Trustee is $278.00 for a .4 time entry on January 18 by Attorney Birney for an email related to the Supreme Court's opinion in *Baker Botts v. Asarco*, 576 U.S. 121 (2015), which opinion discusses how defending fees is not compensable.

In total, the United States Trustee is seeking a reduction of $1,004.00 for R&C's Second Interim.

**D.     B. Riley Second Interim**

As a preliminary matter, the B. Riley Second Interim is inaccurate and flawed with respect to the amount of fees requested. The B. Riley Second Interim does not reflect a reduction in fees it agreed to in response to issues/concerns raised by the United States Trustee. In particular, the agreed reductions after negotiation were as follows:

> a)  *November 2021*: A total reduction of $3,700, comprised of $2,300 related to time spent on the October MOR and $1,400 related to first interim fee application preparation time ("November $3,700 Fee Reduction"); and

      b) *December 2021*: A reduction of $1,957.50 related to responding to the UST First Interim Objection.

Unfortunately, it appears that despite agreeing to the November $3,700 Fee Reduction, B. Riley was paid for 70% of that time as part of the payment on the November monthly fee statement and is now also seeking approval of that same time. ECF 537 at page 2. Accordingly, the starting point of seeking $81,202.00 in fees in the B. Riley Second Interim is not accurate. After taking into account the November $3,700 Fee Reduction, the starting point should be $77,502.00.

      Further, the United States Trustee objects to the amount of time spent by B. Riley on work performed to do general accounting/reconciliation of bank statements and to prepare the Debtor's MORs, which includes work done to update/enter/correct data in the Debtor's accounting system. This is not a new area of criticism and was raised in the UST First Interim Objection. B. Riley has advised the United States Trustee that it receives little to no assistance from Debtor personnel in the finance department in preparing the Debtor's MORs and that it needs to do the work of reconciling and accounting in order to be able to then prepare the MORs. The cost of delegating the MORs to B. Riley is significant: the October MOR cost $10,617.50 (26.6 hours), the November MOR cost $6,599.50 (17.6 hours) and the December MOR cost $10,829.50 (25.3 hours).[3] The foregoing figures do not take into account all of the other general accounting/reconciliation work being performed and only includes entries that specifically refer to

---

[3] The UST First Interim Objection raised concerns as to the cost of the MORs for the months of July, August, and September. The aggregate cost of those MORs was $42,659.00. This figure taken together with the cost of the MORs for October, November, and December, yields an aggregate cost of $70,705 for six months of MORs. On a projected annualized basis, the cost of a year of MORs would be $141,410. This amount appears to be far more expensive than the cost of adding one or two persons to the Debtor's finance department given that the average monthly wage payroll for the Diocese's 32 employees over the past three months is approximately $75,666 (which means the average per employee is $2,365 per month). *See* March MOR at ECF 568 at page 15 which shows payroll of approximately $72,000, February MOR at ECF 522 at page 15 which shows payroll of approximately $80,000, and January MOR at ECF 498 at page 15 which shows payroll of approximately $75,000.

MORs. Over the months of November 2021, December 2021 and January 2022, B. Riley billed a total of $49,880.50 (124.1 hours) to Category 29 (business analysis), which category includes the MOR and accounting/reconciliation work, as well as the additional monthly reports about uses of cash provided to the Committee and the United States Trustee.

       The United States Trustee has consistently requested reductions from B. Riley to reduce the cost to the estate, but B. Riley has not agreed to all the reductions requested and, in particular with respect to the December MOR, was unwilling to take any reduction. The United States Trustee has, on several occasions, raised the concern with B. Riley and IM that it is not cost effective for B. Riley to fulfill the primary role of preparing the MORs and doing regular account reconciliation work and that the Debtor has an obligation to do some of the financial work for this chapter 11 case. Several months ago, the United States Trustee inquired about the solution of adding personnel in the Debtor's finance department and noted that this would be cost effective for the estate. To date, the United States Trustee has not been advised that this solution has been implemented.

       Before taking into account objections, B. Riley billed a total of $470,008.50 through January 2022 for seven (7) months of work. This yields an average monthly cost of $67,144. The Debtor cannot simply ignore the cost of B. Riley and delegate work to B. Riley without considering the impact on this estate. B. Riley should not ignore the cost either. The overall cost to this estate of the Debtor's Professionals is significant and needs to be better managed by the Debtor. Because of the nature of this objection, the United States Trustee does not suggest a particular reduction figure for B. Riley and instead requests that the Court determine an appropriate reduction.

## CONCLUSION

WHEREFORE, for all the foregoing reasons discussed, the United States Trustee objects to the fees requested by IM, R&C, and B. Riley and disputes that the Debtor's professionals have met their burdens under Section 330, Rule 2016 and Local Rule 2016-1 to demonstrate that all of the amounts requested are reasonable, necessary and beneficial to the Debtor's estate.

Dated:  New Haven, Connecticut
       April 26, 2022

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE FOR REGION 2

By:  /s/ Holley L. Claiborn
     Holley L. Claiborn
     Trial Attorney
     Office of the United States Trustee
     Giaimo Federal Building, Room 302
     150 Court Street
     New Haven, CT 06510
     Holley.L.Claiborn@usdoj.gov
     (203) 773-2210
     Federal Bar No.: ct17216 (Connecticut)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent on April 26, 2022 by the Court's CM/ECF to the parties noted below:

Kellianne Baranowsky on behalf of Interested Party The Catholic Mutual Relief Society of America
kbaranowsky@gs-lawfirm.com, aevans@gs-lawfirm.com;kbaranowsky@ecf.courtdrive.com

Patrick M. Birney on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
pbirney@rc.com, ctrivigno@rc.com

Christopher H. Blau on behalf of Creditor Committee Official Committee of Unsecured Creditors
cblau@zeislaw.com

Harrison H.D. Breakstone on behalf of Interested Party The Oceania Province of the Congregation of Christian Brothers
hbreakstone@archerlaw.com, chansen@archerlaw.com

Daniel Allen Byrd on behalf of Creditor Committee Official Committee of Unsecured Creditors
dbyrd@zeislaw.com

John C. Cannizzaro on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
john.cannizzaro@icemiller.com

Holley L. Claiborn on behalf of U.S. Trustee U. S. Trustee
holley.l.claiborn@usdoj.gov

Louis T. DeLucia on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
louis.delucia@icemiller.com, john.acquaviva@icemiller.com

Andrew A. DePeau on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
ADEPEAU@RC.COM, RBANGHAM@RC.COM

Alyson M. Fiedler on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
alyson.fiedler@icemiller.com

Joseph Mark Fisher on behalf of Interested Party The Catholic Mutual Relief Society of America
mfisher@schiffhardin.com

Lawrence S. Grossman on behalf of Interested Party The Catholic Mutual Relief Society of America
LGrossman@gs-lawfirm.com, aevans@gs-lawfirm.com;ngolino@gs-lawfirm.com;lawrencegrossman@ecf.courtdrive.com;mbuckanavage@gs-lawfirm.com;eross@gs-lawfirm.com

Honor S. Heath on behalf of Creditor The Connecticut Light and Power Company d/b/a Eversource
honor.heath@eversource.com, honor.heath@hotmail.com

Honor S. Heath on behalf of Creditor Yankee Gas Services Company d/b/a Eversource
honor.heath@eversource.com, honor.heath@hotmail.com

Jeffrey Hellman on behalf of Interested Party Association of Parishes of the Roman Catholic Diocese
jeff@jeffhellmanlaw.com, christen@jeffhellmanlaw.com

Eric A. Henzy on behalf of Creditor Committee Official Committee of Unsecured Creditors
ehenzy@zeislaw.com, cjervey@zeislaw.com

Allen G. Kadish on behalf of Interested Party The Oceania Province of the Congregation of Christian Brothers
akadish@archerlaw.com

Stephen M. Kindseth on behalf of Creditor Committee Official Committee of Unsecured Creditors
skindseth@zeislaw.com, cjervey@zeislaw.com

Mark A. Mintz on behalf of Interested Party Association of Parishes of the Roman Catholic Diocese
mmintz@joneswalker.com, hstewart@joneswalker.com

Jon P. Newton on behalf of Interested Party Mercy High School Corporation
jnewton@reidandriege.com, umongrain@rrlawpc.com

Jon P. Newton on behalf of Interested Party Saint Bernard School
jnewton@reidandriege.com, umongrain@rrlawpc.com

Jon P. Newton on behalf of Interested Party Xavier High School Corporation of Middletown
jnewton@reidandriege.com, umongrain@rrlawpc.com

Samantha A. Oppenheim on behalf of Interested Party Association of Parishes of the Roman Catholic Diocese
soppenheim@joneswalker.com

Kelly E. Reardon on behalf of Interested Party The Reardon Law Firm, P.C.
kreardon@reardonlaw.com

Scott D. Rosen on behalf of Creditor People's United Bank, National Association
srosen@cb-shea.com, kseaman@cbshealaw.com

Jeffrey M. Sklarz on behalf of Interested Party The Catholic Mutual Relief Society of America
jsklarz@gs-lawfirm.com, aevans@gs-lawfirm.com;mbuckanavage@gs-lawfirm.com;eross@gs-lawfirm.com;jsklarz@ecf.courtdrive.com

Annecca H. Smith on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
asmith@rc.com

Suzanne B. Sutton on behalf of Interested Party The Oceania Province of the Congregation of Christian Brothers
ssutton@cohenandwolf.com

Daniel R. Swetnam on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
daniel.swetnam@icemiller.com

Patrick Tomasiewicz on behalf of Interested Party Fazzano & Tomasiewicz, LLC
pt@ftlawct.com, mdimock@ftlawct.com

Jason M. Torf on behalf of Debtor The Norwich Roman Catholic Diocesan Corporation
jason.torf@icemiller.com

                      /s/ Holley L. Claiborn
                      Holley L. Claiborn