**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1]<br><br>Debtor. | Chapter 11<br><br>Case No: 21-20687 (JJT) |

**THE DIOCESE'S MOTION FOR ENTRY OF AN ORDER (I) DISCHARGING EPIQ CORPORATE RESTRUCTURING, LLC AND (II) RETAINING OMNI AGENT SOLUTIONS AS THE REPLACEMENT CLAIMS AND NOTICING AGENT**

The Norwich Roman Catholic Diocesan Corporation, debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor" or the "Diocese"), hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), terminating and discharging Epiq Corporate Restructuring, LLC ("Epiq") as its claims and noticing agent, reserving all rights in connection with the services rendered by Epiq, and retaining Omni Agent Solutions ("Omni") as the replacement claims and noticing agent (the "Replacement Claims and Noticing Agent") going forward. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Paul H. Deutch in Support of the Diocese's Motion for Entry of an Order (I) Discharging Epiq Corporate Restructuring, LLC and (II) Retaining Omni Agent Solutions as the Replacement Claims and Noticing Agent* (the "Deutch Declaration") attached hereto as **Exhibit B.**

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Diocese of Norwich. The last four digits of the Debtor's federal tax identification number are 7373.

1

## BACKGROUND

1. The Debtor is a Roman Catholic diocese in Connecticut and a small part of New York founded in 1953 by Pope Pius XII, encompassing Middlesex, New London, Windham and Tolland counties in Connecticut, as well as Fisher Island, New York. The Most Reverend Michael R. Cote, D.D. has been the Bishop of the Diocese since May 14, 2003. Monsignor Leszek T. Janik is the Diocese's Vicar General.

2. On July 15, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. No trustee or examiner has been appointed and the Debtor continues to operate and manage its assets and affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

4. On July 29, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

5. Information regarding the Debtor's history, business operations and structure, and the events leading up to this Chapter 11 case is set forth in the *Declaration of Reverend Peter J. Langevin Regarding the Diocese's Assets and Operations and In Support Of The Chapter 11 Petition and First Day Pleadings* [Dkt. No. 12] (the "First Day Declaration").

6. On July 16, 2021, the Debtor filed an application [Dkt. No. 17] (the "Epiq Retention Application") for authority to retain and employ Epiq as the claims and noticing agent in the bankruptcy case pursuant to 28 U.S.C. § 156(c). Attached as Schedule 1 thereto is the services agreement executed by and between Epiq and the Debtor (the "Epiq Services Agreement").

7. On August 20, 2021, this Court entered an order [Dkt. No. 168] (the "Epiq Retention Order")[2] granting Debtor's application to retain and employ Epiq as claims and noticing agent as of the Petition Date.

8. On February 3, 2023, the Diocese learned that the Affidavit of Service [Dkt. No. 1068] (the "Affidavit") prepared and filed by Epiq concerning the *Order and Notice of Hearing on Disclosure Statement* [Dkt. No. 1062] disclosed the names and addresses of a number of survivors. The Diocese immediately acted with the Committee and Epiq to protect the identities of the survivors, ensuring the Affidavit was immediately removed from Epiq's website, sealed by the Court [Dkt. Nos. 1071, 1072], and removed from any third-party docket monitoring services including LEXIS, Westlaw, and Bloomberg.

9. Epiq subsequently stated that the disclosure occurred due to the fact that certain claims listed an individual claimant and his/her contact information as a secondary contact, which was then automatically populated rather than redacted in accordance with the *Final Order on Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing and Approving Special Noticing and Confidentiality Procedures; (II) Authorizing and Approving Procedures for Providing Notice of Commencement; and (III) Granting Related Relief* [Dkt. No. 265] (the "Confidentiality Procedures Order"). Deeply concerned by this error, the Debtor decided to immediately replace Epiq.

10. On February 6, 2023, the Debtor entered into that certain Standard Services Agreement with Omni (the "Omni Services Agreement"), attached hereto as **Exhibit C**, to assume the services and responsibilities previously provided by Epiq, subject to Court approval.

---

[2] Please see the Epiq Retention Application and Epiq Retention Order for a greater discussion regarding the services provided by Epiq as the claims and noticing agent in this Chapter 11 Case.

## JURISDICTION

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory bases for the relief requested herein are sections 105(a) of the Bankruptcy Code, 28 U.S.C. § 156, and Bankruptcy Rule 2002.

## RELIEF REQUESTED

14. The Debtor retained the services of Epiq in order to, among other things, process, maintain, and docket filed proofs of claims, expedite the processing of claims, distribute notices to all interested parties, and to relieve the office of the clerk of the Court of the administrative burden that would otherwise be imposed by a case of this size and complexity.

15. However, at this time, the Debtor has exercised its business judgment and determined that it is in the best interest of the Debtor, its estate, the survivors, the creditors, and all other parties in interest to relieve and discharge Epiq of any further duties owed to the Court or to the Debtor's estate pursuant to the Epiq Retention Order and 28 U.S.C. § 156(c), and to retain Omni in its place as the Replacement Claims and Noticing Agent.

16. In order to facilitate an effective and secure transfer of information and services, immediately after entry of the Proposed Order, and in no event more than twenty (20) days after the entry of the Proposed Order, Epiq shall transfer **all** matrix and claimant information to Omni including:

    (a)    The creditor matrix in both electronic and PDF formats;

    (b)    the claims register;

    (c)    the Debtor's schedules and statement of financial affairs;

  (d) all physical proofs of claim filed in the above-captioned case and PDF copies of the same; and

  (e) any unprocessed claim, address updates, claim withdrawals or transfers (collectively, the "Transition Requirements").

17. If the items identified in subsection (e) above are not provided, Epiq shall represent and warrant to the Debtor that all information provided is complete.

## SERVICES TO BE PROVIDED BY OMNI

18. The Debtor requests authority to retain the Replacement Claims and Noticing Agent on the terms and conditions set forth in the Omni Services Agreement attached hereto as **Exhibit C**. In addition to facilitating the transfer of case information from Epiq, the Debtor anticipates that the Replacement Claims and Noticing Agent will perform services including, but not limited to:

  (a) Data entry, management of the creditor matrix, maintenance of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website; and

  (b) any other services as may be requested by the Company or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "Services").

## OMNI'S DISINTERESTEDNESS

19. Omni has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, Omni has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

20. In connection with its retention as Replacement Claims and Noticing Agent, Omni represents in the Deutch Declaration, among others things, that:

  (a) Omni is not a creditor of the Debtor;

(b)      Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Replacement Claims and Noticing Agent in these chapter 11 cases;

(c)      by accepting employment in these chapter 11 cases, Omni waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      in its capacity as Replacement Claims and Noticing Agent in these chapter 11 cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)      Omni shall not employ any past or present employee of the Debtor in connection with its work as Replacement Claims and Noticing Agent in these chapter 11 cases;

(f)      On October 16, 2019, Omni executed a contract with X-Claim Inc. ("X-Claim") whereby Omni agreed to provide X-Claim with publicly available claims register data in a downloadable format (the "Agreement"). Omni ceased providing services under the Agreement as of June 8, 2022, and, as confirmed to Omni by X-Claim, the Agreement was terminated as of June 9, 2022.

(g)      Other than the disclosed contract with X-Claim, Omni is not a party to any agreement where it receives consideration in exchange for transferring information derived from Omni's role as an administrative agent in cases in this district or elsewhere to nonclient third parties. Omni has no agreement with any third-party vendor to provide claims register data.

(h)      Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(i)      in its capacity as Replacement Claims and Noticing Agent, Omni will not intentionally misrepresent any fact to any person;

(j)      Omni shall be under the supervision and control of the clerk of the Court with respect to the receipt and recordation of claims and claim transfers;

(k)      Omni will comply with all requests of the clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(l)      none of the services provided by Omni as Replacement Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the clerk of the Court.

## ARGUMENT

21.     Section 156(c) of title 28 of the United States Code authorizes the Court to utilize outside agents for notices and claims purposes if the costs are paid for out of the assets of the estate. Section 156(c) provides: "Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit counsel may prescribe." 28 U.S.C. § 156(c).

22.     Pursuant to Article 2 of the Epiq Services Agreements, the Epiq Services Agreement can be terminated by the Debtor on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

23.     Additionally, paragraph 17 of the Epiq Retention Order requires an order from the Court permitting Epiq to cease providing services as the claims and noticing agent in this Chapter 11 Case. Epiq Retention Order, ¶17 ("Epiq shall not cease providing claims processing during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.").

24.     Paragraph 25 of the Epiq Retention Order further provides this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and or enforcement of the Epiq Retention Order, notwithstanding any terms in the Services Agreement to the contrary. Epiq Retention Order, ¶ 25.

25. The Debtor requests that the Court enter the Proposed Order immediately terminating Epiq, notwithstanding the provisions of the Epiq Services Agreement, effective upon transition of services and information to Omni as Replacement Claims and Notching Agent. The Debtor has exercised its business judgment and determined that Epiq should be relieved and discharged from its duties as claims and noticing agent in this Chapter 11 Case and that engagement of Omni as the Replacement Claims and Noticing Agent is in the best interests of the Debtor's estate and that Omni is best suited to further protect survivors' privacy.

26. Omni is one of the country's leading chapter 11 administrators with substantial experience in mass tort, sexual abuse, and healthcare cases involving highly sensitive and/or confidential information. Omni has served in various roles, including as claims and noticing agent, balloting agent, and/or plan administrator in many relevant bankruptcy cases including: Boy Scouts of America, USA Gymnastics, Christian Brothers Institute, Society of Jesus, Oregon Province, Catholic Bishop of Northern Alaska (Fairbanks), Diocese of Davenport, Archdiocese of Milwaukee, Greet Falls – Billings Diocese, RCB of Helena, Roman Catholic Bishop of Stockton, and the Roman Catholic Church of the Diocese of Gallup.

27. Omni has agreed to match Epiq's Court approved fee structure as contained in the Pricing Schedule attached to the Epiq Services Agreement [Dkt. No. 17-1] and to not charge for duplicative services.

28. Omni has further agreed to provide the Debtor with a $5,000 discount on fees relating to the transition from Epiq to Omni.

29. Upon completion of the Transition Requirements, Epiq should be discharged of its duties as the current claims and noticing agent in this Chapter 11 Case, with all rights of all persons preserved with respect to Epiq's services.

30. Notwithstanding the requirement in the Epiq Services Agreement that the Debtor provide thirty (30) days' written notice prior to termination, and paragraph 8 of the Epiq Retention Order requiring the parties meet and confer in an attempt to resolve any dispute that may arise under the Epiq Services Agreement, the Debtor respectfully requests Epiq to be discharged from its duties. The Debtor, the estate, and most importantly the survivors, cannot risk retaining Epiq any longer.

31. The Diocese reserves and retains all rights in connection with respect to Epiq and with respect to the services rendered by Epiq.

## NOTICE

32. Notice of this Motion will be provided to (a) the Office of the United States Trustee; (b) counsel to the Committee; (c) Scott Rosen, Esq., Cohn Birnbaum & Shea, P.C., counsel to M&T Bank; (d) the Internal Revenue Service; I the United States Attorney's Office for the District of Connecticut; (f) Fazzano & Tomasiewicz, LLC and the Reardon Law Firm, P.C., counsel to certain tort claimants; (g) counsel to Catholic Mutual; (h) counsel to Christian Brothers; (i) counsel to the Association of Parishes; (j) counsel to MSJ; (k) Jon Newton, counsel to the High Schools; and (l) any other party that has requested service pursuant to Bankruptcy Rule 2002 as of the time of service.

33. In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

## NO PREVIOUS REQUEST

34. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: Hartford, CT
February 8, 2023

/s/ Patrick M. Birney
Patrick M. Birney (CT No. 19875)
Andrew A. DePeau (CT No. 30051)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail:  pbirney@rc.com
         adepeau@rc.com
         asmith@rc.com

-and-

Louis T. DeLucia (admitted *pro hac vice*)
Alyson M. Fiedler (admitted *pro hac vice*)
**ICE MILLER LLP**
1500 Broadway, 29th Floor
New York, NY 10036
Telephone: (212) 824-4940
Facsimile: (212) 824-4982
E-Mail:  louis.delucia@icemiller.com
         alyson.fiedler@icemiller.com

*Counsel to the Debtor
and Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 8, 2023, a copy of the foregoing motion and the exhibits attached thereto were filed electronically and shall be served as required by Local Bankruptcy Rule 9013-2(b), with notice of this filing being sent by email to all Notice Parties by operation of the court's electronic filing system or by First Class U.S. mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties in interest may access this document through the court's CM/ECF System.

                                            */s/ Patrick M. Birney*
                                            Patrick M. Birney