**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In Re: | Chapter 11 |
| THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION, [1] | Case No. 21-20687 (JJT) |
| Debtor. | |

**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR**
**THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION**

Eric A. Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Daniel A. Byrd (ct31151)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, CT 06605
Telephone: (203) 368-4234
Email: ehenzy@zeislaw.com
        skindseth@zeislaw.com
        dbyrd@zeislaw.com

*Attorneys for the Official Committee of Unsecured Creditors*

---

[1]   The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Diocese of Norwich.  The last four digits of the Debtor's federal tax identification number are 7373.

# TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………………….7

**I. DEFINITIONS AND INTERPRETATION** ........................................................... 7

    1.1        Defined Terms  ........................................................................... 7

    1.2        Interpretation ........................................................................... 21

    1.3        Time Periods. . ........................................................................ 22

    1.4        Exhibits And Schedules.  ........................................................ 22

**II. PLAN OBJECTIVES AND MEANS OF FUNDING** ............................... 23

**III. TREATMENT OF UNCLASSIFIED CLAIMS** ..................................... 24

    3.1        Administrative Claims. ............................................................ 24

    3.2        Priority Tax Claims.. ................................................................ 25

    3.3        U.S. Trustee Fees.. .................................................................. 25

**IV. CLASSIFICATION OF CLAIMS** ......................................................... 26

    4.1        Summary.. ................................................................................ 26

    4.2        Classification and Voting......................................................... 26

**V. TREATMENT OF CLASSIFIED CLAIMS** ........................................... 26

    5.1        Class 1: Other Priority Claims. .............................................. 26

    5.2        Class 2 Citizens Bank, N.A...................................................... 27

    5.3        Class 3: M&T Bank Corporation. ........................................... 27

    5.4        Class 4: Abuse Claims (Other Than Unknown Abuse Claims)........................ 28

    5.5        Class 5: Unknown Abuse Claims. .......................................... 32

    5.6        Class 6: General Unsecured Claims. ...................................... 34

    5.7        Class 7: Abuse Related Contribution Claims......................... 34

**VI. ACCEPTANCE OR REJECTION OF PLAN** ……...………………….……. 36

    6.1        Impaired Classes to Vote.. ...................................................... 35

6.2          Acceptance By Class of Creditors.. ....................................................... 35

**VII. TRUST AND UNKNOWN ABUSE CLAIMS TRUST** ................................ 35

7.1          Establishment Of Trust.......................................................................... 35

7.2          Payments Effective Upon Tender. ......................................................... 38

**VIII. LIQUIDATION AND PAYMENT OF ABUSE CLAIMS** ......................... 38

8.1          Liquidation And Payment of Abuse Claims. ......................................... 38

8.2          Effect of No Award on Abuse Claims.. .................................................. 40

8.3          Treatment of Punitive Damages.............................................................. 40

8.4          Withdrawal of Abuse Claims................................................................... 40

8.5          Medicare Reimbursement and Reporting Obligations........................... 40

8.6          No Admission ......................................................................................... 41

8.7          Delay Regarding Failure to Comply........................................................ 41

8.8          Documentation By Estate of Abuse Claimant ....................................... 41

**IX. INSURANCE MATTERS**............................................................................... 41

9.1          Transfer of Insurance Interests............................................................... 41

9.2          Appointment of Trustee as Estate Representative to Enforce Insurance Interests
and Obtain Insurance Recoveries.......................................................................... 42

9.3          Consequences of Determination That Assignment or Appointment Is Invalid. . 42

9.4          Preservation of Insurance Rights.. ......................................................... 44

9.5          Post-Judgment Actions Against Non-Settling Insurers ........................ 44

9.6          Settlement with Non-Settling Insurers................................................... 44

9.7          Cooperation with Non-Settling Insurer in Defense of Claims............... 44

9.8          Insurance Neutrality................................................................................ 45

9.9          Judgment Reduction................................................................................ 45

**X. SETTLED INSURERS AND PARTICIPATING PARTIES**.............................. 46

10.1         Settlement Agreements. ......................................................................... 46

10.2        Settlement Payments.. .......................................................................... 46

10.3        Effect Under Non-Settling Insurer Insurance Policies ........................................ 46

10.4        Post-Effective Date Approval. ................................................................. 46

10.5        Effect Of Post-Effective Date Settlement Agreements ....................................... 46

10.6        Debtor and Trust Waiver and Release of Estate's Causes of Action Against
Participating Parties and Settled Insurers. ...................................................... 46

10.7        Additional Documentation; Non-Material Modifications. .................................. 47

10.8        Non-Settling Insurers Unaffected.. ............................................................ 47

**XI. MEANS FOR IMPLEMENTATION OF THE PLAN** ...................................... 47

11.1        Debtor's Funding of Plan ........................................................................ 47

11.2        Transfer of Real Property and Reversionary Interests ....................................... 48

11.3        Preservation of Causes of Action ............................................................... 48

11.4        Reorganized Debtor's Officers, Directors and Senior Management.. ................. 48

11.5        Closing.. ........................................................................................... 48

11.6        Obligations of the Reorganized Debtor and Participating Parties ..................... 48

11.7        Objections to Claims ............................................................................. 49

11.8        Provisions Governing Distributions ........................................................... 49

11.9        Reservation of Rights to Object to Claims Other Than Abuse Claims ............... 51

11.10       Service of Objections.. ........................................................................... 51

11.11       Determination of Claims. ........................................................................ 51

11.12       No Distributions Pending Allowance .......................................................... 52

11.13       Claim Estimation. ................................................................................. 52

11.14       Setoffs .............................................................................................. 52

11.15       No Interest on Claims. ............................................................................ 52

11.16       Withholding Taxes.. ............................................................................... 52

11.17       Closing of the Case.. .............................................................................. 53

11.18    No *De Minimis* Distributions. ............................................................. 53

11.19    Manner of Cash Payments. . ............................................................... 53

**XII. CONDITIONS PRECEDENT** ................................................................... 53

12.1    Conditions to Effectiveness ................................................................ 53

12.2    Waiver of Conditions. ........................................................................ 54

12.3    Non-Occurrence of Effective Date. ................................................... 54

**XIII. EFFECTS OF PLAN CONFIRMATION AND DISCHARGE** ................... 54

**XIV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..... 62

14.1    Assumed Employee and Retiree Benefit Plans. ................................. 63

14.2    General; Assumed if Not Rejected. .................................................... 63

14.3    Claims for Contract Rejection. ........................................................... 63

**XV. NON-MONETARY COMMITMENTS** ....................................................... 63

15.1    Non-Monetary Commitment to Healing and Reconciliation. ............. 63

**XVI. MISCELLANEOUS PROVISIONS** .......................................................... 63

16.1    Retention of Jurisdiction ................................................................... 63

16.2    Remand of Removed Actions and Relief From Automatic Stay/Discharge ....... 64

16.3    Modification of Plan. .......................................................................... 64

16.4    Severability ........................................................................................ 65

16.5    Headings. ........................................................................................... 65

16.6    Notices ............................................................................................... 65

16.7    Notices to Claimants. ......................................................................... 66

16.8    Post-Confirmation Court Approval .................................................... 66

16.9    Election Under Section 1129(b) of the Bankruptcy Code. ................ 67

16.10   Consummation of the Plan .................................................................. 67

16.11   Exemption from Transfer Taxes ......................................................... 67

16.12      Waivers ............................................................................................... 67

16.13      Setoffs, Recoupments, and Defenses. ............................................... 67

16.14      Compromise of Controversies. ......................................................... 68

16.15      Withdrawal or Revocation of the Plan .............................................. 68

16.16      Default.................................................................................................. 68

16.17      Governing Law. .................................................................................. 69

16.18      Reservation of Rights.......................................................................... 69

16.19      Controlling Documents ...................................................................... 69

16.20      Successors and Assigns........................................................................ 69

16.21      Direction to a Party. ............................................................................ 69

16.22      Certain Actions. .................................................................................. 69

16.23      Rounding of Fractional Numbers........................................................ 69

16.24      Dissolution of the Committee. ........................................................... 70

16.25      Saturday, Sunday or Legal Holiday. .................................................. 70

**XVII. RECOMMENDATIONS AND CONCLUSION** ........................................ 70

# INTRODUCTION

The Official Committee of Unsecured Creditors appointed in the above-captioned Chapter 11 case commenced by the debtor and debtor in possession, The Norwich Roman Catholic Diocesan Corporation, proposes this Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code. All creditors are encouraged to consult the disclosure statement for the Plan (the "Disclosure Statement"), before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions of the events involving The Norwich Roman Catholic Diocesan Corporation prior to and during this Chapter 11 case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## SECTION I
## DEFINITIONS AND INTERPRETATION

**1.1    Defined Terms.** For the purposes of the Plan, except as expressly provided, all capitalized terms not otherwise defined herein have the meanings ascribed to them below:

1.    "Abuse" means any actual or alleged (i) sexual conduct, misconduct, abuse, or molestation as defined in any statute or common law; (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct, or as such term is otherwise defined at https://portal.ct.gov/DCF/1-DCF/Child-Abuse-and-Neglect-Definitions. Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the Person.

2.    "Abuse Claim" means any claim (as defined in § 101(5) of the Bankruptcy Code), including, but not limited to, any Late-Filed Abuse Claim and any Unknown Abuse Claim, against the Debtor resulting or arising in whole or in part, directly or indirectly, from Abuse committed by any Person before the Petition Date, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Participating Party or any other Person for whose acts or failures to act the Participating Party is or was allegedly responsible. "Abuse Claim" does not include any Related Insurance Claims or Medicare Claims. For the avoidance of doubt, Abuse Claim includes no Claims first arising after the Petition Date or based only on conduct following the Petition Date.

3.    "Abuse Claimant" means the holder of an Abuse Claim.

4.    "Abuse Claims Reviewer" means the Person, including the designee of such

Person, who will assess Class 4 and Class 5 Claims under the Trust Distribution Plan.

5.    "Abuse Related Contribution Claim" means any Person's Claim against any other Person for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery, arising because of such Person having paid or defended against any Abuse Claim including but not limited to a joint tortfeasor or the like. To avoid doubt, an Abuse Related Contingent Claim is not an Abuse Claim.

6.    "ACA" means The Annual Catholic Appeal, Inc., a civil non-stock corporation organized under the law of the State of Connecticut.

7.    "Administrative Claim" means a Claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507(a)(2), or 507(b) of the Bankruptcy Code, including any post-petition tax Claims, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Debtor, all Professional Claims, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

8.    "Affiliates" means all past, present, and future Persons that control, are controlled by, or are under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

9.    "Allowed" means a Claim or part of it: (a) that has been allowed by a Non-Appealable Order; (b) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, for which no Proof of Claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline; (c) as to which a Proof of Claim in a liquidated and non-contingent amount has been timely filed and as to which no objection has been filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Non-Appealable Order; (d) that is expressly allowed by the terms of this Plan; or (e) that is deemed allowed under the Trust Distribution Plan.

10.    "Allowed Professional Claim" means a Professional Claim for which the Bankruptcy Court has entered an Order, which has become a Non- Appealable Order allowing the relevant Fee Application.

11.    "Assets" of the Diocese or the Estate means, collectively, any and all property of the Diocese or the Estate, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and specifically including cash (including the residual balance of any reserves established under the Plan, but not the Trust) and Causes of Action.

12.     "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the disclosure statement provided to each holder of a Claim entitled to vote to accept or reject the Plan.

13.     "Bankruptcy Case" means this certain bankruptcy case pending under Chapter 11 of the Bankruptcy Code captioned, *In re: The Norwich Roman Catholic Diocesan Corporation*, bearing Case No: 21-20687 (JJT), and presently pending before the Bankruptcy Court.

14.     "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532.

15.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

16.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as currently promulgated, Fed. R. Bankr. P. 1001 – 9037, the Local Rules of Bankruptcy Procedure of the Bankruptcy Court, and the Judicial Practices and Procedures of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Bankruptcy Case.

17.     "Barred Child Sexual Abuse Claim" means an Abuse Claim arising at a time when the Abuse Claimant was under the age of eighteen (18), and where both: (i) no civil action had been commenced to recover upon such Abuse Claim within thirty (30) years from the date such Abuse Claimant attained the age of eighteen (18), which civil action remained pending on the Petition Date; and (ii) the Petition Date occurred more than thirty (30) years from the date such Abuse Claimant attained the age of eighteen (18).

18.     "Canon Law" means the Code of Canon Law of the Roman Catholic Church, as codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

19.     "Catholic Entities" means those Persons listed on <u>Exhibit D</u> that are insured or covered or allegedly insured or covered under an Insurance Policy, and includes such specifically identified in <u>Exhibit D</u> insured Diocesan Catholic parishes, schools and certain other Catholic entities that operate within the territory of the Diocese. "Catholic Entities" does not include a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party.

20.     "Cause of Action" or "Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with the Plan, all Claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party

Claims, counterclaims, and cross claims of the Diocese or its Estate, the Committees, or the Trust (as successor to the Diocese or its Estate), including an action that is or may be pending on the Effective Date against any Person based on law or equity (in each case, in respect of a Cause of Action that arose before the Effective Date), including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, any action brought pursuant to Sections 522, 541–45, 547–51, and 553 of the Bankruptcy Code; provided, however, that any affirmative defense or crossclaim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such Claim.

21.    "Channeled Claim" means any Abuse Claim and/or any Claim against a Participating Party or Settled Insurer arising from, in connection with, or related to an Abuse Claim or any of the Settled Insurer Policies, including any Related Insurance Claim; provided, however, that a "Channeled Claim" does not include any Abuse Claim against: (i) any Person having personally committed an act or acts of Abuse; (ii) any religious order, diocese or archdiocese other than Participating Parties, or (iii) the Holy See.

22.    "Channeling Injunction" means the injunction imposed pursuant to Section XIII of the Plan and any such channeling injunction provided for in, or required by, any Bankruptcy Court-approved agreement with a Participating Party or a Settled Insurer.

23.    "Citizens" means RBS Citizens, N.A., as successor in interest to Citizens Bank of Connecticut.

24.    "Citizens Secured Guaranty Claim" means the general, contingent, unliquidated claim alleged by Citizens in the approximate amount of $5,046,752.32 as of the Petition Date, arising out of those certain pre-petition Limited Guaranty Agreements, dated April 30, 1998, as same may have been amended from time to time (collectively, the "Citizens Guaranty Agreement"), made by the Diocese to Citizens to with respect to alleged indebtedness of Xavier High School Corporation of Middletown to Citizens, as secured by certain mortgages granted on the 181 Randolph Rd. Property.

25.    "Claim" means any past, present or future claim, demand, action, requests, Cause of Action, suit, proceeding or liability of any kind or nature, whether at law or equity, known or unknown, asserted or unasserted, expected or unexpected, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, required, injunctive, or any other relief, including cross-claims, counterclaims, third-party claims, suits lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, Causes of Action, orders, or claims as that term is defined in Section 101(5) of the Bankruptcy Code; despite any statute of limitations defense.

10

26.     "Claims Bar Date" means March 15, 2022.

27.     "Claims Objection Deadline" means, unless extended by the Court, the first Business Day that follows the sixtieth (60th) day after the Effective Date, by which any objection to a Claim (excluding Class 4 Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

28.     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any Representative or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

29.     "Co-Defendant" means a defendant in a lawsuit in which the Debtor is also named as a defendant, and/or a Person who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such defendant and the Debtor. A Participating Party or Settled Insurer is not a Co-Defendant.

30.     "Committee" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 case, as such committee may be constituted from time to time.

31.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

32.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which becomes a Non-Appealable Order.

33.     "Debtor" means the Diocese as debtor in possession pursuant to Section 1107(a) of the Bankruptcy Code in this above-captioned Chapter 11 case.

34.     "Diocese" means The Norwich Roman Catholic Diocesan Corporation, which is the diocesan corporation formed under applicable Connecticut law, and includes the Debtor and/or Reorganized Debtor.

35.     "Disputed" when used with respect to a Claim against the Diocese or property of the Diocese, means a Claim: (i) designated as disputed, contingent, or unliquidated in the Debtor's Schedules; (ii) which is the subject of an objection, appeal, or motion to estimate that has been or will be timely filed by a party in interest and which objection, appeal, or motion has not been determined by a Non-Appealable Order; or (iii) which during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, is in excess of the amount scheduled as other than disputed, unliquidated, or contingent. The processes for handling "Disputed Claims" do not apply to Class 4 Claims. The

Reorganized Debtor shall have the ability to object to any Class 4 Claim. The process for Class 4 Claims and (if not Disputed by the Reorganized Debtor or if Allowed) Class 4 Claims will be addressed in the Trust Agreement. In the event that any part of a Claim is Disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtor or the Reorganized Debtor, as applicable, and the holder thereof agree otherwise. To the extent the term "Disputed" is used in the Plan with respect to a specified class of Claims or an unclassified category of Claims (i.e., "Disputed [class designation/unclassified Claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified class or unclassified category of Claims.

36. "Disallowed" means (i) a Claim, or any part of it, that has been disallowed by Non-Appealable Order; (ii) a Claim which has been scheduled by the Debtor at zero or as contingent,  disputed, or unliquidated and as to which no Proof of Claim has been timely filed or considered timely filed with the Bankruptcy Court under the Bankruptcy Code, a Non-Appealable Order, or other applicable law; or (iii) a Claim not listed in the schedules filed by the Debtor and as to which no Proof of Claim has been timely filed or considered timely filed with the Bankruptcy Court under the Bankruptcy Code, a Non-Appealable Order, or other applicable law.

37. "Distribution Date" means each date determined by the Trustee in their sole discretion on which distributions will be made from the Trust to holders of allowed Claims classified in Class 4, and in accordance with the Plan, the Confirmation Order and the Trust Distribution Plan.

38. "District Court" means the United States District Court for the District of Connecticut.

39. "Effective Date" means the date upon which the conditions in Section XII of the Plan have been satisfied.

40. "Estate" means the bankruptcy estate created upon the commencement of this Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

41. "Exculpated Parties" means collectively, (i) the Diocese, the Estate, and the Committee; (ii) the respective officers, directors, employees, members, attorneys, financial advisors, members of subcommittees of the board of directors, volunteers, and members of consultative bodies and councils formed under Canon Law of the persons identified in the preceding clause including with respect to their service or participation in an outside board on which they serve at the request of the Diocese or the Bishop, in their capacity as such; (iii) the Settled Insurers with respect to their Settled Insurer Policies; and (iv) professionals of a Person identified in the preceding clause (i) through (iv).

42.     "Extra-Contractual Claims" means any Claim against the Settled Insurers seeking any type of relief in connection with any alleged obligations of the Settled Insurers to the Participating Parties (including compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs or any other type of relief) alleging any of the following: bad faith; failure to provide insurance coverage under any Settled Insurer Policy; failure or refusal to compromise and settle any Claim insured under any Settled Insurer Policy; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of misconduct or any other act or omission of any type for which the claimant seeks relief other than coverage or benefits under an insurance policy. The term "Extra-Contractual Claims" includes all Claims relating to the Settled Insurers' (i) handling of any request for insurance coverage for any Claim under the Settled Insurer Policies; (ii) conduct relating to the negotiation of the Insurance Settlement Agreements; and (iii) conduct relating to the settlement of any Insurance Coverage concerning the Settled Insurer Policies.

43.     "Fee Application" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Claim.

44.     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

45.     "Insurance Claims" means all Claims against any Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by:

(a) the Debtor related to an Abuse Claim including those for (i) indemnity and payment of any Abuse Claim; (ii) failure or refusal to provide Insurance Coverage of an Abuse Claim under any insurance policy; (iii) tortious or wrongful Claims handling including the failure or refusal to timely compromise and settle any Abuse Claims against the Debtor under any insurance policy; and (iv) the interpretation or enforcement of the terms of any insurance policy; and/or

(b) the Participating Parties or Settled Insurers related to an Abuse Claim against the Participating Party or Settled Insurer, whether independently or jointly liable with the Debtor on such Abuse Claim, including (i) indemnity and payment of any Abuse Claim; (ii) failure or refusal to provide Insurance Coverage under any Insurance Policy for an Abuse Claim against the Debtor, a Participating Party or a Settled Insurer; (iii) tortious or wrongful Claims handling including the failure or refusal to timely compromise and settle any Abuse Claims against the Debtor, a Participating Party, or a Settled Insurer under any insurance policy; and (iv) the interpretation or enforcement of the terms of any insurance policy. The term "Insurance Claims" includes any Claims against a Non-Settling Insurer for reimbursement of defense costs or related expenses under any Non-Settling

Insurer's Insurance Policy incurred by the Debtor or a Participating Party through or after the Effective Date.

46.     "Insurance Coverage" means insurance or other form of indemnification against loss, available under any Insurance Policy, whether known or unknown to the Debtor or the Committee, to indemnify and/or defend all or any part of an Abuse Claim asserted against (a) the Debtor and/or (b) a Participating Party.

47.     "Insurance Litigation" means any actual or potential litigation as to any recoveries from any Non-Settling Insurer or any rights under any Non-Settling Insurer Policies.

48.     "Insurance Policy" mean any policy, certificate or other contract providing Insurance Coverage, including without limitation, those listed on Exhibit C.

49.     "Insurance Recoveries" means the rights to any proceeds, including any interest or income earned thereon, and other relief, from (a) any award, judgment, relief, or other determination entered or made as to any Insurance Claims, including regarding any Causes of Action related to or arising in connection with any Insurance Claims; (b) any amounts payable by an Insurer under any settlement agreement with the Debtor, a Participating Party or a Settled Insurer regarding Insurance Claims; and (c) any proceeds of any Insurance Policy paid or payable to the Debtor, a Participating Party or a Settled Insurer regarding Insurance Claims. Insurance Recoveries do not include any recoveries of a Settled Insurer under any agreement or contract providing reinsurance to the Settled Insurer.

50.     "Insurance Settlement Agreement" means, collectively or separately, any agreements between the Debtor and/or the Trustee and any Settled Insurer that resolves, *inter alia*, Insurance Claims.

51.     "Insurer" means a Person (including all of its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in, any Insurance Policy.

52.     "Interest" means all Liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

53.     "Late-Filed Abuse Claim" means an Abuse Claim for which an Abuse Claimant filed a Proof of Claim after the Claims Bar Date and before the Effective Date.

54.     "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind in, upon, or affecting any Asset of the Debtor as contemplated by Section 101(37) of the BankruptcyCode.

55.   "Litigation Claimants" are Abuse Claimants who elect pursuant to the Trust Distribution Plan to litigate their Abuse Claims after the Effective Date for purposes of determining the Non-Settling Insurers' liability, if any, for such Abuse Claims.

56.   "Litigation Claims" are Abuse Claims asserted by Litigation Claimants.

57.   "Medicare Claims" means any and all Claims by CMS against the Trust, any Settled Insurer, or any Participating Party, under MMSEA and under MSP, that relate to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any distribution from the Trust and Claims by CMS relating to reporting obligations.

58.   "Medicare Trust Fund" means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

59.   "MMSEA" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSPA.

60.   "MSPA" means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

61.   "M&T" means M&T Bank Corporation (Manufacturers and Traders Trust Company), and all of its successors by merger and predecessors in interest, including, but not limited to, as successor by merger of People's United Bank, National Association, as successor by merger of Farmington Bank.

62.   "M&T Guaranty Agreement" means that certain Limited Guaranty Agreement executed by the Diocese to Farmington Bank on February 26, 2016, to secure the alleged indebtedness of Mercy High School Corporation to Farmington Bank, M&T's predecessor in interest.

63.   "M&T Secured Guaranty Claim" means that certain general, contingent, unliquidated claim alleged by M&T in the approximate amount of $1,752,820.46 as of the Petition Date, arising as a result of the M&T Guaranty Agreement, and allegedly secured by that certain Open-End Mortgage Deed, Security Agreement and Fixture Filing granted upon the 1740 Randolph Rd. Property by the Diocese to Farmington Bank, M&T's predecessor in interest, on February 26, 2016, and recorded at Volume 1861, Page 407, of the Middletown Land Records.

64.    "M&T Secured Revolving Loan Claim" means the amount of $276,543.32, alleged by M&T to be due and owing under that certain Commercial Note and Revolving Loan Agreement, dated September 7, 1994 by and between the Diocese and M&T, as successor to People's United Bank, National Association, and alleged by M&T to be secured by certain of the Diocese's deposit accounts held at M&T. The M&T Secured Claim is subject to the rights of the Diocese under the Interim Order and Stipulation Authorizing Use of Cash Collateral of, and Granting Adequate Protection to, Peoples United Bank, National Association [Dkt. No. 154].

65.    "Non-Appealable Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and is final and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which, if such an appeal, writ of certiorari, review, reargument, or rehearing has been timely sought, then no order, judgment, or other decree is a Non- Appealable Order until (a) such appeal, certiorari, review, reargument, or rehearing has been denied or dismissed and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; or (b) such order has been affirmed by the highest court to or in which such order was appealed, reviewed, reargued, or reheard, or that granted certiorari, and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Non-Appealable Order."

66.    "Non-Settling Insurer Policy(ies)" means any known or unknown contracts, binders, certificates, or policies of insurance that any Non-Settling Insurer issued, subscribed in any interest in, or has underwritten any risk in, in effect on or before the Effective Date, and that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, the Diocese, the Participating Parties or any of their predecessors in interest, successors, or assigns, and that actually, allegedly or could potentially afford coverage with respect to any Abuse Claim.

67.    "Non-Settling Insurer(s)" means any Insurer that is not a Settled Insurer by the Effective Date; provided, however, that after the Effective Date a Non-Settling Insurer may become and may be treated as a Settled Insurer in accordance with the terms of this Plan including, without limitation, pursuant to Section X of the Plan.

68.    "Oceania" means The Oceania Province of the Congregation of Christian Brothers f/k/a The St. Patrick's Province of the Christian Brothers. For the

avoidance of doubt, "Oceania" does not include the Congregation of Christian Brothers (a/k/a *Congregatio Fratrum Christianorum*, Irish Christian Brothers, or the Edmund Rice Christian Brothers) and any of its subdivisions, subsidiaries, and affiliates, including but not limited to the North American Province of Christian Brothers, other than Oceania.

69.    "Participating Party" means any Person providing consideration in exchange for: (a) the release of any Abuse Related Contribution Claim by the Debtor against such Participating Party; (b) the benefit of the Channeling Injunction; and/or (c) any other benefits for Participating Parties under the Plan. For clarity, the Persons listed on Exhibit F, as may be amended from time to time, are the Participating Parties. Upon the consent of the Trustee, at his sole and absolute discretion, a Person may become a Participating Party after the Effective Date if the Bankruptcy Court approves the agreement between the Person and the Trustee under its retained jurisdiction. Upon the Bankruptcy Court's final approval of such an agreement, Exhibit F will be amended by the Trustee to include such Person. For the purposes of defining a Participating Party, the Persons on Exhibit F shall include their respective predecessors, successors, assigns, employees, officers, agents, attorneys, Representatives, and directors. A Settled Insurer is not a Participating Party. In no event shall a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party or the Holy See become a Participating Party.

70.    "Person" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (i) "person" in Section 101(41) of the Bankruptcy Code; or (ii) "entity" in Section 101(15) of the Bankruptcy Code.

71.    "Petition Date" means July 15, 2021, the date on which the Diocese commenced the Chapter 11 case.

72.    "Plan" means this Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

73.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

74.    "Professional" means any professional employed or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

75.    "Professional Claim" means a Claim for compensation for services and/or reimbursement of expenses pursuant to §§ 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 case.

76.    "Proof of Claim" means a proof of Claim filed in the Chapter 11 case pursuant to § 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

77.    "Related Insurance Claim" means (i) any Claim against any Settled Insurer for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, relates to an Abuse Claim; (ii) any Extra-Contractual Claim that, directly or indirectly, relates to any Abuse Claim; (iii) any Direct Action Claim; and (iv) any Abuse Related Contribution Claim.

78.    "Reorganized Debtor" means the Diocese, on and after the Effective Date. Unless otherwise expressly stated or the context otherwise requires, references to the "Diocese" and the "Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement signed after the Petition Date made by the Diocese as part of the Plan before the Effective Date (unless otherwise provided) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan if confirmed).

79.    "Representatives" means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of a Person, but excluding (i) a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor, a Participating Party or a Settled Insurer, (ii) a successor or predecessor of the Debtor for such successor's or predecessor's independent liability for an act or acts of Abuse, and (iii) the Holy See.

80.    "Settled Insurer Policies" means, collectively, all insurance policies that are the subject of an Insurance Settlement Agreement(s) with the Settled Insurers.

81.    "Settled Insurers" means: (a) each of those Insurers on <u>Exhibit E</u> to the Plan, as the same may be amended under this Plan; and (b) such Insurer's predecessors, successors and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Insurer on <u>Exhibit E</u> to the Plan, and (ii) such successor's or assign's liability is derivative of the liability of the Insurer on <u>Exhibit E</u> to the Plan and not independent of the liability of the Insurer on <u>Exhibit E</u> to the Plan. Upon the consent of the Trustee, at his sole and absolute discretion, a Person may become a Settled Insurer after the Effective Date if the Bankruptcy Court

approves the agreement between the Entity and the Trustee under its retained jurisdiction. Upon the Bankruptcy Court's approval of such an agreement by a Non-Appealable Order, <u>Exhibit E</u> will be amended by the Trustee to include such Person.

82. "Settlement Agreement" means any compromise or settlement of controversy or other agreement by and between the Committee and/or Trustee, on the one hand, and, *inter alia*, the Diocese, a Settled Insurer, Participating Party, and/or any other Person, including Oceania, on the other, resolving any Abuse Claim and/or any Insurance Claim, and includes any Insurance Settlement Agreement.

83. "Supplemental Plan Documents" means, collectively, the documents included (or to be included) in the supplemental appendix to the Plan and filed with the Bankruptcy Court at least 14 days prior to the confirmation hearing.

84. "Transferred Cash" means all the right, title and interest of the Debtor in any and all cash and cash equivalents, marketable securities and all other accounts, and their proceeds, identified in subsection 3 of Section 7.1(a) of this Plan.

85. "Transferred Causes of Action" means all the right, title and interest of the Debtor in any and all Causes of Action, and their proceeds, identified in subsection 5 of Section 7.1(a) of this Plan.

86. "Transferred Insurance Interests" means the Insurance Claims and Insurance Recoveries against Non-Settling Insurers deemed assigned to the Trust pursuant to and to the extent provided by Section VIII of the Plan, as of the Effective Date, and Insurance Claims and Insurance Recoveries transferred after the Effective Date pursuant to any Settlement Agreement approved by a Non-Appealable Order, identified in subsection 7 of Section 7.1(a).

87. "Transferred Real Estate" means all the right, title and interest of the Debtor in any and all Real Estates (including all Land and Improvements), and their proceeds, identified in subsection 4 of Section 7.1(a) of this Plan.

88. "Transferred Receivables" means all the right, title and interest of the Debtor in any and all accounts receivable, notes receivable, and other receivables, and their proceeds, and security therefor, described in subsection 6 of Section 7.1(a) of this Plan, including, but not limited to, those Transferred Receivables identified in <u>Exhibit I</u>.

89. "Trust" means the trust created for the benefit of certain Abuse Claimants in accordance with the Plan and Confirmation Order and the Trust Agreement.

90. "Trust Agreement" or "Trust Documents" shall mean the trust agreement establishing the Trust, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement,

including the Trust Distribution Plan.

91.    "Trust Assets" means the Transferred Cash, the Transferred Causes of Action, the Transferred Insurance Interests, the Transferred Real Estate, the Transferred Receivables and other assets and rights to be transferred to the Trust under Section VII of the Plan or otherwise pursuant to the Plan.

92.    "Trust Distribution Plan" means the Trust Distribution Plan established under the Trust Agreement.

93.    "Trustee" means the Person appointed as Trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order, and the Trust Agreement, or any successor appointed in accordance with the terms of the Plan, Confirmation Order, and the Trust Agreement.

94.    "Unimpaired" means, with respect to a class of Claims, that such class is not impaired.

95.    "Unknown Abuse Claim" means any Claim for Abuse that occurred against a Person when that Person was a minor for which a Proof of Claim was not filed before the Claims Bar Date and such Person (a) was under a disability (such as minority, mental disability, or alienage) on the Petition Date, (b) neither discovered, nor reasonably should have discovered before the Claims Bar Date that their childhood injury was caused by an act of Abuse, or (c) such Claim was barred by the applicable statute of limitations as of the Claims Bar Date, but is no longer barred by the applicable statute of limitations for any reason.

96.    "Unknown Abuse Claimant" means the holder of an Unknown Abuse Claim, the legal representative of the holder of an Unknown Abuse Claim, such as a trustee, the estate of a deceased individual who held an Unknown Abuse Claim, or the personal executor or personal representative of the estate of a deceased individual who held an Unknown Abuse Claim, as the case may be.

97.    "Unknown Abuse Claims Trust" means the trust to be established under the Plan and the Unknown Abuse Claims Trust Agreement. For the avoidance of doubt, "Unknown Abuse Claims Trust" does not include the Trust.

98.    "Unknown Abuse Claims Trust Agreement" means the agreement attached as Exhibit B to the Plan.

99.    "Unknown Abuse Claims Trust Distribution Plan" means the protocol for the allocation, treatment and distribution of Unknown Abuse Claims Trust Assets substantially in the form attached as Exhibit B to the Plan.

100. "Unknown Abuse Claims Trust Assets" means all property funded to the Unknown Abuse Claims Trust under the Plan.

101. "Unknown Abuse Claims Trust Documents" means the Unknown Abuse Claims Trust Agreement, the Unknown Abuse Claims Trust Distribution Plan, and other documents defined as "Unknown Abuse Claims Trust Documents" in the Unknown Abuse Claims Trust Agreement and shall include any documents reasonably necessary or desirable to implement the Plan that relate to the creation, administration, operation and funding of the Unknown Abuse Claims Trust, as any of the same may be amended, modified, or supplemented.

102. "Unknown Abuse Claims Trustee" means _____, the trustee of the Unknown Abuse Claims Trust, and any successor trustee appointed under the Unknown Abuse Claims Trust Agreement.

103. "Unknown Claims Representative" means Michael R. Hogan, in his role as Unknown Claim Representative in accordance with the Order on Debtor's (I) Motion to Appoint an Unknown Claims Representative and (II) Application to Employ Michael R. Hogan as the Unknown Claims Representative (ECF Doc. No. 753), or such other individual who may be appointed to succeed Michael R. Hogan.

104. "Unsecured Claims" means Claims which are not secured by any property of the Debtor's Estate and which are not part of any other class defined in this Plan.

105. "U.S. Trustee" means the Office of the United States Trustee for Region 2,which includes the District of Connecticut.

**1.2    Interpretation**. For purposes of the Plan:

(a)    any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

(b)    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to";

(c)    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(d)    the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(e)     unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(f)     any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(g)     any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

(h)     unless otherwise specified, all references in the Plan to "Schedules" and "Exhibits" are references to Sections, Schedules and Exhibits of or to the Plan;

(i)     the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(j)     captions and headings to Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(k)     the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3     Time Periods**. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4     Exhibits And Schedules**. All exhibits to the Plan (including any Supplemental Plan Documents) (with the Plan, the "Plan Documents") are hereby incorporated by reference and made part of the Plan as if set forth fully herein. The exhibits to the Plan include the following:

| | |
|---|---|
| Exhibit A: | Trust Agreement and Trust Distribution Plan |
| Exhibit B: | Unknown Abuse Claim Trust Agreement and Unknown Abuse Claim Trust Distribution Plan |
| Exhibit C: | Schedule of Insurance Polices |
| Exhibit D: | Schedule of Catholic Entities |
| Exhibit E: | Schedule of Settled Insurers |
| Exhibit F: | Schedule of Participating Parties |
| Exhibit G: | Requested Non-Monetary Commitments to Healing and Reconciliation |

Exhibit H:    Officers and Directors of Reorganized Debtor
Exhibit I:    Transferred Receivables
Exhibit J:    List of Allegedly Barred Child Sexual Abuse Claims

## SECTION II
## PLAN OBJECTIVES AND MEANS OF FUNDING

This Plan provides a platform for:

(a)    The Diocese to make meaningful and substantial contributions to fund through the Trust and Unknown Abuse Claims Trust distributions to Abuse Claimants, while also satisfying or, at least, not impairing, the other Claims against the Diocese;

(b)    The Diocese to reorganize expeditiously on terms and conditions acceptable to the Committee and in the best interests of all Creditors including the Abuse Claimants, and without requiring (although strongly encouraging) the global resolution of all issues presented by its Chapter 11 bankruptcy case; and

(c)    Any of the Insurers, the Catholic Entities or other Persons, including Oceania, to elect to compromise and settle with the Committee, at its sole and absolute discretion, before the initial date set for the approval of the Disclosure Statement, and thereby receive the benefit of the releases and injunctions provided for in this Plan through the incorporation of such settlement into this Plan, by its amendment.

Upon the Effective Date of the Plan, the Insurers whose agreements have been incorporated into this Plan shall become Settled Insurers, and the Catholic Entities and other Persons whose agreements have been incorporated into this Plan shall become Participating Parties. The Diocese's, the Participating Parties' and the Settled Insurers' Insurance Claims against any Non-Settling Insurer shall be transferred to the Trust and shall be a Trust Asset. The Trust Assets shall include, among other assets, contributions from the Diocese, the Participating Parties, and the Settled Insurers, if any, and the assignment of Insurance Claims held by the Diocese, the Settled Insurers, and the Participating Parties. Trust Assets will fund distributions to Abuse Claimants, under the Trust Distribution Plan. Abuse Claimants whose Claims occurred during the coverage period of a Non-Settling Insurers' policy may, subject to the Trustee's consent and the Trust Documents, pursue their Abuse Claims in a court of competent jurisdiction against the Debtor and any other defendant; *provided, however*, that any such Claims are subject to the terms of this Plan and that Claims against the Debtor or a Participating Party may be paid only from the proceeds of an Insurance Policy issued by a Non- Settling Insurer. The Diocese, each Participating Party, and Settled Insurer will receive the benefit of injunctions and releases provided under this Plan. Nothing in this Plan is intended to replace and does not affect, diminish, or impair the liabilities of any Non-Settling Insurer or any Person that is not a Participating Party under applicable non-bankruptcy law, including the law governing joint and several liabilities.

In the event no Insurer and no Catholic Entity enters into an agreement with the Committee to compromise and settle Claims related to Abuse, which agreement is incorporated into this Plan, then the Catholic Entities and the Insurers will not be released from any of their obligations or liabilities and shall not benefit from any injunctions. For clarity, the Insurance Claims held by the Catholic Entities who are not Participating Parties will not be assigned to the Trust. Trust Assets will fund distributions to Abuse Claimants, under the Trust Distribution Plan. Abuse Claimants may elect to pursue their Abuse Claims in any court of competent jurisdiction against the Debtor and any other defendant; *provided, however*, that any such Claims and the pursuit of any such litigation are subject to the terms of this Plan and the Trust Distribution Plan and that Claims against the Debtor may recover only from the proceeds of an Insurance Policy and may not recover from any Revested Assets.

## SECTION III
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.1     Administrative Claims**.

(a)     **Allowed Administrative Claims (other than Professional Claims)**. Each holder of an Allowed Administrative Claim, excluding Professional Claims, against the Diocese shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from the Reorganized Debtor equal to the Allowed amount of such Administrative Claim, unless the holder agrees in writing to other treatment of such Claim.

(b)     **Allowed Professional Claims.** Each holder of an Allowed Professional Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim, an amount from the Reorganized Debtor equal to the Allowed amount of such Professional Claim, unless the holder agrees in writing to other treatment of such Claim.

(c)     **Administrative Filing Deadline.**

1.     Except as otherwise set forth in this Plan, requests for allowance and payment of Administrative Claims, excluding Professional Claims, must be filed and served no later than thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court (the "Administrative Claims Filing Deadline"). Administrative Claims holders, excluding Professional Claims, that do not file a request for payment by the Administrative Claims Filing Deadline shall be forever barred from asserting such Claims against the Diocese, the Reorganized Debtor, any Settled Insurer (to the extent applicable), the Trust, or any of their property. Administrative Claims representing obligations incurred by the Diocese after the Effective Date (including, without limitation, Claims for Professionals' fees and expenses) will not be subject to application to the Bankruptcy Court and may be paid by the Reorganized Debtor in the ordinary course of business and without Bankruptcy Court approval.  In

addition, holders of Administrative Claims representing trade debt incurred after the Petition Date in the ordinary course of Debtor's operations are not required to file requests for allowance of an Administrative Claim and will be paid by the Debtor in the ordinary course.

2.      All objections to the allowance of Administrative Claims (excluding Professional Claims) must be served and filed by any parties-in-interest no later than fourteen (14) days after the Administrative Claim Filing Deadline (the "Administrative Claim Objection Deadline"). If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim will be deemed Allowed. For the avoidance of doubt, the Administrative Claim Objection Deadline established by this subparagraph shall control over any contrary deadline set forth in any requests for payment of Administrative Claims.

(d)      **Professional Claim Filing Deadline**. All Professionals or other Persons holding a Professional Claim for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 case) shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than thirty (30) days after a notice of the Effective Date is filed (the "Professional Claim Filing Deadline").

(e)      **Payment of Allowed Professional Claims**. The Reorganized Debtor shall pay all unpaid Allowed Professional Claims accruing through the Effective Date, (i) within seven (7) days after the later of the Effective Date or the Bankruptcy Court's order on such Claims, or (ii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such holder of an Allowed Professional Claim and the Debtor.

**3.2**      **Priority Tax Claims**. A Priority Tax Claim is an unsecured Claim of a governmental unit entitled to priority in payment under any provision of Section 507(a)(8) of the Bankruptcy Code. As for any Allowed Priority Tax Claim not paid before the Effective Date, the Reorganized Debtor shall (a) pay such Claim as soon as practicable after the Effective Date; or (b) provide such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Debtor and the Estate (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

**3.3**      **U.S. Trustee Fees**. All fees due and payable under 28 U.S.C. § 1930 and not paid before the Effective Date shall be paid as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee until the Bankruptcy Case is closed, and a Final Decree is entered.

In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Diocese. The Trust will have no liability for U.S. Trustee fees.

## SECTION IV
## CLASSIFICATION OF CLAIMS

4.1     **Summary**. The categories of Claims listed below classify Claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of the Plan, and distribution pursuant to the Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claim of Citizens Bank, N.A. | Impaired | Yes |
| 3 | Secured Revolving Loan and Secured Guaranty Claims of M&T | Impaired | Yes |
| 4 | Abuse Claims Other Than Unknown Abuse Claims | Impaired | Yes |
| 5 | Unknown Abuse Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 7 | Abuse Related Contribution Claims | Impaired | Deemed to Reject |

4.2     **Classification and Voting.**  The Claims against the Debtor shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Section III). Consistent with Section 1122 of the Bankruptcy Code, a Claim is classified by the Plan in a particular class only to the extent the Claim is within the description ofthe class, and a Claim is classified in a different class to the extent it is within the description of that different class.

## SECTION V
## TREATMENT OF CLASSIFIED CLAIMS

5.1     **Class 1: Other Priority Claims**.

(a)     **Definition**. A "Class 1 Claim" means an Allowed Claim described in, and entitled to priority under Sections 507(a) and 503(b)(9) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

(b)     **Unimpaired and Not Voting**. Class 1 is not impaired under the Plan. The Class 1 Claimants are conclusively presumed to have accepted and not entitled to vote on the Plan.

(c)     **Treatment**. Unless the holder of an Allowed Class 1 Claim and the Diocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such Allowed Class 1 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 1 Claim becomes an Allowed Claim (or as soon thereafter as is practicable).

**5.2     Class 2 Citizens Bank, N.A.**

(a)     **Class 2 Definition**. Class 2 consists of the Citizens Secured Guaranty Claim.

(b)     **Impaired and Voting**. Class 2 is unimpaired under the Plan. The Class 2 Claimant is not entitled to vote on the Plan.

(c)     **Class 2 Treatment**. The collateral securing the Citizens Secured Guaranty Claim shall upon the Effective Date be transferred to the Trust and the collateral shall continue to secure the Citizens Secured Guaranty Claim. The mortgage and security interest held by Citizens to secure Citizens Guaranty Claim shall remain in place, and the Citizens Secured Guaranty Claim shall be treated in accordance with the Trust Agreement consistent with the provisions of the Bankruptcy Code; provided, however, that the Trust shall have no obligation to pay or other liability on account of the Citizens Secured Guaranty Claim. The Reorganized Debtor shall be liable to Citizens on the Citizens Secured Guaranty Claim to the same extent and validity as the Diocese immediately prior to the Petition Date.

**5.3     Class 3: M&T Bank Corporation**.

(a)     **Class 3 Definition**. Class 3 consists of all claims held by M&T. Class 3 is comprised of the following Sub-Classes:

     i.   Sub-Class 3-A consists of the M&T Secured Revolving Loan Claim; and

     ii.  Sub-Class 3-B consists of the M&T Secured Guaranty Claim.

(b)     **Impaired and Voting**. Class 3 is unimpaired under the Plan. The Class 3 Claimant is not entitled to vote on the Plan.

(c)     **Class 3 Treatment**. The Holder of Allowed M&T Secured Claim and Allowed M&T Secured Guaranty Claim against the Diocese shall receive the treatment set forth below:

     i.   Class 3-A: The collateral securing the M&T Secured Revolving Loan Claim

shall upon the Effective Date vest in the Reorganized Debtor and the collateral shall continue to secure the M&T Revolving Loan Guaranty Claim. The security interest held by M&T to secure M&T Revolving Loan Claim shall remain in place and M&T may exercise any and all rights and remedies against the collateral referenced in such security agreement, available to M&T. The Reorganized Debtor shall be liable to M&T on the M&T Secured Revolving Loan Claim to the same extent and validity as the Diocese immediately prior to the Petition Date.

ii. Class 3-B: The collateral securing the M&T Secured Guaranty Claim shall upon the Effective Date be transferred to the Trust and the collateral shall continue to secure the M&T Secured Guaranty Claim. The mortgage and security interest held by M&T to secure M&T Secured Guaranty Claim shall remain in place, and the M&T Secured Guaranty Claim shall be treated in accordance with the Trust Agreement consistent with the provisions of the Bankruptcy Code; provided, however, that the Trust shall have no obligation to pay or other liability on account of the M&T Secured Guaranty Claim. The Reorganized Debtor shall be liable to M&T on the M&T Secured Guaranty Claim to the same extent and validity as the Diocese immediately prior to the Petition Date.

**5.4      Class 4: Abuse Claims (Other Than Unknown Abuse Claims)**.

(a)      **Definition**. A "Class 4 Claim" means an Abuse Claim other than an Unknown Abuse Claim. A "Class 4 Claimant" shall mean a holder of a Class 4 Claim.

(b)      **Impaired and Voting**. Class 4 is impaired under the Plan. The Class 4 Claimants are entitled to vote on the Plan. Only for purposes of voting, each Claim in Class 4 is deemed to be Allowed in the amount of $1.00.

(c)      **Treatment of Class 4.** On and after the Effective Date, and subject to the Plan provisions, the Trust shall pay all Abuse Claims (except Unknown Abuse Claims) in accordance with and under the Plan and Trust Documents. The payment of the Class 4 Claims by the Trust is not a release, accord or novation of the Debtor's or the Participating Parties' liability because of the Class 4 Claims; provided, however, that the Debtor's liability because of the Class 4 Claims shall be discharged under Bankruptcy Code § 1141(d), subject to Sections 5.4(f) and 13.1 and all of the Participating Parties' liabilities are subject to the Channeling Injunction and releases under the Plan. Under no circumstance shall the Abuse Claims Reviewer's review of a Class 4 Claim affect the rights of a Non-Settling Insurer. Class 4 Claimants shall have their Claims treated under the Trust Distribution Plan. Neither the Trust nor the Diocese have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence and prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (or the Diocese, as applicable), may choose to do so.

28

The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the distributions Class 4 Claimants receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 4 Claims.

(d)     **Diocese Cooperation with Trustee and Abuse Claims Reviewer.** The Diocese and its counsel shall reasonably cooperate with the Trustee and the Abuse Claims Reviewer with any inquiries by either in the administration of the Trust Distribution Plan.

(e)     **Class 4 Claim Objections**. No Class 4 Claimant may challenge the merit, validity, or amount of any other Class 4 Claim. Except for any objection to a Class 4 Claim filed by the Committee, any objection to a Class 4 Claim pending as of the Effective Date is deemed withdrawn with prejudice. The Trustee has the exclusive right to object to a Class 4 Claim and shall succeed to the rights of the Committee because of the Committee's objection to a Class 4 Claim. The Reorganized Debtor shall not have the right to object to a Class 4 Claim. The Trustee shall succeed the Debtor for any pending objections to Class 4 Claims.

(f)     **Diocese Discharge of Class 4 Claim Liability.** The Debtor shall be discharged as set forth in Section 13.1 herein of any liability because of all Class 4 Claims, even if the Claimant rejects the Plan. As provided in Bankruptcy Code § 524(e), unless otherwise provided in this Plan, such discharge shall not affect the liability of any other Entity on, or the property of any other Entity for, the Class 4 Claims including the liability of any Co-Defendant or Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor or the Reorganized Debtor under this Plan and Bankruptcy Code § 1141(d).

Notwithstanding such discharge, to preserve coverage under any Non-Settling Insurer's Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any claims they may have against the Diocese, the Reorganized Debtor, or any Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Class 4 Claim, and any such judgments or awards will be handled under the Plan and the Trust Distribution Plan. The Class 4 Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any Participating Party for any Abuse that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the

Reorganized Debtor, any Participating Party and/or such Non-Settling Insurer or are fully adjudicated, resolved, and subject to a Non-Appealable Order, but recourse is limited as described above.

**NOTHING IN THIS PLAN IS INTENDED TO AFFECT, DIMINISH OR IMPAIR ANY CLASS 4 CLAIMANT'S RIGHTS AGAINST A CO-DEFENDANT, INCLUDING THAT CO-DEFENDANT'S JOINT AND SEVERAL LIABILITY FOR ABUSE UNLESS AND UNTIL THEY BECOME PARTICIPATING PARTIES OR SETTLED INSURERS PURSUANT TO THE TERMS OF THIS PLAN.**

(g)     **Remand of State Court Actions**. On the thirtieth (30th) day after the Effective Date, all actions related to Class 4 Claims removed to the Bankruptcy Court shall be remanded to the state courts where the actions originally were commenced; provided that an action shall not be remanded if the plaintiff files a written request to the contrary with the Bankruptcy Court prior thereto. The Bankruptcy Court shall enter an order in each of the removed actions remanding them under the Plan.

(h)     **Late-Filed Abuse Claims.**

1.     Unless and until Disallowed by a Non-Appealable Order entered by this Court, or classified as an Unknown Abuse Claim in accordance with the terms and conditions of this Plan, each Late-Filed Abuse Claim shall be classified as a Class 4 Claim. For purposes of voting upon the Plan, the preceding determination shall be made as of the deadline for the return of Ballots to vote for the Plan.

2.     A Late-Filed Abuse Claim may be Allowed by the Bankruptcy Court as a Class 4 Claim upon motion by the Abuse Claimant and after due notice and a hearing where the Abuse Claimant establishes their excusable neglect excusing the late filing of their Proof of Claim and the Bankruptcy Court orders that the Late-Filed Abuse Claim shall be treated as timely filed on or before the Claims Bar Date. Unless and until such motion is granted and the Late-Filed Abuse Claim is Allowed as a Class 4 Claim by a Non-Appealable Order, no distribution shall be paid on account of the Late-Filed Abuse Claim as a Class 4 Claim pursuant to the Trust Distribution Plan.

3.     An Abuse Claimant holding a Late-Filed Abuse Claim may elect at their sole and absolute discretion to be classified and treated as an Unknown Abuse Claimant by making such election upon their Ballot returned at any time on or before the deadline for the return of Ballots. In such event, such Late-Filed Abuse Claim shall be classified as a Class 5 Claim and treated in accordance with such Class 5 and the Unknown Abuse Claims Trust Distribution Plan.

4.     After the deadline for the return of Ballots, any Late-Filed Abuse Claim

that had not previously elected to be classified and treated as an Unknown Abuse Claimant may still make such election at their sole and absolute discretion upon providing the Abuse Claims Reviewer and the Unknown Abuse Claims Reviewer with written notice of such election in accordance with the Trust Distribution Plan and the Unknown Abuse Claims Trust Distribution Plan.

5.    For the avoidance of doubt, the holder of a Late-Filed Abuse Claim Disallowed as a Class 4 Claim may still make the election to have their Late-Filed Abuse Claim treated as an Unknown Abuse Claim.

6.    Any Abuse Claimant holding a Late-Filed Abuse Claim who, at any time, elects to be treated as holding an Unknown Abuse Claim, must still satisfy the requirements provided for in this Plan and in the Unknown Abuse Claims Trust Distribution Plan to receive any distributions on account of such Unknown Abuse Claim; specifically, that the Late-Filed Abuse Claim constitutes a Claim for Abuse that occurred against a Person when that Person was a minor for which a Proof of Claim was not filed before the Claims Bar Date and such Person:

   a.    was under a disability (such as minority, mental disability, or alienage) at the time of the Petition Date;

   b.    neither discovered, nor reasonably should have discovered before the Claims Bar Date that their childhood injury was caused by an act of Abuse; or

   c.    such Claim was barred by the applicable statute of limitations as of the Claims Bar Date, but is no longer barred by the applicable statute of limitations for any reason.

(i)    **Barred Child Sexual Abuse Claims.** All Barred Child Sexual Abuse Claims constitute Class 4 Claims classified and treated in accordance with this Class 4 and the other terms of the Plan, the Confirmation Order and the Trust Distribution Plan, specifically, without limitation, Section 7.2 of the Trust Distribution Plan. A Class 4 Claim's qualification as a Barred Child Sexual Abuse Claim shall not constitute a basis for any party in interest, including the Trustee, to object to the Allowance of such Abuse Claim.

(j)    **Litigation of Class 4 Claims Against Non-Settling Insurers.** A Class 4 Claimant, with the consent of the Trustee and under the Trust Distribution Plan and Trust Agreement, may commence an action against the Diocese and, if applicable, one or more Participating Parties, solely for liquidating a Class 4 Claim in order to pursue Insurance Recoveries regarding such Class 4 Claim from Non-Settling Insurers. The Diocese will not have to expend any funds regarding such defense, except to the extent required by the terms of any Insurance Policy issued by a Non-

Settling Insurer. Consistent with the discharge provided for in Section 13.1 and the rights of a Participating Party, any judgment obtained in such action may not be enforced against the Diocese, a Participating Party and/or any of the non-insurance assets of the Diocese or such Participating Party, including, but not limited to, the Revested Assets or any assets acquired by the Reorganized Debtor after the Effective Date, and such judgment shall be paid under the Plan and the Trust Distribution Plan and shall be fully enforceable solely against and paid by any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy. Any recovery from the prosecution of such an action is deemed assigned to the Trust to the extent provided in the Plan, including as provided in Trust Distribution Plan.

**5.5**     **Class 5: Unknown Abuse Claims**.

(a)     **Definition**. A Class 5 Claim means an Unknown Abuse Claim ("Class 5 Claim"). A "Class 5 Claimant" shall mean a holder of a Class 5 Claim.

(b)     **Impaired and Voting**. Class 5 is impaired under the Plan. The Unknown Claims Representative is entitled to vote on this Plan on behalf of Class 5 Claimants. Only for purposes of voting, the Unknown Claims Representative is deemed to have an Allowed Claim in the amount of $1.00.

(c)     **Treatment**. The Unknown Abuse Claims Trust will be funded by the Debtor on the Effective Date pursuant to the provisions of this Plan. On and after the Effective Date, the Unknown Abuse Claims Trust shall pay all Unknown Abuse Claims in accordance with and the Plan and Unknown Abuse Claims Trust Documents. The payment of the Unknown Abuse Claims by the Unknown Abuse Claims Trust is not a release, accord or novation of the Debtor's or the Participating Parties' liability because of the Unknown Abuse Claims; provided, however, that the Debtor's liability because of the Unknown Abuse Claims shall be discharged under Bankruptcy Code § 1141(d), subject to Sections 5.5(g) and 13.1 and all of the Participating Parties' liabilities are subject to the Channeling Injunction and releases under the Plan. Under no circumstance shall the Abuse Claims Reviewer's review of an Unknown Abuse Claim affect the rights of a Non-Settling Insurer. Unknown Abuse Claimants shall have their Claims treated under the Unknown Abuse Claims Trust Distribution Plan.

(d)     **Preservation of Liability of Non-Settling Insurers**. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Unknown Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the distributions Unknown Abuse Claimants receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Unknown Abuse Claims Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Unknown Abuse Claims.

(e) **Diocese Cooperation with Unknown Abuse Claims Trustee and Abuse Claims Reviewer.** The Diocese and its counsel shall reasonably cooperate with the Unknown Abuse Claims Trustee and the Abuse Claims Reviewer with any inquiries by either in the administration of the Unknown Abuse Claims Trust Distribution Plan.

(f) **Unknown Claim Objections.** No Class 5 Claimant may challenge the merit, validity, or amount of any other Class 5 Claim. Except for any objection to a Class 5 Claim filed by the Committee, any objection to a Class 5 Abuse Claim pending as of the Effective Date is deemed withdrawn with prejudice. The Unknown Abuse Claims Trustee has the exclusive right to object to a Class 5 Claim and shall succeed to the rights of the Committee because of the Committee's objection to a Class 5 Claim. The Reorganized Debtor shall not have the right to object to a Class 5 Claim.

(g) **Diocese Discharge of Unknown Abuse Claim Liability.** The Debtor shall be discharged as set forth in Section 13.1 herein of any liability because of all Class 5 Claims, even if the Claimant rejects the Plan. As provided in Bankruptcy Code § 524(e), unless otherwise provided in this Plan, such discharge shall not affect the liability of any other Entity on, or the property of any other Entity for, the Unknown Abuse Claims including the liability of any Co-Defendant or Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor or the Reorganized Debtor under this Plan and Bankruptcy Code § 1141(d).

Notwithstanding such discharge, to preserve coverage under any Non-Settling Insurer's Insurance Policies, Class 5 Claimants specifically reserve, and do not release, any claims they may have against the Diocese or any Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Unknown Abuse Claim, and any such judgments or awards will be handled under the Plan and the Trust Distribution Plan. The Class 5 Claims will not be released or enjoined as against the Diocese or any Participating Party for any Unknown Abuse Claim that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the Reorganized Debtor, any Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to a Non-Appealable Order, but recourse is limited as described above.

**NOTHING IN THIS PLAN IS INTENDED TO AFFECT, DIMINISH OR IMPAIR ANY UNKNOWN ABUSE CLAIMANT'S RIGHTS AGAINST A CO-DEFENDANT, INCLUDING THAT CO-DEFENDANT'S JOINT AND SEVERAL LIABILITY FOR UNKNOWN ABUSE CLAIMS UNLESS AND**

**UNTIL THEY BECOME PARTICIPATING PARTIES OR SETTLED INSURERS PURSUANT TO THE TERMS OF THIS PLAN.**

5.6 **Class 6: General Unsecured Claims**.

(a) **Definition**. A Class 6 Claim means (i) any Claim arising out of the rejection of any executory contract, or (ii) any Unsecured Claim that is not included in another class under the Plan and is not listed as disputed, contingent or unliquidated on the Debtor's schedules filed in connection with this Chapter 11 case ("Debtor's Schedules") or as to which the holder of such Claim timely filed a Claim.

(b) **Impaired and Voting**. Class 6 is unimpaired under the Plan. The Class 6 Claimants are conclusively presumed to have accepted and not entitled to vote on the Plan.

(c) **Treatment**. Except to the extent that a Class 6 Claimant agrees to less favorable treatment of their Class 6 Claim, in exchange for full and final satisfaction of such Allowed General Unsecured Claim, at the sole option of the Reorganized Diocese: (a) each Class 6 Claimant shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim, payable on or as soon as reasonably practicable after the last to occur of (i) the Effective Date, (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, and (iii) the date on which the Class 6 Claimant and the Diocese or Reorganized Diocese, as applicable, shall otherwise agree in writing; or (b) satisfaction of such Allowed General Unsecured Claim in any other manner that renders the Allowed General Unsecured Claim Unimpaired, including reinstatement.

5.7 **Class 7: Abuse Related Contribution Claims**.

(a) **Class 7 Definition**. A Class 7 Claim means all Abuse Related Contribution Claims.

(b) **Impaired and Voting**. Class 7 is impaired under the Plan. The Class 7 Claimants are entitled to vote on the Plan.

(c) **Class 7 Treatment**. Claims in Class 7 against the Debtor shall be disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 7 Claims will receive no distribution under the Plan. Notwithstanding the disallowance of an Abuse Related Contribution Claim, an Abuse Claimant who liquidates their claim in an amount greater than $0, consents to application of its portion of the reserve established by the Trustee under the Trust Agreement to pay any Co-Defendant for its contribution, reimbursement, and/or indemnity claim, if any, against the Debtor.

**SECTION VI**
**ACCEPTANCE OR REJECTION OF PLAN**

**6.1    Impaired Classes to Vote.** Each holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan. Class 2, Class 3-B, Class 4 and Class 5 are impaired under the Plan.

**6.2    Acceptance By Class of Creditors**. An impaired Class, shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

**SECTION VII**
**TRUST AND UNKNOWN ABUSE CLAIMS TRUST**

**7.1    Establishment Of Trust**. On the Confirmation Date, the Trust shall be established under the Trust Documents and the Unknown Abuse Claims Trust shall be established under the Unknown Abuse Claims Trust Documents. The Trust Documents and Unknown Abuse Claims Trust Documents, including the Trust Agreement and Unknown Abuse Claims Trust Agreement, are incorporated herein by reference.

(a)    **Funding of Trust**.

1.    **Summary**. The Trust will be funded from the sources and in the manner set forth in this Section.

2.    **Contributions**. The Debtor shall convey, transfer, assign and deliver to the Trust, and the Trust will accept from the Debtor, all of the right, title and interest of the Debtor in and to the assets, properties and rights of the Debtor described in this Section, all as in accordance with this Plan.

3.    **Transferred Cash**. On or before the Effective Date, the Debtor shall transfer or cause to be transferred on its behalf by wire transfer to the Trust $1.3 million in good and immediately available funds.

4.    **Transferred Real Estate.** The Debtor shall transfer to the Trust all pieces and parcels of Real Property described in this subsection 4 of Section 7.1(a), including, for each such piece and parcel of Real Property, the following:

(i)    The fee simple estate in the real property, together with all reversions, remainders, easements, rights-of-way, hereditaments and appurtenances thereto ("Land");

(ii)    All existing buildings or other improvements, structures and open parking facilities thereon and all heating, plumbing and electrical fixtures and all other fixtures belonging and attached thereto ("Improvements" which, together with the Land are hereinafter collectively the "Real Property");

35

(iii)     All right, title and interest of Debtor in and to all existing governmental permits, licenses, certificates and authorizations, including, without limitation, certificates of occupancy, relating to the Real Property, to the extent assignable (the "Permits"); and

(iv)     All right, title and interest of the Debtor in and to all site plans, surveys, soil studies, architectural drawings, all engineering and architectural plans and specifications, and all environmental assessment reports, engineering, structural or physical inspection reports, in Seller's possession relating to the Real Property (the "Plans").

The Real Property constituting Trust Assets to be transferred to the Trust consists in the following described Real Property:

(i)      Vacant Land: 7-9 Bath St., Norwich, CT 06360;
(ii)     Bath Street Office, 11 Bath St. Norwich, CT 06360;
(iii)    Moss Property, 7 Otis St. Norwich, CT 06360;
(iv)     Tribunal, 17 Otis St., Norwich, CT 06360;
(v)      Diocesan School Office, 25 Otis St Norwich, CT 06360;
(vi)     Vacant Office, 31 Perkins Ave., Norwich, CT 06704;
(vii)    1740 Randolph Rd., Middletown, CT 06457-5155;
(viii)   181 Randolph Rd., Middletown, Ct 06457-5155;
(ix)     Newman Hall, 290 Prospect St., Willimantic, CT 06360;
(x)      and
(xi)     1593 Route 32, Uncasville, CT, 06382.

5.     **Transferred Causes of Action.** The Causes of Action of the Diocese are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date.  The Transferred Causes of Action shall include, but shall not be limited to, the following Causes of Action against:

(i)      The Catholic Entities for any accounts receivable, notes receivable or other receivables due, and any security therefor;

(ii)     Mount St. John, Inc. for the note balance and all other amounts due, and any security therefor;

(iii)    Mercy High School Corporation, Saint Bernard School of Montville, Incorporated, and/or Xavier High School Corporation of Middletown, to the extent liable pursuant to Bankruptcy Code §§ 544, 548 & 550, and pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552a – 52-552l ("CUFTA");

(iv)     The ACA to the extent liable pursuant to Bankruptcy Code §§ 544, 548 & 550, and pursuant to CUFTA;

(v)    The Catholic Foundation of the Diocese of Norwich, Inc. to the extent liable pursuant to Bankruptcy Code §§ 544, 548 & 550, and pursuant to CUFTA;

(vi)   The Catholic Entities, other than Participating Parties, to the extent liable in connection with any Abuse Claim, for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, or reimbursement, or any other indirect or derivative recovery for the payment of money where the Diocese or any Participating Party has paid more than its equitable or proportionate share of an Abuse Claim against a Participating Party; and

(vii)  Officers and directors of the Debtor on account of any breach of fiduciary duty or other claim.

6.    **Transferred Receivables.**  The Transferred Receivables of the Diocese are automatically and without further act or deed assigned and transferred to the Trust on the Effective Date, including, but not limited to, all receivables identified in Exhibit I.

7.    **Transferred Insurance Interests.** The Insurance Claims and the Insurance Recoveries against Non-Settling Insurers deemed assigned to the Trust pursuant to and to the extent provided by Section IX of the Plan.

8.    **Settled Insurer and Participating Party Contributions**.

(i)    Any Settled Insurer and Participating Party shall pay to the Trust the sums set forth in their respective agreement within the time set forth in the such agreement. In addition, all rights to receive payment of the amounts to be paid under the agreement shall be assigned to the Trust.

(ii)   As set forth and to the extent provided in Section IX of the Plan and the Confirmation Order, on the Effective Date, with no further act by any party, the Diocese and the Participating Parties shall be deemed to have assigned the Insurance Claims and the proceeds of such Insurance Claims to the Trust and such assignment shall immediately be deemed effective. On the Effective Date, the Trust will be empowered to receive assignment of Litigation Awards and to take all steps necessary to pursue recovery from Non-Settling Insurers.

9.    **Vesting**. All Trust Assets required by the Plan and the Confirmation Order to be transferred to the Trust on the Effective Date shall vest in the Trust

on the Effective Date, and the Diocese, Participating Parties and Settled Insurers shall be deemed for all purposes to have transferred all of their respective Interests in the Trust Assets to the Trust. The Diocese, the Participating Parties and the Settled Insurers, as applicable, shall take all actions reasonably necessary to transfer the Trust Assets to the Trust. Upon the transfer of Trust Assets in accordance with this Section 7.1(a), the Diocese, the Participating Parties and the Settled Insurers shall have no further Interest in or with respect to the Trust Assets except as otherwise explicitly provided in this Plan.

(b)    **Funding of Unknown Abuse Claims Trust.** The Unknown Abuse Claims Trust shall be funded by the Debtor and the Reorganized Debtor by transferring to the Unknown Abuse Claims Trust the amounts directed and within the time frames required by the Unknown Claims Representative.

(c)    **Reserve Accounts.** As set forth in the Trust Agreement and Unknown Abuse Claims Trust Agreements, the Trustee and Unknown Abuse Claims Trustee shall establish reserves for various purposes.

(d)    **No Execution**. All funds held in the Trust will remain property of such Trust until the funds have been actually paid to and received by a Person entitled to receive payment under the Plan, Confirmation Order and Trust Documents. Except as provided in the Plan, Confirmation Order and the Trust Documents, the Trust shall not be responsible for any Claims against the Debtor. All funds held in the Unknown Abuse Claims Trust will remain property of the Unknown Abuse Claims Trust until the funds have been actually paid to and received by a Entity entitled to receive payment under the Plan, Confirmation Order and Unknown Abuse Claims Trust Documents. Except as provided in the Plan, Confirmation Order and the Unknown Abuse Claims Trust Documents, the Unknown Abuse Claims Trust shall not be responsible for any Claims against the Debtor.

**7.2    Payments Effective Upon Tender.** Whenever the Plan requires payment to be made to a creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Debtor, or the Reorganized Debtor to the creditor to whom payment isdue. If any creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Debtor, or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Trust, the Debtor, or the Reorganized Debtor failed to pay the tendered payment.

## SECTION VIII
## LIQUIDATION AND PAYMENT OF ABUSE CLAIMS

**8.1    Liquidation And Payment of Abuse Claims.**

(a)     The Trust and Unknown Abuse Claims Trust shall pay Abuse Claims under the terms of the Plan, Confirmation Order, the Trust Agreement, the Trust Distribution Plan, the Unknown Abuse Claims Trust Agreement, and the Unknown Abuse Claims Trust Distribution Plan, as applicable.

(b)     The Abuse Claims Reviewer's determinations shall not be a finding or fixing of the fact or liability or the amount payable for any Abuse Claim with any binding legal effect, other than for distribution purposes by the Trust under the Trust Distribution Plan or the Unknown Abuse Claims Trust under the Unknown Abuse Claims Trust Distribution Plan. The Trustee's, Unknown Abuse Claims Trustee's or Abuse Claims Reviewer's determination of qualification of an Abuse Claim, payment on account of an Abuse Claim or reserve for payment on account of an Abuse Claim is not an admission of liability by the Debtor, a Participating Party, the Trust, or the Unknown Abuse Claims Trust regarding any Abuse Claims and has no *res judicata* or collateral estoppel effect on the Debtor, any Participating Party, the Trust, the Unknown Abuse Claims Trust, any Non-Settling Insurer or Settled Insurer. Trust and Unknown Abuse Claims Trust distributions do not release the Debtor or any Participating Party nor are Trust Distributions or Unknown Abuse Claims Trust Distributions an agreement or novation of the Debtor's or Participating Party's liability because of the Abuse Claims. The Trust's or Unknown Abuse Claims Trust's act of making a distribution is immaterial to, and shall not be construed as, a determination or admission of the Diocese's or any Participating Party's liability for, or damages regarding, any Abuse Claim. The determination of qualification, estimation of Abuse Claims, and payment of distributions is not a settlement, release, accord, or novation of any Abuse Claims and cannot be used by any joint tortfeasor as a defense to any alleged joint liability. The Trustee's, Unknown Abuse Claims Trustee's or Abuse Claims Reviewer's determination of qualification of an Abuse Claim, payment on account of an Abuse Claim or reserve for payment on account of an Abuse Claim does not impair an Abuse Claimant's rights to obtain a judgment, including a judgment based on joint and several liability, against the Diocese, a Participating Party, or any Non-Settling Insurer, to establish the Diocese's and/or a Participating Party's liability on the Abuse Claim, but any such judgment awarded to an Abuse Claimant will be reduced by the Trust Distributions or Unknown Abuse Claims Trust Distributions already paid by the Trust or Unknown Abuse Claims Trust to such Abuse Claimant on their Abuse Claim(s).

(c)     Nothing in the Trust Documents or Unknown Abuse Claims Trust Documents shall (i) impose any costs, directly or indirectly, upon the Estate, any Participating Party or any Settled Insurer relating to the treatment of Abuse Claims or (ii) otherwise modify the rights or obligations of the Estate, any Participating Party or Settled Insurer as otherwise in the Plan.

(d)     Neither the Debtor's or the Participating Parties' obligations to Abuse Claimants shall be deemed to have been paid in full, nor their liability to Abuse Claimants

satisfied, because of reserves for, distributions because of or payments received by Abuse Claimants from the Trust or Unknown Abuse Claims Trust, except as modified by the discharge provisions in Section XIII. The Trust, Unknown Abuse Claims Trust or the Diocese and Participating Parties may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims. In addition, the Non-Settling Insurers remain fully liable for their obligations related to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the amount of distributions Abuse Claimants receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust or Unknown Abuse Claims Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Abuse Claims.

**8.2    Effect of No Award on Abuse Claims.** If an Abuse Claim is denied payment under the Trust Distribution Plan or Unknown Abuse Claims Trust Distribution Plan, the holder of such Abuse Claim will have no further rights against the Diocese, Participating Parties, the Trust, Trustee, Unknown Abuse Claims Trust, or Unknown Abuse Claims Trustee relating to such Abuse Claim.

**8.3    Treatment of Punitive Damages.** Claims for punitive or exemplary damages in connection with any of the Claims will receive no distribution under the Plan.

**8.4    Withdrawal of Abuse Claims.** An Abuse Claimant may withdraw an Abuse Claim at any time on written notice to the Trustee or Unknown Abuse Claims Trustee, as applicable. If withdrawn, the Claim will be withdrawn with prejudice and may not be reasserted.

**8.5    Medicare Reimbursement and Reporting Obligations.**

(a)    The Trust and Unknown Abuse Claims Trust shall register as a Responsible Reporting Entities ("RRE") under the reporting provisions of Section 111 of MMSEA.

(b)    The Trust and Unknown Abuse Claims Trust shall timely submit all reports required under MMSEA because of any claims settled, resolved, paid, or otherwise liquidated by the Trust or Unknown Abuse Claims Trust. The Trust or the Unknown Abuse Claims Trust, as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA (collectively, "CMS") to determine whether, and, if so, how, to report to CMS under MMSEA.

(c)    For Abuse Claims that occurred after December 5, 1980, before remitting funds to Claimants' counsel, or to the Claimant if such Claimant is acting pro se, regarding any Abuse Claim, the Trustee or Unknown Abuse Claims Trustee shall obtain (i)

a certification that said Claimant (or such Claimant's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim and (ii) that the Claimants' counsel or Claimant (if Claimant is acting pro se) indemnifies the Trust for any such obligations.

**8.6    No Admission.** Section 8.5 does not imply, and shall not be an admission that the Debtor, any Participating Party or any Settled Insurer are "applicable plans" within the meaning of Medicare, Medicaid and SCHIP Extension Act of 2007, or that they have any legal obligation to report any actions undertaken by the Trust or Unknown Abuse Claims Trust or contributions to the Trust or Unknown Abuse Claims Trust under Medicare, Medicaid and SCHIP Extension Act of 2007 or any other statute or regulation.

**8.7    Delay Regarding Failure to Comply**. The failure by one or more Medicare Beneficiaries or other Abuse Claimants to follow these provisions shall not delay or impair the payment by the Trustee or Unknown Abuse Claims Trustee to any other Medicare Beneficiary or other Abuse Claimant following these provisions.

**8.8    Documentation By Estate of Abuse Claimant.** If the Abuse Claimant is the estate of an Abuse Claimant, then the letters or documentation required under Section 8.5 need not be dated within 120 days of payment by the Trustee or the Unknown Abuse Claims Trustee to such Claimant.

**SECTION IX**
**INSURANCE MATTERS**

**9.1    Transfer of Insurance Interests.**

(a)    On the Effective Date, and with no further action by any party, but subject to this Plan, the Diocese and each of the Participating Parties will be deemed to have assigned to the Trust the Diocese's and the Participating Parties' rights to all Insurance Claims and Insurance Recoveries against the Non-Settling Insurers (the "Transferred Insurance Claims"). The Transferred Insurance Claims shall be effective to the maximum extent permissible under applicable law and the terms of the Insurance Policies and shall not be construed: (i) as an assignment of the Insurance Policies or (ii) to entitle any Person to Insurance Coverage other than those Persons or entities entitled to such coverage under the terms of the Insurance Policies. The determination of whether the assignment of Insurance Claims and Insurance Recoveries provided for in this Section is valid, and does not defeat or impair the Insurance Coverage shall be made by the Bankruptcy Court at the Confirmation Hearing.

(b)    If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and

will be forever barred from asserting that the assignment affects the ability of the Trust to pursue Insurance Claims, Insurance Coverage, and/or Insurance Recoveries from the Non-Settling Insurers.

(c)     If the Bankruptcy Court determines that the assignment of the Insurance Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, only such obligations of the Diocese or the Participating Parties under the Non-Settling Insurer Insurance Policies as are necessary to enforce the Transferred Insurance Claims; provided, however, that the Trust's assumption of such responsibility shall not relieve the Diocese or the Participating Parties from any duty that such entities may have under the Non-Settling Insurer Policies.

**9.2     Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries.**

(a)     Under Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is appointed as the representative of the Diocese and Participating Parties to retain and enforce the Diocese's and Participating Parties' Insurance Coverage and for Insurance Claims regarding the Abuse Claims against the Diocese and Participating Parties for any Insurance Claims transferred to the Trust.

(b)     The determination of whether the appointment of the Trust as the Debtor's and the Debtor's Estate's representative provided for in Section 9.2(a) is valid and does not defeat or impair the Insurance Coverage, shall be made by the Bankruptcy Court at the Confirmation Hearing. If a party in interest fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue the Transferred Insurance Claims, the Insurance Coverage, and/or Insurance Recoveries related to Transferred Insurance Claims from the Non-Settling Insurers.

(c)     If the Bankruptcy Court determines that the appointment is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, only such obligations of the Diocese or the Participating Parties under the Non-Settling Insurer Insurance Policies as are necessary to enforce the Transferred Insurance Claims; provided, however, that the Trust's appointment shall not relieve the Diocese or the Participating Parties from any duty that such entities may have under the Non-Settling Insurer Insurance Policies.

**9.3     Consequences of Determination That Assignment or Appointment Is Invalid.**

(a)     If a Non-Appealable Order is entered holding that the assignment of Insurance Claims provided for in Section 9.1 above, or that the appointment of the Trust as the Diocese's and Participating Parties' representative provided for in Section 9.2 above, is invalid or would defeat or impair the Insurance Coverage regarding an Insurance Policy, as to such Insurance Policy, the assignment and/or appointment, as the case may be, will be deemed not to have been made. If the assignment and/or appointment is not deemed to have been made, the Diocese and each of the Participating Parties will retain the Insurance Claims under such Insurance Policy, and the following shall apply:

1.     The Trust, the Reorganized Debtor, and any Participating Parties shall enter into a common interest agreement related to pursuing any Transferred Insurance Claims.

2.     The Reorganized Debtor and the Participating Parties will assert their Insurance Claims to the extent requested by the Trust against any Non-Settling Insurer. All Insurance Recoveries identified as transferred to the Trust under Section 9.1 above received by the Reorganized Debtor and the Participating Parties will be immediately paid to the Trust. The Reorganized Debtor and Participating Parties will select and retain counsel to pursue their Insurance Claims under this Section, subject to the Trustee's approval, which approval shall not be unreasonably withheld.

3.     The Reorganized Debtor and Participating Parties shall cooperate with the Trust regarding the Transferred Insurance Claims, including that the Reorganized Debtor and Participating Parties will provide the Trustee and its counsel with all discovery requests, pleadings, moving documents and other papers that the Reorganized Debtor or Participating Parties intend to make or file regarding the Transferred Insurance Claims and any related counterclaims against the Non-Settling Insurers before making such requests or filing. The Reorganized Debtor and Participating Parties shall keep the Trustee advised of any settlement discussions regarding any litigation against a Non-Settling Insurer and will involve the Trust's counsel in all settlement discussions with any Non-Settling Insurer.

4.     The Trust shall pay the reasonable attorneys' fees, costs and expenses allowed by the Bankruptcy Court incurred by the Reorganized Debtor and Participating Parties in pursuing the Transferred Insurance Claims under this Section 9.1, subject to a monthly cap to be established by the Trustee, in consultation with the Reorganized Debtor and Participating Parties.

5.     The Trust shall, in addition to reasonable attorneys' fees, costs and expenses provided for in Section 9.3(a)4, reimburse the Reorganized Debtor and Participating Parties for any reasonable out of pocket costs and expenses it incurs as a direct consequence of pursuing such Transferred Insurance Claims, but will not compensate the Reorganized Debtor and Participating

Parties for any time any of its employees spends. All Insurance Recoveries received by the Reorganized Debtor or Participating Parties because of such Transferred Insurance Claims shall be held in trust to benefit the Trust and shall be immediately remitted by the Reorganized Debtor or Participating Parties to the Trust.

**9.4     Preservation of Insurance Rights.** Nothing in this Plan shall be construed to impair or diminish any Non-Settling Insurer's obligations under any Insurance Policy. No provision of this Plan shall impair or diminish any Non-Settling Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies issued by the Non-Settling Insurers or the Insurance Claims against the Non-Settling Insurers. If any court determines that any provision of this Plan impairs or diminishes any Non-Settling Insurer's obligations regarding the Insurance Claims or Insurance Recoveries, such provision shall be given effect only if it shall not cause such impairment or diminishment.

**9.5     Post-Judgment Actions Against Non-Settling Insurers.** If the Trust or any Abuse Claimant obtains a judgment against the Reorganized Debtor or Participating Parties, the Reorganized Debtor or Participating Parties will cooperate with the Trust or Abuse Claimant in the pursuit of any action brought by the Trust or Abuse Claimant against a Non-Settling Insurer that the Trust contends provides Insurance Coverage for such judgment. The Reorganized Debtor and/or Participating Parties will provide the Trust or Abuse Claimant with any non-privileged and relevant documents and information reasonably requested by the Trust or Abuse Claimant in pursuit of such action. The Trust will reimburse the Reorganized Debtor and Participating Parties for any reasonable out of pocket costs they incur, including attorneys' fees, as a direct consequence of such cooperation, but will not compensate the Reorganized Debtor and Participating Parties for any time their employees spend.

**9.6     Settlement with Non-Settling Insurers.** Following the Effective Date, the Reorganized Debtor and the Participating Parties shall not enter into an agreement affecting any Insurance Policy with any Non-Settling Insurer without the express written consent of the Trustee, which consent may be granted or withheld at the Trustee's sole and absolute discretion. Following the Effective Date, the Trust shall exclusively act on the Reorganized Debtor's and Participating Parties' behalf to negotiate a settlement with any Non-Settling Insurer because of such Insurance Claims, unless Section 9.3 applies. Such settlements may provide for the Non-Settling Insurer to become a Settling Insurer.

**9.7     Cooperation with Non-Settling Insurer in Defense of Claims.** Without limiting the Diocese and/or Participating Party's obligations under this Section IX, if any Abuse Claimant prosecutes an action against the Diocese and/or Participating Party, the Diocese and/or Participating Party will cooperate, under the terms of any applicable Insurance Policy, with a Non-Settling Insurer providing a defense to such a Claim. The Trust will reimburse the Reorganized Debtor and/or the Participating Party the reasonable attorneys' fees, costs and expenses allowed by the Bankruptcy Court incurred as a direct consequence of such cooperation, subject to a monthly cap to be established by the Trustee, in consultation with the Reorganized Debtor and Participating Parties, but the Trust will not compensate the Reorganized Debtor or Participating Parties for any time their employees spend. To the extent a Non-Settling Insurer has refused to defend an Abuse

44

Claim, the Reorganized Debtor and/or Participating Party will not cooperate with such Insurer and may enter into stipulated judgments with the Abuse Claimant or the Trustee. The Trust will not reimburse the Reorganized Debtor or Participating Party for any out-of-pocket costs if the Non-Settling Insurer has refused to defend the Abuse Claim. If the Trust asserts any claim that the Diocese has breached such duties or obligations under the Non-Settling Insurer Insurance Policies causing a loss of coverage, it shall give the Diocese notice and an opportunity to cure any alleged breach, and the Diocese shall not be liable for any alleged breach causing a loss of coverage except when (i) the breach relates to post-Effective Date conduct of the Diocese, and (ii) the Diocese willfully or intentionally violates its continuing obligations under the Non-Settling Insurer Insurance Policies. In addition, any such claim will not be automatically allowed; the Diocese may defend against such claim.

9.8    **Insurance Neutrality.** Other than as expressly provided in this Section, no provision of this Plan shall diminish or impair the right of any Insurer to assert any defense to any Insurance Claim. That the Trust is liquidating and paying/reserving monies because of the Abuse Claims shall not be construed to diminish any duty of any Insurer under any Insurance Policy to provide Insurance Coverage to the Diocese for Abuse Claims. The duties and obligations, if any, of the Non-Settling Insurers under each Non-Settling Insurer's Insurance Policy shall not be impaired, altered, reduced or diminished by: (a) the discharge granted to the Debtor under the Plan under Section 1141(d) of the Bankruptcy Code, (b) the exonerations, exculpations and releases in the Plan or (c) the Channeling Injunction.

9.9    **Judgment Reduction.** In connection to any action by the Trust to enforce Insurance Claims regarding an Insurance Policy issued by a Non-Settling Insurer, if any Insurer obtains a judicial determination or binding arbitration award that, it would be entitled to obtain a sum certain from a Settled Insurer because of a claim for contribution, subrogation, indemnification, or other similar claim against a Settled Insurer for such Settled Insurer's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of such Settled Insurer for any Claims released or resolved under any settlement agreement with a Settled Insurer, the Diocese, the Trustee or Participating Party, as applicable, shall be deemed to have reduced its judgment or Claim against, or settlement with, such other Insurer to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against such Settled Insurer. To make sure such a reduction is accomplished, such Settled Insurer shall be entitled to assert this Section as a defense to any action against it brought by any other Insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect such Settled Insurer and the Released Parties under a settlement agreement with a Settled Insurer from any liability for the judgment or Claim. If a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against a Settled Insurer, such Claim may be asserted as a defense against the Trust or Diocese in any litigation of Insurance Claims (and the Trust or Diocese may assert the legal and equitable rights of such Settled Insurer in response thereto); and to the extent such a Claim is found to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Trust, the Diocese or Participating Party shall be reduced dollar for dollar by the amount so determined. The Bankruptcy Court shall retain nonexclusive jurisdiction to determine the amount, if any, of any judgment reduction under this

Section. In addition, any court of competent jurisdiction may determine the amount, if any, of any judgment reduction under this Section.

## SECTION X
## SETTLED INSURERS AND PARTICIPATING PARTIES

**10.1    Settlement Agreements**. Each Settlement Agreement shall comply and be consistent with the provisions of this Plan and, in particular, without limitation, the provisions of this Section X. Upon satisfaction of the conditions precedent to any Settlement Agreement becoming effective, including the Confirmation Order and the order approving the Settlement Agreement becoming a Non-Appealable Order, any Settlement Agreement will be fully binding on the Settled Party, the Trust, the Unknown Abuse Claims Trust, the Participating Parties, the Reorganized Debtor, the Committee, the Abuse Claimants, and parties in interest, and any of the foregoing Persons' successors.

**10.2    Settlement Payments**. Each Participating Party and Settled Insurer will pay to the Trust the sums set forth in each applicable Settlement Agreement within the time set forth in such Settlement Agreement.

**10.3    Effect Under Non-Settling Insurer Insurance Policies.** The Debtor's and Participating Party's contributions are being made in respect of the uninsured or underinsured exposure of the Debtor and the Participating Parties for Abuse Claims and, to the extent required under applicable law, to satisfy self-insured retentions or deductibles under Non-Settling Insurer Insurance Policies.

**10.4    Post-Effective Date Approval**. After the Effective Date, upon consent of the Trustee, a Person may become a Settled Insurer or a Participating Party if the Bankruptcy Court, after notice and hearing, approves the Settlement Agreement between, *inter alia*, the Person and the Trustee. After the Effective Date, the Trustee shall have the exclusive authority to seek approval of such a Settlement Agreement. Upon the Bankruptcy Court's entry of a Non-Appealable Order approving such Settlement Agreement, Exhibit E and/or Exhibit F, as appropriate, shall be amended by the Trustee to include such Person. The Bankruptcy Court's retained jurisdiction to approve an agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such an agreement.

**10.5    Effect Of Post-Effective Date Settlement Agreements**. Any Person that enters into a Settlement Agreement with the Trustee after the Effective Date which has been approved by a Non-Appealable Order shall have all of the rights, remedies and duties of a Participating Party or a Settled Insurer under this Plan notwithstanding that such Person originally may have been a Non-Settling Insurer or may not have been a Participating Party under any provision of the Plan on the Effective Date. Such rights, remedies and duties shall include the terms and conditions of this Plan including the Channeling Injunction provided for in Section XIII.

**10.6    Debtor and Trust Waiver and Release of Estate's Causes of Action Against Participating Parties and Settled Insurers.** In consideration of the contributions and other consideration to be provided by each Participating Party and Settled Insurer, the Debtor and Trust,

46

as applicable, irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge such Participating Party and Settled Insurer from any Causes of Action of the Estate against any Participating Party or Settled Insurer, or the property thereof, such release to be effective upon the Effective Date. Notwithstanding the above, to preserve coverage under any Non-Settling Insurer's Insurance Policies, Abuse Claimants specifically reserve, and do not release, any claims they may have against the Diocese, the Reorganized Debtor, or any Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extracontractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled under the Plan and the Trust Distribution Plan. The Abuse Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any Participating Party for any Abuse that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the Reorganized Debtor, any Participating Party and/or any Settled Insurer or are fully adjudicated, resolved, and subject to a Non-Appealable Order, but recourse is limited as described above.

   **10.7   Additional Documentation; Non-Material Modifications.** From and after the Effective Date, the Trustee, the Unknown Abuse Claims Trustee, the Reorganized Debtor, and the Participating Parties are authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements in this Plan without further Order of the Bankruptcy Court. Also, the Trustee, the Reorganized Debtor, and the Participating Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement in this Plan, without Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 4 Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made under this Section shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

   **10.8   Non-Settling Insurers Unaffected.** The rights and obligations of Non-Settling Insurers and Co-Defendants shall be unaffected by this Section.

**SECTION XI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

   **11.1   Debtor's Funding of Plan.** On the Effective Date, the Debtor shall make all payments and effectuate all transfers required to be performed on the Effective Date pursuant to this Plan, including by transferring the Trust Assets due on the Effective Date to the Trust on the Effective Date.

47

**11.2    Transfer of Real Property and Reversionary Interests**. On the Effective Date, the Debtor shall take all steps necessary to effectuate transfer of ownership to the Trust of all Transferred Real Estate. On the Effective Date, the Diocese shall also take all steps necessary to effectuate transfer of all reversionary interests in the Transferred Real Estate if any portion of the properties are leased, sold, or subject to an option for lease or sale on or before the Trust Termination Date (as that term is defined in the Trust Documents).

**11.3    Preservation of Causes of Action**. The Trustee, on behalf of the Trust, shall retain the Trust's Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, the Bankruptcy Court. The Trustee, on behalf of the Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any such Causes of Action, subject to the requirements of the Bankruptcy Code. To the extent the Committee is the named plaintiff in any Cause of Action vested in the Trust, the Trustee may be substituted as the named plaintiff without additional notice to the parties in such Cause of Action.

**11.4    Reorganized Debtor's Officers, Directors and Senior Management.** In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the persons proposed to serve as the officers, directors and senior management of the Reorganized Debtor on and after the Effective Date are set forth on Exhibit H.

**11.5    Closing.** Closing will be conducted at the offices of Zeisler & Zeisler, P.C., or at such other location designated by the Committee, including remotely, as soon as reasonably practicable following the Effective Date for the Diocese and the Participating Parties to execute and deliver the Plan Documents and completing those actions necessary for the Reorganized Debtor and the Participating Parties to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date. As soon as practicable after conditions in Section 12.1 have been satisfied or waived under Section 12.2, the Diocese shall file notice of the Closing and the occurrence of the Effective Date.

**11.6    Obligations of the Reorganized Debtor and Participating Parties.** The Reorganized Debtor and the Participating Parties will:

(a)    In the exercise of their respective business judgment, review all Claims filed against the Estate except for Abuse Claims and, if advisable, object to such Claims;

(b)    After the Effective Date, not object to any Abuse Claims. Despite the foregoing, the Reorganized Debtor shall timely provide the Abuse Claims Reviewer with information regarding Abuse Claims as may be requested by the Abuse Claims Reviewer;

(c)    Fulfill the Diocese's obligations under the Insurance Policies issued by the Non-Settling Insurers and under applicable non-bankruptcy law, with the Diocese's reasonable attorneys' fees, costs and expenses, if any, incurred in doing so to be

paid by the Non-Settling Insurers and/or the Trust, as provided under the Insurance Policies, this Plan, or the Trust Documents, as applicable;

(d)    Honor the Diocese's obligations arising under any settlement agreement approved by the Bankruptcy Court; and,

(e)    Perform all of their obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

**11.7    Objections to Claims.** Objections to a Claim (except for Abuse Claims) as to which no objection is pending as of the Effective Date, must be filed by the Claims Objection Deadline, provided that the Reorganized Debtor may request extensions of the Claims Objection Deadline, or of any Bankruptcy Court approved extensions thereof, by Filing a motion with the Bankruptcy Court. A motion seeking to extend the deadline to object to any Claim is not an amendment to the Plan. No party in interest other than the Trustee may object to a Class 4 Claim. No party in interest other than the Unknown Abuse Claims Trustee may object to a Class 5 Claim. The process and deadlines for any objections to Abuse Claims are as set forth in the Trust Distribution Plan or the Unknown Abuse Claims Trust Distribution Plan.

**11.8    Provisions Governing Distributions.**

(a)    **Distribution Only to Holders of Allowed Claims.** Except as otherwise provided in the Plan, distributions under this Plan and the Plan Documents will be made only to the holders of Allowed Claims and in the case of Abuse Claims, pursuant only to the Plan and the Trust Documents or Unknown Abuse Claims Trust Documents, as applicable. Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim will receive no distribution otherwise provided to the Claimants under this Plan or the Plan Documents.

(b)    **Transmittal of Distributions.** Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be made under this Plan, Confirmation Order, Trust Documents, or Unknown Abuse Claims Trust Documents, as applicable, to Abuse Claimants that opt to not litigate will be made by the Trustee or Unknown Abuse Claims Trustee, as applicable, and distributions to all other Claimants will be made by the Reorganized Debtor. Distributions to Abuse Claimants will be made (a) to the client trust account for attorneys of record of Abuse Claimants, (b) if the Abuse Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, Trustee, or Unknown Abuse Claims Trustee to the mailing address in the schedules filed by the Debtor in this Case. Distributions to other Claimants will be made by wire or first class United States mail, postage prepaid, (a) to the client trust account for attorneys of record

of the Claimant, (b) if the Claimant does not have an attorney of record, to the latest mailing address in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, to the mailing address in the schedules filed by the Debtor in this Case. If a Claimant's distribution is not mailed or is returned to the Reorganized Debtor, Trustee, or Unknown Abuse Claims Trustee because of the absence of a proper mailing address, the Reorganized Debtor, Trustee, or Unknown Abuse Claims Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having not found a correct mailing address. The Trustee or the Unknown Abuse Claims Trustee, as applicable, shall have no liability to an Abuse Claimant because of distributions made to the client trust account of an Abuse Claimant's attorney.

(c)     **Timing of Distributions.** Unless otherwise agreed by the Reorganized Debtor, Trustee, or Unknown Abuse Claims Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument. Any Claimant otherwise entitled to an undeliverable distribution and that does not, within thirty (30) days after a distribution is returned to the Trustee, Unknown Abuse Claims Trustee, or Diocese as undeliverable, or is deemed to be an undeliverable distribution, provide the Trustee or Diocese with a written notice asserting its claim to that undeliverable distribution and setting forth a current, deliverable address will be deemed to waive any claim to such undeliverable distribution and will be forever barred from receiving such undeliverable distribution or asserting any Claim against the Reorganized Debtor, the Trust, the Trustee, the Unknown Abuse Claims Trust, the Unknown Abuse Claims Trustee, or their property. Any undeliverable distributions not claimed under this Section will become available to distribute to other Claimants or be retained by the Reorganized Debtor under the Plan. Nothing in the Plan requires the Reorganized Debtor, the Trust, the Trustee, the Unknown Abuse Claims Trust, or the Unknown Abuse Claims Trustee to attempt to locate any Claimant whose distribution is undeliverable.

(d)     **Time Limit on Negotiation of Instruments**. If an instrument delivered as a distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such distribution, and it shall become cash available to the Trustee for any Trust purpose, the Unknown Abuse Claims Trustee for any Unknown Abuse Claims Trust purpose, or the Reorganized Debtor, as the case may be.

(e)   **Form of Distributions.** Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtor or Trustee, by a check by first class mail, postage prepaid or wire transfer.

(f)   **No Professional Fees or Expenses.** No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor, or the Trustee regarding any Claim except as specified in this Plan or the Trust Documents.

**11.9   Reservation of Rights to Object to Claims Other Than Abuse Claims.** Unless a Claim is expressly described as an Allowed Claim under the Plan, or otherwise becomes an Allowed Claim before the Effective Date, upon the Effective Date, the Reorganized Debtor shall be deemed to have a reservation of any rights, interests and objections of the Debtor to any Claims and motions or requests for the payment of or because of Claims, whether administrative expense, priority, secured or unsecured (but not Abuse Claims), whether under the Bankruptcy Code, other applicable law or contract. Subject to the Claims Objection Deadline, the Debtor's failure to object to any Claim in the Case shall be without prejudice to the Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

**11.10   Service of Objections.** An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) under Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Case.

**11.11   Determination of Claims.** From and after the Effective Date, any Claim (except for Abuse Claims) as to which a Proof of Claim or motion or request for payment was timely filed in the Case or deemed timely filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated under (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties with no Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery regarding such Claim, filed by the Diocese or any other party in interest on or before any applicable deadline for Filing such objection or application regarding such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied under the Plan. Nothing in this Section shall be or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157. Notwithstanding the foregoing, no party in interest other than the Trustee or Unknown Abuse Claim Trustee, as applicable, may object to an Abuse Claim.

**11.12    No Distributions Pending Allowance.** No payments or distributions will be made regarding all or any part of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Non-Appealable Order, and the Disputed Claim has become an Allowed Claim; provided, however, that if only a portion of such Claim is an Allowed Claim, the Reorganized Debtor may, in their discretion, make a distribution because of the part of such Claim that is an Allowed Claim.

**11.13    Claim Estimation.** To effectuate distributions under the Plan and avoid undue delay in the administration of the Case, the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court under Section 502(c) of the Bankruptcy Code, estimating or limiting, because of a Disputed Claim, the amount of (i) property that must be withheld from or reserved for distribution purposes because of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose allowed under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation under Section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan. Notwithstanding the foregoing, no party in interest except the Trustee may seek to estimate a Class 4 or Class 9 Claim and no party in interest except the Unknown Abuse Claim Trustee may seek to estimate an Unknown Abuse Claim.

**11.14    Setoffs.** The Diocese may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made under the Plan because of such Allowed Claim, the Claims, rights and Causes of Action of any nature that the Diocese may hold against the holder of such Allowed Claim not otherwise waived, released or compromised under the Plan; provided, however, that neither such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Diocese of any such Claims, rights and Causes of Action that the Diocese possesses against such holder.

**11.15    No Interest on Claims.** Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese and a holder of a Claim and approved by an Order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order, Trust Agreement, or Unknown Abuse Claims Trust Agreement interest shall not accrue on or be paid on any Disputed Claim regarding the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**11.16    Withholding Taxes.** The Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Diocese may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and

certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**11.17   Closing of the Case.** As soon as practicable after the Effective Date, when the Diocese deems appropriate, the Diocese will seek authority from the Bankruptcy Court to close the Case under the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case shall, whether or not specified therein, be without prejudice to the right of the Diocese, the Trustee, Unknown Abuse Claim Trustee, or any other party in interest to reopen the Case for any matter over which the Bankruptcy Court or the U.S. District Court for the District of Connecticut has retained jurisdiction under this Plan. Any order closing this Case will provide that the Bankruptcy Court or the U.S. District Court for the District of Connecticut, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

**11.18   No *De Minimis* Distributions.** Notwithstanding anything to the contrary in this Plan, no cash payment of less than $100 will be made by the Reorganized Debtor, the Trustee, or Unknown Abuse Claim Trustee, as applicable, to any Holder of an Allowed Claim. No consideration will be provided in lieu of the *de minimis* distributions not made under this Section. Allowed Claims entitled to a distribution of less than $100 shall continue to accrue until the distribution because of such Claim will be $100 or more.

**11.19   Manner of Cash Payments.** Cash payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Trustee or Unknown Abuse Claim Trustee, as applicable, or at the Trustee's or Unknown Abuse Claim Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign Claimants may be paid, at the Trustee's or Unknown Abuse Claim Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

## SECTION XII
## CONDITIONS PRECEDENT

**12.1   Conditions to Effectiveness.** The Effective Date will occur when each of the following conditions have been satisfied or waived under Section 12.2:

(a)    The Bankruptcy Court shall have entered a Non-Appealable or Non-Appealable Orders approving all settlement agreements involving the Participating Parties and Settled Insurers (for agreements executed before the Confirmation Date) and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to each party, and no stay of such Orders shall be in effect;

(b)    the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Committee and no stay of such Order shall be in effect;

(c)     The Unknown Abuse Claims Trustee and Debtor have signed the Unknown Abuse Claims Trust Agreement;

(d)     The Trustee and Debtor have signed the Trust Agreement; and

(e)     The Debtor, the Participating Parties (if applicable), and the Settled Insurers (if applicable) have made the transfers to the Trust described in Section X and XI.

**12.2    Waiver of Conditions.** Any condition in Section 12.1 may be waived by the mutual written consent of the Committee, the Debtor and the Participating Parties.

**12.3    Non-Occurrence of Effective Date.** Subject to further order of the Bankruptcy Court, if the Effective Date does not occur within ninety (90) days of entry of a Non-Appealable Order confirming the Plan, the Plan shall become null and void. A statement shall be filed with the Court within three (3) Business Days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

## SECTION XIII
## EFFECTS OF PLAN CONFIRMATION AND DISCHARGE

**13.1    Discharge.**

(a)     Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date under Section 1141(d) of the Bankruptcy Code, the Diocese will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor, or the Debtor's Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of this Case, and including all Claims and Debts based upon or arising out of an Abuse Claim and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan.

(b)     Abuse Claimants specifically reserve, and do not release, any claims they may have against the Diocese or any Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards

will be handled under the Plan and the Trust Distribution Plan. The Abuse Claims will not be released or enjoined as against the Diocese or any Participating Party for any Abuse that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, any Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to a Non-Appealable Order, but recourse is limited as described above.

(c)     Abuse Claimants and the Trust shall be permitted to name the Diocese or any Participating Party in any proceeding to resolve whether the Diocese or any Participating Party has liability for Abuse Claims and the amount of any such liability, solely for the purpose of obtaining insurance coverage from Non-Settling Insurers. The discharge hereunder does not apply to, and shall not limit in any way the obligations of Non-Settling Insurers to defend and pay, the Diocese's or any Participating Party's liability for Abuse Claims under Non-Settling Insurer Insurance Policies.

**13.2     NOTHING CONTAINED IN THIS PLAN SHALL CONSTITUTE A RELEASE OF ANY ABUSE CLAIM AGAINST A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLED INSURER; A SUCCESSOR OR PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; AND THE HOLY SEE.**

**13.3     FOR AVOIDANCE OF DOUBT, EXCEPT AS REQUIRED BY THE INSURANCE POLICIES OF NON-SETTLING INSURERS, THE DEBTOR MAY ELECT NOT TO DEFEND ANY ABUSE LITIGATION THAT IS AUTHORIZED TO BE PROSECUTED AGAINST THE DEBTOR PURSUANT TO THIS PLAN AND NO JUDGMENT OBTAINED AGAINST THE DEBTOR IN SUCH ABUSE LITIGATION CAN BE EXECUTED AGAINST THE REVESTED ASSETS OR FROM ANY ASSSETS ACQUIRED BY THE REORGANIZED DEBTOR SUBSEQUENT TO THE EFFECTIVE DATE.**

**13.4     SCOPE OF DISCHARGE.**

**SECTION 12.1 DOES NOT APPLY TO (A) THE OBLIGATIONS OF ANY NON-SETTLING INSURERS FOR ANY CLAIMS; (B) THE OBLIGATIONS ARISING UNDER ANY SETTLEMENT AGREEMENT BETWEEN THE DEBTOR, ANY PARTICIPATING PARTY OR ANY SETTLED INSURER APPROVED BY THE BANKRUPTCY COURT (INCLUDING THE DEBTOR'S INDEMNIFICATION OBLIGATIONS, IF ANY), WHICH ARE NOT AND WILL NOT BE DISCHARGED; (C) THE PERFORMANCE BY THE REORGANIZED DEBTOR OF ANY AND ALL OBLIGATIONS DUE TO THE NON-SETTLING INSURERS UNDER THEIR INSURANCE POLICIES WITH RESPECT TO ANY ABUSE CLAIM; (D) A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLED INSURER; (E) A SUCCESSOR OR**

**PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; AND (F) THE HOLY SEE.**

**13.5   POSTPETITION ABUSE CLAIMS.**

**EXCEPT TO THE EXTENT PROVIDED FOR IN A SETTLEMENT AGREEMENT WITH A PARTICIPATING PARTY OR A SETTLED INSURER, ABUSE CLAIMS ARISING OR OCCURRING AFTER THE PETITION DATE WILL NOT BE DISCHARGED, RELEASED, IMPAIRED AGAINST THE DEBTOR OR A PARTICIPATING PARTY, OR THE SUBJECT OF THE CHANNELING INJUNCTION OR SETTLED INSURER INJUNCTION.**

**13.6   Assets Vest Free and Clear.** Under Sections 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Revested Assets on the Effective Date shall be free and clear of all Liens, Claims, and interests of Creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions imposed by the Plan or the Confirmation Order.

**13.7   Continued Existence of Reorganized Debtor.** The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date as separate entities under the applicable laws of the State of Connecticut, with all the powers of a not for-profit, non-stock member corporation having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**13.8   EXCULPATION AND LIMITATION OF LIABILITY.**

**EXCEPT AS EXPRESSLY PROVIDED IN THIS PLAN, NONE OF THE EXCULPATED PARTIES WILL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF A CLAIM, ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RELATED PARTIES, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CASE, INCLUDING THE EXERCISE OF THEIR RESPECTIVE BUSINESS JUDGMENT AND THE PERFORMANCE OF THEIR RESPECTIVE FIDUCIARY OBLIGATIONS, THE PURSUIT OF CONFIRMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN, THE TRUST OR THE UNKNOWN ABUSE CLAIMS TRUST, EXCEPT LIABILITY FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE (PROVIDED HOWEVER THE DIOCESE WILL BE DISCHARGED FROM ANY SUCH LIABILITY FOR SUCH ACTS OR OMISSIONS OCCURRING PRIOR TO THE CONFIRMATION DATE) OR, EXECEPT AS PROVIDED BELOW, ANY CAUSES OF ACTION ARISING FROM OR RELATED TO DENIALS OF COVERAGE OR**

COVERAGE DEFENSES RAISED BY NON-SETTLING INSURERS, AND IN ALL RESPECTS, SUCH PARTIES WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN OR IN THE CONTEXT OF THE CASE. FOR THE AVOIDANCE OF DOUBT, THIS SECTION AND THE DEFINITION OF "EXCULPATED PARTIES" SHALL NOT, DIRECTLY OR INDIRECTLY, INURE TO OR FOR THE BENEFIT OF (I) A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLED INSURER, (II) A SUCCESSOR OR PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE, (III) THE HOLY SEE, OR (IV) ANY NON-SETTLING INSURER. IF THE TRUST ASSERTS ANY CLAIM THAT THE DIOCESE HAS BREACHED DUTIES OR OBLIGATIONS UNDER ANY NON-SETTLING INSURER INSURANCE POLICIES RESULTING IN A LOSS OF COVERAGE, IT SHALL GIVE THE DIOCESE NOTICE AND AN OPPORTUNITY TO CURE ANY ALLEGED BREACH, AND IN ANY EVENT, THE DIOCESE SHALL NOT BE LIABLE FOR ANY ALLEGED BREACH RESULTING IN A LOSS OF COVERAGE EXCEPT TO THE EXTENT THAT (I) THE BREACH RELATES TO POST-EFFECTIVE DATE CONDUCT OF THE DIOCESE, AND (II) THE DIOCESE WILLFULLY OR INTENTIONALLY FAILS TO COMPLY WITH ITS CONTINUING OBLIGATIONS UNDER THE NON-SETTLING INSURER INSURANCE POLICIES. IN ADDITION, ANY SUCH CLAIM WILL NOT BE AUTOMATICALLY ALLOWED; THE DIOCESE WILL HAVE THE RIGHT TO DEFEND AGAINST SUCH CLAIM. PARTICIPATING PARTIES, SETTLED INSURERS, THE REORGANIZED DEBTOR, THE TRUST, THE TRUSTEE, THE UNKNOWN ABUSE CLAIMS TRUST, THE UNKNOWN ABUSE CLAIMS TRUSTEE, THE FUTURE CLAIMANT REPRESENTATIVE, THE MEDIATOR, THE SPECIAL MEDIATOR AND PROFESSIONALS EMPLOYED BY THE FOREGOING SHALL NOT HAVE ANY LIABILITY TO ANY GOVERNMENTAL ENTITY OR INSURER ON ACCOUNT OF PAYMENTS MADE TO AN ABUSE CLAIMANT, INCLUDING BUT NOT LIMITED TO LIABILITY UNDER THE MEDICARE SECONDARY PAYER ACT.

13.9    EFFECTIVE DATE INJUNCTIONS.

ON THE EFFECTIVE DATE, THE INJUNCTIONS PROVIDED FOR IN THIS PLAN SHALL BE DEEMED ISSUED, ENTERED, VALID AND ENFORCEABLE ACCORDING TO THEIR TERMS. THE INJUNCTIONS SHALL BE PERMANENT AND IRREVOCABLE AND MAY ONLY BE MODIFIED BY THE BANKRUPTCY COURT.

13.10    CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLED INSURERS.

(a)    APPLICABILITY. THIS SECTION 13.10 IS ONLY APPLICABLE TO PARTICIPATING PARTIES AND SETTLED INSURERS.

(b)    **IN CONSIDERATION OF THE UNDERTAKINGS OF THE PARTICIPATING PARTIES AND SETTLED INSURERS, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DEBTOR OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PARTICIPATING PARTIES, SETTLED INSURERS AND THE DEBTOR OR THE TRUSTEE, AND THE PROTECTIONS AFFORDED THE PARTICIPATING PARTIES AND SETTLED INSURERS, AND PURSUANT TO SECTIONS 105, 363 AND 1123 OF THE BANKRUPTCY CODE AND SUBJECT TO THE PROVISIONS OF THE PLAN AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN:**

1.    **ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST; AND**

2.    **ALL PERSONS OR ENTITIES THAT HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIM (INCLUDING ALL DEBT HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER) ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM, INCLUDING:**

(i)    **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY PARTICIPATING PARTY, SETTLED INSURERS THEIR RESPECTIVE PREDECESSORS, SUCCESSORS, AND ASSIGNS, OR THEIR RESPECTIVE EMPLOYEES, OFFICERS, AND DIRECTORS, OR AGAINST THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLED INSURER;**

(ii)    **ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM ANY PARTICIPATING PARTY OR SETTLED INSURER OR FROM THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLED INSURER, WITH RESPECT TO ANY SUCH CHANNELED CLAIM, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY PARTICIPATING PARTY OR SETTLED INSURER;**

      (iii)    **CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND AGAINST ANY PARTICIPATING PARTY, OR SETTLED INSURER OR THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLED INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM (EXCEPT AS PROVIDED IN THE PLAN; AND**

      (iv)    **ASSERTING, IMPLEMENTING OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST: (1) ANY OBLIGATION DUE ANY PARTICIPATING PARTY OR SETTLED INSURER; (2) ANY PARTICIPATING PARTY OR SETTLED INSURER; OR (3) THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLED INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM.**

**13.11 ANY INJUNCTION CONTAINED IN A BANKRUPTCY COURT APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLED INSURER IS INCORPORATED INTO THE PLAN BY REFERENCE, IS DEEMED FULLY SET FORTH IN THIS PLAN AND IS IN ADDITION TO THE CHANNELING INJUNCTION. ANY DIFFERENCES BETWEEN THE CHANNELING INJUNCTION IN SECTION 13.10 AND THE INJUNCTION(S) DEEMED SET FORTH BY THIS SUBPARAGRAPH ARE NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE INJUNCTION(S) INCORPORATED HEREIN AND CONTAINED IN SUCH AGREEMENT.**

**13.12 NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES OR SETTLED INSURERS" PROVIDES ABSOLUTELY NO PROTECTION TO (I) A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLED INSURER, (II) THE HOLY SEE; (III) ANY ENTITY ON ACCOUNT OF CLAIMS EXCEPTED FROM THE EXCULPATION UNDER SECTION 13.8; AND (IV) ANY NON-SETTLING INSURER.**

**13.13 TO THE EXTENT NOT OTHERWISE ENJOINED IN SECTION 12.10, ASSERTION AND ENFORCEMENT OF CHANNELED CLAIMS, AND ANY ATTEMPT TO ASSERT OR ENFORCE SUCH CLAIMS, BY ANY ENTITY, AGAINST A PARTICIPATING PARTY OR SETTLING INSURER IS HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED.**

**13.14 NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING  PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLED INSURERS" IS NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE RIGHTS OF ANY**

ABUSE CLAIMANT TO COMMENCE OR PROSECUTE AN ABUSE CLAIM AGAINST THE DEBTOR OR A PARTICIPATING PARTY PROVIDED THAT SUCH COMMENCEMENT OR PROSECUTION IS SUBJECT TO THE TERMS AND CONDITIONS OF THE DEBTOR'S DISCHARGE, THE TRUST AGREEMENT, THE TRUST DISTRIBUTION PLAN, THE UNKNOWN ABUSE CLAIM TRUST AGREEMENT, AND THE UNKNOWN ABUSE CLAIM TRUST DISTRIBUTION PLAN.

ABUSE CLAIMANTS SPECIFICALLY RESERVE, AND DO NOT RELEASE, ANY AND ALL CLAIMS THAT THEY MAY HAVE AGAINST THE DIOCESE OR ANY PARTICIPATING PARTY THAT IMPLICATE COVERAGE UNDER ANY NON-SETTLING INSURER'S INSURANCE POLICIES, BUT RECOURSE IS LIMITED TO THE PROCEEDS OF THE NON-SETTLING INSURER'S INSURANCE POLICIES AND ALL OTHER DAMAGES (INCLUDING EXTRA-CONTRACTUAL DAMAGES), AWARDS, JUDGMENTS IN EXCESS OF POLICY LIMITS, PENALTIES, PUNITIVE DAMAGES AND ATTORNEY'S FEES AND COSTS THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS BECAUSE OF THEIR CONDUCT CONCERNING INSURANCE COVERAGE FOR, OR DEFENSE OR SETTLEMENT OF, ANY ABUSE CLAIM, AND ANY SUCH JUDGMENTS OR AWARDS WILL BE HANDLED IN ACCORDANCE WITH THE PLAN AND THE TRUST DISTRIBUTION PLAN. THE ABUSE CLAIMS WILL NOT BE RELEASED OR ENJOINED AS AGAINST THE DIOCESE OR ANY PARTICIPATING PARTY FOR ANY ABUSE THAT MAY BE COVERED UNDER ANY NON-SETTLING INSURER'S INSURANCE POLICIES UNTIL SUCH CLAIMS ARE SETTLED WITH THE DIOCESE, ANY PARTICIPATING PARTY AND SUCH NON-SETTLING INSURER OR ARE FULLY ADJUDICATED, RESOLVED, AND SUBJECT TO A NON-APPEALABLE ORDER, BUT RECOURSE IS LIMITED AS DESCRIBED ABOVE.

ABUSE CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR ABUSE CLAIMS AND THE AMOUNT OF ANY SUCH LIABILITY, SOLELY FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS. THE DISCHARGE HEREUNDER DOES NOT APPLY TO, AND SHALL NOT LIMIT IN ANY WAY THE OBLIGATIONS OF NON-SETTLING INSURERS TO DEFEND AND PAY, THE DIOCESE'S OR ANY PARTICIPATING PARTY'S LIABILITY FOR ABUSE CLAIMS UNDER NON-SETTLING INSURER INSURANCE POLICIES.

13.15   SETTLED INSURER INJUNCTION.

IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLED INSURERS, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DEBTOR OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE SETTLED INSURERS AND THE DEBTOR OR THE TRUSTEE, AND THE PROTECTIONS AFFORDED THE SETTLED INSURERS, AND PURSUANT TO

SECTIONS 105, 363 AND 1123 OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS OR ENTITIES (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX, AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIM HOLDERS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS) ARE PERMANENTLY ENJOINED AND BARRED FROM ASSERTING AGAINST A SETTLED INSURER ANY CLAIM (INCLUDING, WITHOUT LIMITATION, ANY INSURANCE COVERAGE CLAIM OR EXTRACONTRACTUAL CLAIM) OR INTEREST OF ANY KIND OR NATURE WHATSOEVER ARISING FROM OR RELATING IN ANY WAY TO (i) ANY ABUSE CLAIM OR (ii) ANY OF THE SETTLED INSURER POLICIES OR (iii) ANY CLAIM AGAINST ANY SETTLED INSURER FOR CONTRIBUTION, INDEMNITY, DEFENSE, SUBROGATION, OR SIMILAR RELIEF THAT ARISES DIRECTLY OR INDIRECTLY FROM ANY CLAIM AGAINST THE DEBTOR OR ANY PARTICIPATING PARTY.

NOTHING CONTAINED IN THIS SECTION IS INTENDED TO AFFECT, DIMINISH OR IMPAIR ANY INJUNCTIONS CONTAINED IN AN AGREEMENT BETWEEN THE DEBTOR OR THE TRUSTEE AND ANY SETTLED INSURER. SUCH INJUNCTIONS ARE INCORPORATED HEREIN BY REFERENCE AND ARE DEEMED FULLY SET FORTH HEREIN.

13.16   TERM OF INJUNCTIONS OR STAYS AND CONFIRMATION OF SETTLEMENTS WITH PARTICIPATING PARTIES AND SETTLED INSURERS.

ALL INJUNCTIONS AND/OR STAYS PROVIDED FOR IN THIS PLAN, THE INJUNCTIVE PROVISIONS OF SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND ALL INJUNCTIONS OR STAYS PROTECTING PARTICIPATING PARTIES AND ANY SETTLED INSURER THAT HAS PURCHASED ITS INSURANCE POLICY OR POLICIES IN A SECTION 363 SALE, ARE PERMANENT AND WILL REMAIN IN FULL FORCE AND EFFECT FOLLOWING THE EFFECTIVE DATE AND ARE NOT SUBJECT TO BEING VACATED OR MODIFIED. DEBTOR'S SETTLEMENT AGREEMENTS, IF ANY, WITH THE SETTLED INSURERS, AND THE PARTICIPATING PARTIES PREVIOUSLY AUTHORIZED BY THE BANKRUPTCY COURT ARE HEREBY AFFIRMED AND ANY OBLIGATIONS OF DEBTOR WITH RESPECT TO SUCH SETTLEMENT AGREEMENTS ARE EXCEPTED FROM THE DEBTOR'S DISCHARGE AND SHALL BE ASSUMED BY THE REORGANIZED DEBTOR AND TRUSTEE, AS APPLICABLE, ON THE EFFECTIVE DATE.

13.17   RELEASE OF AVOIDANCE RIGHTS AGAINST PARTICIPATING PARTIES AND SETTLED INSURERS.

ON THE EFFECTIVE DATE, ALL AVOIDANCE RIGHTS, INCLUDING THOSE ARISING UNDER SECTIONS 544, 547, 548, 549, 550, AND 553 OF THE BANKRUPTCY CODE, AGAINST EACH OF THE PARTICIPATING PARTIES AND SETTLED

**INSURERS AND THE DEBTOR AND REORGANIZED DEBTOR SHALL BE DEEMED SETTLED, COMPROMISED, AND RELEASED BY THIS PLAN.**

**13.18   RELEASE OF CLAIMS AGAINST PARTICIPATING PARTY OR SETTING INSURER.**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE REORGANIZED DEBTOR PURSUANT TO SECTION XIV, OBLIGATIONS UNDER ANY SETTLEMENT AGREEMENT AND CLAIMS EXCEPTED FROM EXCULPATION AND DISCHARGE UNDER SECTION 13.2 AND 13.8, AS OF THE EFFECTIVE DATE, THE DEBTOR, REORGANIZED DEBTOR AND THE ESTATE WAIVE, RELEASE AND DISCHARGE ANY AND ALL CLAIMS OR CAUSES OF ACTION OF EVERY KIND AND NATURE THAT DEBTOR, REORGANIZED DEBTOR, OR THE ESTATE HAVE OR MAY HAVE AGAINST A PARTICIPATING PARTY OR SETTLED INSURER, INCLUDING AVOIDANCE RIGHTS, AND ANY CLAIM THAT SUCH PARTICIPATING PARTY OR SETTLED INSURER OR ITS ASSETS ARE A PART OF OR OWNED BY THE DEBTOR OR THE ESTATE. NO SUCH CLAIM WILL SURVIVE THE EFFECTIVE DATE OR BE DEEMED TO BE ASSIGNED TO THE TRUST. WITH RESPECT TO ANY RELEASES IN A BANKRUPTCY COURT-APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLED INSURER, NOTHING CONTAINED IN THIS PLAN IS INTENDED TO AFFECT, DIMINISH OR IMPAIR SUCH RELEASES.**

**13.19   Pension Plan**. No provision in the Plan, Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtor, the Catholic Entities, or any other party, in any capacity, from any liability or responsibility to any Person regarding the Pension Plans under any law, governmental policy, or regulatory provision. The Pension Plans shall not be enjoined or precluded from enforcing any such liability or responsibility because of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims against the Debtor), the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Case. The Trust shall not have any liability to any Person on account of the Pension Plans, including liability as a member of a "Controlled Group" as defined in 29 U.S.C. § 1301(a)(14)(A) or on any other basis.

As of the Effective Date, the Reorganized Debtor shall assume and continue the Pension Plans to the extent of its obligations under the Pension Plans and applicable law. Notwithstanding the foregoing, the Reorganized Debtor reserves all of its rights under the Pension Plan. For the avoidance of doubt, any claims asserted by any beneficiary of the Pension Plan shall be reinstated and shall remain with the same priority and validity as before the Petition Date.

## SECTION XIV

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**14.1     Assumed Employee and Retiree Benefit Plans.** To the extent not previously assumed, all employee and retiree benefit plans to which the Debtor are a party will be deemed assumed by the Reorganized Debtor on the Effective Date.

**14.2     General; Assumed if Not Rejected.** Subject to the requirements of Section 365, all executory contracts and unexpired leases of the Debtor not rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtor. In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the Non-Appealable Order resolving such dispute.

**14.3     Claims for Contract Rejection.** All proofs of claim regarding Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for filing Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Non-Appealable Order, or such Claims will be forever barred.

## SECTION XV
## NON-MONETARY COMMITMENTS

**15.1     Non-Monetary Commitment to Healing and Reconciliation.** To further promote healing and reconciliation, and to continue its efforts to prevent Abuse and other injury to children from occurring in the Diocese in the future, the Committee requests the Diocese agree that it will undertake the commitments in Exhibit G attached hereto and incorporated herein. The Diocese must inform the Committee which commitments it will adopt at least seven (7) days before the first date set for the hearing on approval of the Disclosure Statement.

## SECTION XVI
## MISCELLANEOUS PROVISIONS

**16.1     Retention of Jurisdiction.** Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date:

(a)     Except as otherwise stated in this Plan or in the Confirmation Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, to further, or in connection with this Plan, including the following:

1.      The determination of objections to Disputed Claims; the determination of requests for payment of Claims entitled to priority under Section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

2.      The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

3.      The compelling of the Diocese and/or a Participating Party to cooperate with the Trust as required under this Plan;

4.      The granting of relief in aid of this Plan and the Plan Documents including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, contempt or other sanctions) to protect the Reorganized Debtor, the Participating Parties, the Settled Insurers, and the Released Parties from actions prohibited under this Plan or the Plan Documents;

5.      Amendments to and modifications of this Plan;

6.      Subject to the limitations and exclusions described above, the determination of any and all applications, adversary proceedings, and contested or litigated matters pending on the Effective Date;

7.      Allowance of post-confirmation fees provided for in the Plan;

8.      The approval of a settlement agreement whereby a Entity, including a Non-Settling Insurer, may become a Participating Party or Settled Insurer and whereby the Bankruptcy Court may appoint a future claims representative and provide for treatment of future claims; and

9.      The closing of this Case.

**16.2    Remand of Removed Actions and Relief from Automatic Stay/Discharge.** On the Effective Date and without further order of the Bankruptcy Court or the District Court, (a) all actions removed by the Debtor or any other Co-Defendant during the Case are remanded to the Court from which they were removed and (b) such actions are not subject to the automatic stay or the injunction in Bankruptcy Code Section 524(a)(2). Nothing herein is intended to affect, diminish or impair those provisions of this Plan that prohibit execution of any judgment against the Reorganized Debtor's Revested Assets or assets the Reorganized Debtor acquire after the Effective Date.

**16.3    Modification of Plan.** The Committee reserves the right, under the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Committee may, upon order, amend or modify this Plan

under Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**16.4    Severability.** If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted, unless such term or provision is inconsistent with the intent of the Committee, in which case the Plan may be unilaterally withdrawn by the Committee. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted under this Section, is valid and enforceable under its terms. In the event of a successful collateral attack on any provision of this Plan (*i.e.*, an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Diocese, the Participating Parties, the Settled Insurers, the Non-Settling Insurers, the Trustee, the Unknown Abuse Claims Trustee, the Committee, all Claimants, all Creditors, and all other parties in interest.

**16.5    Headings.** The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**16.6    Notices.** All notices or requests to the Reorganized Debtor in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

If to the Debtor or Reorganized Debtor:

> Rev. Peter J. Langevin, S.T.B., Ph.L.
> Chancellor
> Diocese of Norwich
> The Chancery
> 201 Broadway
> Norwich, CT 06360
> (860) 887-9294 x235

With a copy to:

> Ice Miller LLP
> 1500 Braodway, Suite 2900
> Attn:   Louis T. DeLucia
>             Alyson M. Fiedler
> Telephone: (212) 835-6312
> Email: Louis.DeLucia@icemiller.com

Alyson.Fiedler@icemiller.com

*-and-*

Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Attn:   Patrick M. Birney
           Andrew A. DePeau
           Annecca H. Smith
Telephone: (860) 275-8275
Email:  pbirney@rc.com
           adepeau@rc.com
           asmith@rc.com

If to the Trustee:

With a copy to:

If to the Unknown Abuse Claims Trustee:

With a copy to:

**16.7     Notices to Claimants.** All notices and requests to an Entity holding any Claim will be sent to them at the last known address listed for such Entity with the Bankruptcy Court or with the Debtor's Claims Agent, or to the last known address of their attorney of record. The holder of a Claim may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtor, the Trustee, and the Unknown Abuse Claims Trustee. Any Entity entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtor, the Trustee, and the Unknown Abuse Claims Trustee with such Person's or Entity's current address for notice purposes. The Reorganized Debtor, the Trustee, and the Unknown Abuse Claims Trustee will have no obligation to attempt to locate a more current address if any notice proves to be undeliverable to the most recent address provided to the Reorganized Debtor, the Trustee, and the Unknown Abuse Claims Trustee.

**16.8     Post-Confirmation Court Approval.** Any action requiring Bankruptcy Court, U.S. District Court or state court approval after the Effective Date will require the Entity seeking

such approval to file an application, motion, or other request with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a Non-Appealable Order approving such action before the requested action may be taken. The Entity filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the court, on the Reorganized Debtor, the Committee, the Trustee, and the Unknown Abuse Claims Trustee by first-class mail, electronic mail, ECF, overnight courier, facsimile, or hand delivery. Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request. If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing. If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

**16.9    Election Under Section 1129(b) of the Bankruptcy Code.** The Committee requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Section (a)(8) thereof, are met regarding the Plan. In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not have as an element of it an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

**16.10    Consummation of the Plan.** The Committee reserves the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

**16.11    Exemption from Transfer Taxes.** Under Section 1146(a) of the Bankruptcy Code, Trustee's, Debtor's or Reorganized Debtor's delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring before or after the Confirmation Date , including any deeds, bills of sale or assignments executed with any sale or disposition of assets contemplated by this Plan (*i.e.*, the Properties), shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

**16.12    Waivers.** Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

**16.13    Setoffs, Recoupments, and Defenses.** Except for the Sections of the Plan about the Abuse Claims, nothing in the Plan shall constitute a waiver or release by the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee of any rights of setoff or recoupment, or of any defense, they may have regarding any Claim (including rights under Section 502(d) of the Bankruptcy Code). Except as otherwise provided in the Plan or in the Confirmation Order or in agreements previously approved by a Non-Appealable Order, the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee may, but will not be required to, set off against any Claim or any distributions regarding such Claim, any of the Claims, rights and Causes of Action of any

nature that the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of any distribution hereunder or any other action or omission of the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee, nor any provision of the Plan, shall constitute a waiver or release by the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee, as applicable, of any such Claims, rights and Causes of Action that the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Unknown Abuse Claims Trustee, as applicable, may possess against such holder.

**16.14   Compromise of Controversies.**

(a)   **Bankruptcy Court Approval of Settlements**. In consideration for the classification, distributions and other benefits provided under the Plan, the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved under the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each compromise and settlement provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination under the standards of Bankruptcy Rule 9019 that such compromises and settlements are in the best interests of the Debtor and the Estates.

(b)   **Settlement with Participating Parties and Settled Insurers.** Specifically included within the Bankruptcy Court's approval of compromises and settlements of Claims and controversies is the Bankruptcy Court's approval of the agreements with Participating Parties and Settled Insurers. If a conflict exists between the Plan and such agreements, the agreements control such conflict. Such agreements contain the protections and benefits afforded the Participating Party and Settled Insurer, as well as the rights and obligations of the parties thereto, to the extent of any conflict with the Plan. Such agreements bind the Trust.

**16.15   Withdrawal or Revocation of the Plan.** The Committee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Entity, or to prejudice in any other manner the rights of the Committee, whether one or more, or any other entity in further proceedings involving the Committee and specifically shall not modify or affect the rights of any party under any prior orders of the Bankruptcy Court.

**16.16   Default.** Except as otherwise provided in the Plan or in the Confirmation Order, if the Reorganized Debtor, a Participating Party, a Settled Insurer, or the Trustee shall default in the performance of any of their respective obligations under the Plan or under the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant

under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one Claim shall not be an event of default regarding any other Claim.

**16.17   Governing Law.** Except when federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan or under the Plan Documents shall be governed by and construed and enforced under the laws of the State of Connecticut without giving effect to the principles of conflicts of laws.

**16.18   Reservation of Rights.** If the Plan is not confirmed by a Non-Appealable Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Case are and will be reserved in full. Any concessions or settlement reflected, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

**16.19   Controlling Documents.** To the extent any provision of a settlement agreement with a Participating Party or Settled Insurer is inconsistent with this Plan, such settlement agreement, as applicable, shall control.

**16.20   Successors and Assigns.** The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in interest affected thereby and their respective successors, heirs, legal representatives and assigns.

**16.21   Direction to a Party.** On and after the Effective Date, the Trust, the Unknown Abuse Claims Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any Lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**16.22   Certain Actions.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), under applicable non-bankruptcy law, with no requirement of further action by the officers of the Debtor.

**16.23   Rounding of Fractional Numbers.** All fractional numbers, including payments or distributions under the Plan, Trust Documents, and Unknown Abuse Claims Trust Documents shall be rounded (up or down) to the nearest whole number.

**16.24   Dissolution of the Committee.** On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Case, which shall remain in full force and effect according to their terms, provided that such parties shall have a right to be heard regarding any (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses under Section 503(b) of the Bankruptcy Code for making a substantial contribution in the Case.

**16.25   Saturday, Sunday or Legal Holiday.** If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**SECTION XVII**
**RECOMMENDATIONS AND CONCLUSION**

The Committee strongly believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Creditors holding Claims with recoveries significantly greater than any available alternatives

Dated at Bridgeport, Connecticut, this 28th day of February, 2023.

THE OFFICIAL COMMITTEE OF
UNSECUREDCREDITORS FOR THE
NORWICH ROMAN CATHOLIC DIOCESAN
CORPORATION

By: */s/ Stephen M. Kindseth*
Eric A. Henzy (ct12849)
Stephen M. Kindseth (ct14640)
Daniel A. Byrd (ct31151)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, CT 06605
Telephone: (203) 368-4234
Email: ehenzy@zeislaw.com
        skindseth@zeislaw.com
        dbyrd@zeislaw.com