## EXHIBIT A

**TRUST AGREEMENT AND TRUST DISTRIBUTION PLAN**

# TRUST AGREEMENT

This Trust Agreement (this "**Trust Agreement**"), dated as of _____ __, 2023, and effective as of the Confirmation Date, is entered in accordance with the *Official Committee of Unsecured Creditors' Plan of Reorganization* dated February __, 2023 (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by The Norwich Roman Catholic Diocesan Corporation (the "**Diocese,**" also known as the "**Debtor**" or the "**Settlor,**" in its capacity as settlor of the Trust), on the one hand, and ____ as trustee (together with any successor serving in such capacity, the "**Trustee**") and the Trust Advisory Committee, who are the individuals identified in Exhibit 2 (together with any successors serving in such capacity, the "**TAC**"), on the other hand;

## **RECITALS**

(A)     The Diocese has reorganized or will reorganize under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (JJT) (Bankr. D. Conn) (the "**Chapter 11 Case**").

(B)     The Plan and the Confirmation Order in the Chapter 11 Case provide, among other things, for the creation of the Trust.

(C)     This Trust Agreement is deemed executed by the Confirmation Order to implement the Plan and to create the Trust (the "**Trust**") for the exclusive benefit of the holders of Class 4 Claims.

(D)     The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(E)     The Plan and Confirmation Order provide that, on the Effective Date and continuing thereafter until fully funded by the Diocese in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3) shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or their Affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Channeled Claims and as provided in Section 1.3.

**NOW, THEREFORE**, it is hereby agreed as follows:

---

[1]  All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Trust Distribution Plan (as defined in Section 1.2 below).

# ARTICLE 1.
## AGREEMENT OF TRUST

**Section 1.1** *Creation and Name.* Diocese as Settlor hereby creates a trust known as the "**NRCD Abuse Claim Trust**" which is the Trust provided for and referred to in the Plan. The Trustee may transact the business and affairs of the Trust in the name of the NRCD Abuse Claim Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust. The Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto, including the Trust Distribution Plan as defined in Section 1.2 (collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust. The Trustee is hereby authorized to execute and file a Certificate of Trust with the Connecticut Secretary of State.

**Section 1.2** *Purposes.* The purposes of the Trust are: (i) to assume all liability for the Channeled Claims, except for Unknown Abuse Claims and other Channeled Claims related to such Unknown Abuse Claims; (ii) to administer the Class 4 Claims; and (iii) to make Distributions to holders of Class 4 Claims, in accordance with the Trust Distribution Plan attached hereto as **Exhibit 1** (the "**Trust Distribution Plan**"). In connection therewith, the Trust shall hold, manage, protect and monetize the Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below). All Class 4 Claims shall be resolved exclusively in accordance with the Trust Distribution Plan.

**Section 1.3** *Transfer of Assets.* Pursuant to the Plan, the Debtor and any Participating Parties or Settled Insurers shall pay all funds to the Trust by wire transfer or otherwise effectuate the transfers of assets required under the Plan. The Trust will receive and hold all right, title and interest in and to the funds transferred (the "**Aggregate Settlement Consideration**" and together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**Trust Assets**"). The Aggregate Settlement Consideration shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other person or entity, other than as provided in the Channeling Injunction with respect to Channeled Claims. The Debtor or Reorganized Debtor shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Aggregate Settlement Consideration to the Trust.

**Section 1.4** *Acceptance of Assets.* In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Aggregate Settlement Consideration, subject to the terms of the Trust Documents and the Plan Documents. The Trust shall succeed to all of the Diocese and Participating Parties' respective rights, title, and interest, including all legal privileges, in the Aggregate Settlement Consideration and neither the Debtor nor any other person or entity transferring such Aggregate Settlement Consideration will have any

further equitable or legal interest in, or with respect to, the Trust Assets, including the Aggregate Settlement Consideration, or the Trust.

(b)     Except as otherwise provided in the Plan, Confirmation Order or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled Claims that the Debtor or the Reorganized Debtor have or would have had under applicable law.

(c)     No provision herein or in the Trust Distribution Plan shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)     Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or other terms of the Plan or Confirmation Order.

(e)     In this Trust Agreement and the Trust Distribution Plan, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5     _Receipt of Proceeds._

The proceeds of any recoveries from any litigation or claims of the Trust (including the Actions) will be deposited in the Trust's accounts and become the property of the Trust.

Section 1.6     _Beneficiaries._

(a)     The Trust is established for the benefit of the holders of Class 4 Claims (the "**Beneficiaries**").

(b)     The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including without limitation, the Trust Distribution Plan.

Section 1.7     _Jurisdiction._ The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided however, the courts of the State of Connecticut, including any federal court located therein, shall also have jurisdiction over the Trust only if and to the extent the Bankruptcy Court cannot exercise or properly abstains from exercising jurisdiction over the Trust.

Section 1.8     _Privileged and confidential information._

The transfer or assignment of any information subject to an attorney-client or similar privilege to the Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust and (b) they are vested solely in the Trustee and not in the Trust, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other

professionals) who has been engaged by, represents, or has represented any holder of a Channeled Claim.

Section 1.9     *Relation-back election.*

Upon request of the Trustee, the Settlor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.10     *Employer identification number.*

Upon or in anticipation of establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.11     *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the Trust Distribution Plan, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the Trust Distribution Plan.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1     *Powers.*

(a)     The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

(b)     The Trustee is and shall act as the fiduciary to the Trust Assets in accordance with the provisions of the Trust Documents. The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter

permitted under the laws of the State of Connecticut. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Trust Documents, including, but not limited to, the Trustee's powers and authority in respect of the interpretation, application of definitions and rules of construction set forth in the Plan to the fullest extent set forth therein, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtor with respect to the Aggregate Settlement Consideration in its capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)    Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(d)    Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

(i)    supervise and administer the Trust in accordance with the Trust Documents, including the Trust Distribution Plan;

(ii)    receive and hold the Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(iii)    invest the monies held from time to time by the Trust in accordance with Section 3.2;

(iv)    sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

(v)    enter into leasing, financing or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(vi)    determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making Distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(vii)    establish accounts and reasonable reserves within the Trust, in her/his discretion, to be necessary, prudent or useful in administering the Trust;

(viii)    sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, however nothing herein shall be deemed to either (a) affect, limit or expand any party's rights to sue or otherwise commence a case or proceeding against a trustee in a case under chapter 11 of the Bankruptcy Code or (b) allow any party asserting a Class 4 Claim, Unknown Abuse Claim and/or Channeled Claim to commence any action against the Trustee or the Trust with respect to such claim;

(ix)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, which may be those formerly retained by the Committee, and

delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(x)      pay reasonable compensation and reimbursement of expenses to any of the Trust's employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires;

(xi)      compensate the TAC members for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xii)      compensate the Trust's professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Trust Documents;

(xiii)      execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xiv)      timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xv)      require, in respect of any distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xvi)      resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the MMSEA (as defined in the Plan) in accordance with the Plan; provided, however, that for claims where there is an open chapter 7 bankruptcy case, such lien resolution is subject to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and provided further, however, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

(xvii)      register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.6 below and the terms of the Plan;

(xviii)      enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xix)      in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xx)      delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment

advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xxi)   delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of the non-cash Trust Assets;

(xxii)   initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust;

(xxiii)   enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) or any Attorney of any Beneficiary, upon such terms as the Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the Trust Distribution Plan;

(xxiv)   take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents; and

(xxv)   except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of Connecticut.

(e)   The Trustee shall have the power to (i) authorize the commencement or continuation of a lawsuit by a Class 4 Claimant against the Diocese and/or Participating Parties in accordance with the Trust Distribution Plan (a "**Litigation Claim**"), and (ii) enter into any settlement that causes an Insurer to become a Settled Insurer (an "**Insurance Settlement**") or an Catholic Entity or other Person to become a Participating Party (a "**PP Settlement**"), provided however, the powers set forth in this Section 2.1(e) shall in each case be subject to the provisions of the Trust Documents including Sections 5.13, 5.14 and 5.15(a) below.

(f)   The Trustee, in his or her sole discretion, may shall take all actions necessary or advisable for the enforcement of the non-monetary commitments of Diocese with respect to Child Protection as set forth in the Plan and Confirmation Order.

(g)   The Trustee shall consult with the TAC on the matters set forth in in the Trust Documents.

Section 2.2   _Limitations on the Trustee and TAC._

(a)   Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not do or undertake any of the following:

(i)   guaranty any debt;

(ii)   make or enter into any loan of Trust Assets;

(iii)   make any transfer or Distribution of Trust Assets other than those authorized by the Trust Documents;

(iv)   engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(v)    engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement; and

(vi)    engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under section 468B of the Tax Code.

(b)    <u>Insurance Settlements</u>.

Any and all Insurance Settlements entered into by the Trustee shall be subject to the approval of the Bankruptcy Court in accordance with the obligations and standards imposed by Fed. R. Bankr. P. 9019.

(c)    <u>PP Settlements</u>.

No Catholic Entity or other Person may become a Participating Party under a PP Settlement: (1) absent a separate contribution to the Settlement Trust in an amount that the Trustee finds acceptable after taking into account the value of the claims against the Catholic Entity or other Person, and the Catholic Entity's or other Person's ability to pay (from assets and separate insurance) and (2) absent approval of Bankruptcy Court in accordance with the obligations and standards imposed by Fed. R. Bankr. P. 9019.

(d)    <u>Settlements of Transferred Causes of Action</u>.

Any and all compromises and settlements of Transferred Causes of Action (which expressly do not include Transferred Accounts Receivable) entered into by the Trustee shall be subject to the approval of the Bankruptcy Court in accordance with the obligations and standards imposed by Fed. R. Bankr. P. 9019.

(e)    <u>Settlement of Transferred Receivables</u>.

The Trustee may effectuate proposed compromises and settlements of any Transferred Receivable without Bankruptcy Court approval. Notwithstanding the foregoing, if a TAC member dissents from approval of the proposed settlement of a Transferred Receivable and wants the Trustee to seek Bankruptcy Court approval of the proposed settlement, such settlement shall be conditioned upon the approval of the Bankruptcy Court in accordance with the obligations and standards imposed by Fed. R. Bankr. P. 9019.

Section 2.3    *General Administration.*

The Trustee shall act in accordance with the Trust Documents. The Trustee shall establish the location of the principal office of the Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.4    *Accounting.*

The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year, except that the first fiscal year shall run from the Confirmation Date to December 31. The Trustee shall maintain the books and records relating to the Trust Assets and income and

the payment of Trust Operating Expenses and other liabilities of the Trust. The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and satisfaction of all of Trust liabilities.

Section 2.5   *Financial Reporting.*

(a)   Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall file with the Bankruptcy Court the Annual Report.

(b)   All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case.

Section 2.6   *Names and addresses.*

The Trustee shall keep a register (the "**Register**") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Trust Documents. The Trustee may rely upon this Register for the purposes of delivering Distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each Class 4 Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Class 4 Claim holder to the Trustee. The Trustee may deliver Distributions and notices to counsel for any Class 4 Claimant identified in such Beneficiary's proof of claim or proper notice of a name or address change.

Section 2.7   *Transfers of the Trust Assets.*

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

## ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1   *Accounts.*

(a)   The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust, including at the Trustee's discretion a disputed claims trust reserve, with one or more financial depository institutions (each a "**Financial Institution**").

(b)      The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time.

(c)      The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts, including a disputed claim trust reserve, as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for Distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

Section 3.2      *Investment Guidelines.*

(a)      The Trustee may invest the Trust Assets and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

Section 3.3      *Payment of Trust Operating Expenses.*

All Trust operating expenses shall be payable out of the Trust Assets.  None of the Trustee, the TAC, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust operating expense or any other liability of the Trust.

## ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1      *Claims Administration and Distributions.*

The Trust shall fairly and reasonably compensate Class 4 Claims and shall pay up to the full value of such claims, solely in accordance with the Trust Documents, including the Trust Distribution Plan.

14

Section 4.2     _Manner of Payment._

Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or by a disbursing agent retained by the Trust to make Distributions on behalf of the Trust.

Section 4.3     _Delivery of Distributions._

(a)     Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for Distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the Trust Distribution Plan. With respect to each Class 4 Claim approved for payment, Distributions shall be made only after all conditions to the Distribution with respect to each such Class 4 Claim have been satisfied. In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary without interest; provided however, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date. After such date, (i) all unclaimed Distributions shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Abuse Claim of such Beneficiary shall be released, settled, compromised and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Abuse Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution was first made.  The Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b)     In the event the Trust holds cash after paying all Trust Operating Expenses and making all Distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a national recognized charitable organization of the Trustee's choice to the extent economically feasible, which charitable organization shall be independent of the Trustee and, to the extent possible, shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)     Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Abuse Claim if the Trustee determines that the costs of making such Distribution is greater than the amount of the Distribution to be made.

Section 4.4     _Medicare Reimbursement and Reporting Obligations._

(a)     The Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of MMSEA (as defined in the Plan); provided that this shall apply only to Channeled Claims that occurred after December 5, 1980.

(b)     The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to Claimants' counsel, or to the Claimant if such Claimant is acting *pro se*, in respect of any Channeled Claim, the Trustee shall obtain (i) a certification from said Claimant (or such Claimant's authorized decedent's estate representative) that said Claimant has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (ii) that the Claimant indemnifies the Trust for any such obligations.

## ARTICLE 5.
## TRUSTEE

Section 5.1   *Initial Trustee.* The initial Trustee shall be _____.

Section 5.2   *Term of Service, Successor Trustee.*

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)     The Trustee may resign at any time upon written notice to the TAC and filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Trustee may be removed by consent of (i) at least two/thirds (2/3) majority of the TAC or (ii) an order from the Bankruptcy Court, in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard.  Other good cause shall mean gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder.  For the avoidance of doubt, any removal of the Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

Section 5.3      *Appointment of Successor Trustee.*

(a)      In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any successor Trustee, such vacancy shall be filled by the TAC as set forth herein. The TAC will nominate an individual to serve as successor Trustee. If the majority of the TAC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.

(b)      Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

Section 5.4      *Trustee Meetings.*

(a)      **Regular Meeting**.  The Trustee shall hold regular meetings with the TAC not less than quarterly, which may be held at such times and at such places as may be determined from time to time by the Trustee, including remotely.

(b)      **Special Meetings**.  Special meetings of the Trustee with the TAC may be called by the Trustee by giving written notice to the TAC not less than one (1) business day prior to the date of the meeting.  Any such notice shall include the time, place and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)      **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another.  Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(d)      **Waiver of Notice**. Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall

constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trustee meeting need be specified in any waiver of notice.

Section 5.5    *Compensation and Expenses of Trustee.*

The Trustee shall receive compensation from the Trust for his or her services as Trustee. The initial amount of the Trustee's compensation shall be __ and shall be adjusted annually thereafter as reasonably determined by the majority of the TAC.  The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Trustee.  The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6    *Trustee's Independence.*

(a)    The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for or serve as any other professional for Reorganized Debtor or its affiliated persons, or any Non-Settling Insurer. No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Case.

(b)    The Trustee shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)    Persons dealing with the Trust and the Trustee, respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7    *Standard of Care; Exculpation.*

(a)    As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Abuse Claims Reviewer, the TAC, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Trust Indemnified Parties**").

(b)    No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties. None of the provisions of this

Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)      The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(d)      To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

(e)      The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(f)      The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

Section 5.8      _Protective Provisions._

(a)      Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.8.

(b)      In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)      To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(d)      No Trust Indemnified Party shall be personally liable under any circumstances, except for their own willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)      No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)      In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9    *Indemnification.*

(a)      Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of Connecticut, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially

determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)     The Trustee may purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.10     *Bond.*

The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## **ARTICLE 6.**

## **GENERAL PROVISIONS**

Section 6.1     *Irrevocability.*

To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to fund the Trust, and (ii) have any rights or role

with respect to the management or operation of the Trust, or the Trustee's administration of the Trust.

Section 6.2    *Term; Termination.*

     (a)     The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

     (b)     The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Trust because (i) all reasonably expected assets have been collected by the Trust, (ii) all Distributions have been made to the extent set forth in the Trust Distribution Plan, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**"). For the avoidance of doubt, the Dissolution Date shall be no sooner than six months after the dissolution of the Unknown Abuse Claim Trust.

     (c)     Following the dissolution and Distribution of the Trust Assets, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

     (d)     After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until its duties hereunder have been fully performed. The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until Distribution of all the Trust Assets. For purposes of this provision, Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and no further actions are pending or have yet to be brought. At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the final Distribution of the Trust Assets, and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to the Trust without giving Reorganized Debtor the opportunity to take control of such books, records, documents and/or files.

     (e)     Upon termination of the Trust and accomplishment of all activities described in this Trust Agreement, the Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or representatives). The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 6.3    *Outgoing Trustee Obligations.*

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)    execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

(b)    deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)    otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)    irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

Section 6.4    *Taxes.*

(a)    The Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations promulgated under section 468B of the IRC, as amended (the "**QSF Regulations**"), with respect to which Reorganized Debtor shall timely make an election to treat the Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)    The Trustee shall be the "administrator" of the Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations.  The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c)     As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)     The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement. The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement. In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Trust. In no event shall any escheat to any federal, state or local government or any other entity.

Section 6.5     *Modification.*

(a)     Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee and the majority of the TAC and subject to the approval of the Bankruptcy Court; provided however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice on the Bankruptcy Court docket, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to on the Bankruptcy Court docket, subject to any objection by a Beneficiary. Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court.

(b)     Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and

Confirmation Order or (iii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

Section 6.6      *Severability.*

If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 6.7      *Notices.*

Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:

with a copy (which shall not constitute notice) to:

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 6.8      *Successors and Assigns.*

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the TAC and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 6.9      *Limitation on Transferability; Beneficiaries' Interests.*

The Beneficiaries' interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the

holders thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets. Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as Distributions in accordance with the Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 6.10   *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 6.11   *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 6.12   *Headings.* The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 6.13   *Governing Law.*

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Connecticut, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of Connecticut law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust,

and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the TAC set forth or referenced in this Trust Agreement.

Section 6.14    *Settlor's Representative.*

Pursuant to the Trust Documents, the Reorganized Debtor is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action consistent with Reorganized Debtor's obligations under the Trust Documents that is reasonably requested of the Settlor by the Trustee pursuant to the Trust Documents.  Pursuant to the Trust Documents, the Settlor's Representative shall cooperate with the Trustee and the Trust's officers, employees and professionals in connection with the Trust's administration of the Aggregate Settlement Consideration, including, but not limited to, providing the Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Aggregate Settlement Consideration, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, Reorganized Debtor to the extent that the Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request.

Section 6.15    *Independent Legal and Tax Counsel.*

All parties to this Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 6.16    *Waiver of Jury Trial.*

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 6.17    *Effectiveness.*

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 6.18    *Counterpart Signatures.*

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

**SETTLOR:**

The Norwich Roman Catholic Diocesan

Corporation

 By: _____

**TRUSTEE:**


By: _____


**TAC MEMBERS**

**EXHIBIT 1**

**TRUST DISTRIBUTION PLAN**

## TRUST DISTRIBUTION PLAN

1.    **PURPOSE**

The Trust Distribution Plan is to provide for the distribution of funds to Abuse Claimants.  **This protocol does not apply to the distribution of funds to any other creditors, including Unknown Abuse Claimants.**

2.    **DEFINITIONS**

2.1    **Capitalized Terms.**

Capitalized terms used shall have the meanings given them in the Plan or the Bankruptcy Code, unless otherwise defined, and such definitions are incorporated herein by reference.

"**Abuse Claimants**" means, collectively, Persons who hold Class 4 Claims. For the avoidance of doubt, this definition is narrower than the term in the Plan which defines "Abuse Claimants" to include Unknown Abuse Claimants. This definition of Abuse Claimants *expressly excludes Unknown Abuse Claimants*.

"**Abuse Claims**" means, collectively, those Claims classified in Class 4 of the Plan. For the avoidance of doubt, this definition is narrower than the terms in the Plan which defines "Abuse Claim" to include Unknown Abuse Claims. This definition of Abuse Claims *expressly excludes Unknown Abuse Claims*.

"**Late-Filed Abuse Claim**" means an Abuse Claim for which an Abuse Claimant filed a Proof of Claim after the Claims Bar Date and before the Effective Date.

"**Litigation Award**" means a final, non-appealable judgment or verdict determining that the Diocese and/or any Participating Party is/are liable to a Litigation Claimant because of such Litigation Claimant's Abuse Claim.

"**Litigation Claimant**" means any Abuse Claimant whose Abuse Claim the Trustee believes in good faith to be covered, in whole or in part, by policies of insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to liquidate their Abuse Claim under the Plan regarding litigation of Abuse Claims. The Trustee may, but is not required to, consult the Diocese prior to making such a determination.

"**Perpetrator of the Debtor**" Means a person: (1) who was an employee or other agent of the Debtor or any other Participating Party (as defined in the Plan) when such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor or any other Participating Party (as defined in the Plan) was otherwise responsible.

3.    **RULES OF INTERPRETATION AND GENERAL GUIDELINES**

3.1    **Sole and Exclusive Method.**

The Plan and the Trust Agreement contemplate that the Trust will be established for payment of Abuse Claims. The Plan and this protocol shall together be the sole and exclusive method by which an Abuse Claimant (and not an Unknown Abuse Claimant) may seek distribution because of an Abuse Claim against the Debtor. The Plan and the Trust Agreement further contemplate that a separate trust will be established for payment of Unknown Abuse Claims.

### 3.2    Conflict with Plan.

The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this Distribution Plan.

### 3.3    Non-Compensatory Damages and Other Theories of Liability.

In determining the distribution to any Abuse Claimant, punitive damages and damages that can be classified as economic damages that do not compensate the Abuse Claimant for bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. Any distribution to an Abuse Claimant shall be solely because of bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Abuse Claimant.

### 3.4    Withdrawal of Claims.

An Abuse Claimant can irrevocably withdraw an Abuse Claim at any time upon written notice to the Trustee and the Diocese. Once withdrawn, the Abuse Claim may not be reasserted against the Trust (including filing an Unknown Abuse Claim by an Abuse Claimant who withdrew his or her Abuse Claim).

### 3.5    Res Judicata Effect.

The Abuse Claims Reviewer's determination regarding an Abuse Claim shall have no preclusive, res judicata judicial estoppel or similar effect outside of this Case as to any third party. The Abuse Claims Reviewer's determination shall not be used against any Abuse Claimant in any other matter, case or proceeding.

### 3.6    Confidentiality and Privilege.

All information that the Abuse Claims Reviewer receives from any source about any Abuse Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Abuse Claimant (or such Claimant's counsel of record). All information that the Abuse Claims Reviewer received from any Abuse Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the Abuse Claims Reviewer shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

## 4.    ABUSE CLAIMS REVIEWER

_____ is the "Abuse Claims Reviewer" (the "Abuse Claims Reviewer") under the terms of this protocol and an order of the Bankruptcy Court. The Abuse Claims Reviewer shall review each of the Abuse Claims (as and when such Claims may be filed) and, according to the guidelines in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents. The Abuse Claims Reviewer's review as to each Abuse Claimant shall be the final review, subject only to reconsideration as set forth in section 7 below.

The Debtor shall provide electronic copies of all Abuse Proof of Claim forms (including any attachments thereto and as the same may have been amended from time to time) to the Abuse Claims Reviewer.

5.    **PROCEDURE FOR ALLOCATION**
      **AMONG ALLOWED ABUSE CLAIMS**

   5.1    **Proof of Abuse.**

The Abuse Claims Reviewer shall consider all of the facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim. Abuse Claimants may provide supplemental evidence and information to the Abuse Claims Reviewer pursuant to the below procedures.

The Abuse Claims Reviewer may request additional information from an Abuse Claimant. Failure to respond to such request shall not be construed against the Abuse Claimant.

Each Abuse Claimant can submit a written statement (a "**Supplemental Submission**") to the Abuse Claims Reviewer. The Abuse Claims Reviewer shall establish a deadline (the "**Submission Deadline**") of no less than 30 days for Abuse Claimants to submit Supplemental Submissions to the Abuse Claims Reviewer. Notice of the Submission Deadline (the "**Supplement Notice**") shall provide, among other things, the method for delivery of Supplemental Submissions. All notices by the Abuse Claims Reviewer to Abuse Claimants, including the Supplement Notice, shall be sent to each Abuse Claimant's counsel of record via email and first-class mail at the address(es) provided in the applicable Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 10 pages, single sided, double spaced with 12-point font; provided, however, that an Abuse Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 10 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the Abuse Claims Reviewer determines, in his sole discretion, there is good cause for delay. The Abuse Claims Reviewer, in his sole discretion, may allow an Abuse Claimant to exceed the page limit for the Supplemental Submission. Abuse Claimant may submit a Supplemental Submission to the Abuse Claims Reviewer, instead of a written statement, via video that is no more than ten minutes. An Abuse Claimant may submit either a written or video Supplemental Submission, but not both. A video submission may only record the Abuse Claimant and may record no other person, including an agent or representative of an Abuse Claimant; provided, however, a video may include recording the Abuse Claimant's deposition if such recording is not more than ten minutes. If an Abuse Claimant declines to submit a written or video Supplemental Submission, such declination shall not be held against the Abuse Claimant or be used as grounds to discount

the claim. **The medium of the Supplemental Submission (whether in writing or by
video) shall not advantage or disadvantage an Abuse Claimant.**

**5.2**     <u>**Guidelines for Allocation for Allowed Abuse Claims.**</u>

     **(a)**     **Initial Evaluation.**

The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven
by credible evidence that the Abuse was perpetrated by a Perpetrator of the Debtor.
The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the
Trustee if he determines that the Abuse Claimant has not met the burden of proof
and will provide the Abuse Claimant a reasonable opportunity to provide facts
and/or legal basis to establish that the burden of proof has been met. The Debtor
and any Participating Party (other than a Settled Insurer) must cooperate with any
information or discovery request by an Abuse Claimant related to the Abuse Claims
Reviewer's determination that the Abuse Claimant has not met the burden of proof.
On request of the Trustee, the Abuse Claims Reviewer shall evaluate the Claim
under Section 5.2(d) to let the Trustee reserve sufficient amounts to pay the Abuse
Claimant if the Abuse Claims Reviewer determines that the Abuse Claimant has
met the burden of proof.

     **(b)**     **Released Abuse Claims.**

As for any Abuse Claim filed by an Abuse Claimant who previously released the
Diocese from liability (a "<u>**Releasor**</u>"), the Abuse Claims Reviewer shall assess
whether such Releasor has proven by credible evidence that:

         (a)   such Releasor was not represented by counsel when such release
            was executed (the "<u>**Release Date**</u>"); and

         (b)     (i) any payment received by such Claimant in consideration
            of the release was unjust under the circumstances; or
            (ii) such Releasor was incapacitated or disabled as of the
            Release Date; or
            (iii) such Releasor was fraudulently induced to execute the
            release.

A Releasor must submit a written statement (no longer than 10 pages, single sided,
double spaced with 12-point font) regarding an Abuse Claim asserted after such
Abuse Claimant executed a release in favor of the Diocese. The Abuse Claims
Reviewer shall award zero (0) points for any applicable Releasor that fails to submit
such statement. Releasors who must submit such statement are listed on Schedule
__ hereto. The deadline to submit such statement shall be the Submission Deadline
provided upon notice by the Abuse Claims Reviewer to the Releasor. The Trustee
shall deduct the amount received by any Releasor in exchange for the release from
such Claimants award. Any Releasor that fails to provide written evidence of the
amount received in exchange for executing such a release within 30 days of a
written request for such information by the Trustee shall be awarded zero (0) points.

     **(c)**     **Evaluation Factors**

Each Abuse Claim will be evaluated by the Abuse Claims Reviewer.  Each Claim will be scored on a scale of up to 100 based on these factors:

**(i)      Nature of the Sexual Abuse:**

(1)      Duration;

(2)      Frequency/number of instances;

(3)      Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

(4)      Level or severity of force/violence/coercion/threats;

(5)      Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Debtor);

(6)      Number of Perpetrators of the Debtor that abused the Claimant;

(7)      Physical pain suffered;

(8)      Grooming; and/or

(9)      Additional factors that may be provided by the Claimant.

**(ii)     Impact of Abuse:**

(1)      School behavior problems;

(2)      School academic problems;

(3)      Getting into legal trouble as a minor;

(4)      Loss of faith;

(5)      Damage to family relationships/ interpersonal difficulties;

(6)      Mental health symptoms, including:

a.      Depression;

b.      Suicide Attempt and suicidal ideation;

c.      Anxiety;

d.      Substance abuse;

e.      Sexual acting out;

    f.     Runaway;

    g.     Flashbacks; and/or

    h.     Nightmares; and/or

(7)    Adult and current functioning:

    a.     Criminal record as an adult;

    b.     Underemployment/unemployment;

    c.     Relationship problems

    d.     Substance abuse; and/or

(8)    The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

(9)    Additional factors that may be provided by the Claimant.

The Abuse Claims Reviewer shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes any fraud or misrepresentation.

**(iii)    Additional Factors:**

Level of participation by the Abuse Claimant in public/litigation events related to the Abuse Claims, including but not limited to:

    a.     leadership role in organizations dedicated to helping sexual abuse survivors;

    b.     participation in litigation against the Diocese before the Petition Date;

    c.     participation in criminal proceedings against a Perpetrator of the Debtor;

    d.     testimony at the Suffolk County Grand Jury; and/or

    e.     filing of a lawsuit naming an Other Insured Entity in state court.

**5.3**    There will be no consideration of an Abuse Claimant's claims against any other entity that may be liable for the abuse to the Abuse Claimant.

**5.4**    <u>**Late-Filed Abuse Claims.**</u>

    **(a)**    **Allowance of Late-Filed Abuse Claims.**

A Late-Filed Abuse Claim may be Allowed by the Bankruptcy Court as a Class 4 Claim upon motion by the Abuse Claimant and after due notice and a hearing where the Abuse Claimant establishes their excusable neglect excusing the late filing of their Proof of Claim and the Bankruptcy Court orders that the Late-Filed Abuse Claim shall be treated as timely filed on or before the Claims Bar Date. Unless and until such motion is granted and the Late-Filed Abuse Claim is Allowed as a Class 4 Claim by a Non-Appealable Order, no distribution shall be paid on account of the Late-Filed Abuse Claim as a Class 4 Claim pursuant to the Trust Distribution Plan.

**(b)    Election to be Treated as an Unknown Abuse Claim.**

After the deadline for the return of Ballots, the holder of any Late-Filed Abuse Claim that had not previously elected to be classified and treated as an Unknown Abuse Claimant may still make such election at their sole and absolute discretion upon providing the Abuse Claims Reviewer and the Unknown Abuse Claims Reviewer with written notice of such election delivered on or before the Submission Deadline. If such election is timely delivered by such Late-Filed Abuse Claims shall not be an Allowed Abuse Claim treated pursuant to this Trust Distribution Plan.

**6.    ADJUSTMENTS.**

The Abuse Claims Reviewer shall allocate points or adjust the point total for all Abuse Claimants as follows:

**6.1    No Award for Non-Abuse.**

The Abuse Claims Reviewer shall allocate points only for Abuse Claims, subject to paragraph 3.3 above.  Zero (0) points shall be allocated for any Claim that is not an Abuse Claim.

**6.2    Barred Child Sexual Abuse Claims.**

A "Barred Child Sexual Abuse Claim" means an Abuse Claim arising at a time when the Abuse Claimant was under the age of eighteen (18), and where both: (i) no civil action had been commenced and remained pending on the Petition Date to recover upon such Abuse Claim within thirty (30) years from the date such Abuse Claimant attained the age of eighteen (18); and (ii) the Petition Date (July 15, 2021) occurred more than thirty (30) years from the date such Abuse Claimant attained the age of eighteen (18). The list of Allegedly Barred Child Sexual Abuse Claims is attached as Exhibit __ to the Plan. The Abuse Claims Reviewer shall not consider the legal applicability of the statute of limitations, Conn. Gen. Stat. 52-577d (2018), for any Barred Child Sexual Abuse Claim. The Abuse Claims Reviewer shall reduce the point total allocated for any Barred Child Sexual Abuse Claim by __ %.

**7.    MONETARY DISTRIBUTION.**

The Abuse Claims Reviewer will arrive at a point total for each Abuse Claimant considering the above factors.

The Trustee shall calculate the value of an individual "point" after all Abuse Claims have

been reviewed. The point value will be determined by dividing (a) the total dollars in the amount funded to the Trust for the Abuse Claims by (b) the total of points among the individual Abuse Claims. For example, if there are 50 claimants awarded 10,000 points within a Claimant Pool, with a total settlement fund of $2 million, each point would be valued at $200.

8.  **DETERMINATIONS BY THE ABUSE CLAIMS REVIEWER AND REQUESTS FOR RECONSIDERATION AND APPEAL.**

The Trustee shall notify each Abuse Claimant in writing of the monetary distribution regarding the Abuse Claimant's Claim (the "**Allocated Payment**"), which distribution may be greater or smaller than the actual distribution to be received based on reserves established by the Trustee and the outcome of any reconsideration of claims. The Trustee shall mail this preliminary determination to the Abuse Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Abuse Claimant's filed proof of claim. The Abuse Claims Reviewer's determination shall be final unless the Abuse Claimant makes a timely request for the point award to be reconsidered by the Abuse Claims Reviewer. The Abuse Claimant shall not have a right to any other appeal of the Abuse Claims Reviewer's point award. The Abuse Claimant may request reconsideration of the Abuse Claims Reviewer's point award by delivering a written request for reconsideration to the Abuse Claims Reviewer within 14 calendar days after mailing of the preliminary monetary distribution. The Abuse Claimant, with the request for reconsideration, may submit additional evidence and argument supporting such request upon a showing that such additional information could not have been provided under this protocol. The Abuse Claims Reviewer shall have sole discretion to determine how to respond to the request for reconsideration. The Abuse Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

9.  **PROCEDURE FOR LITIGATION**

    9.1  **Abuse Claims Covered by Non-Settling Insurers**

Attached as Schedule ___ is a non-exclusive list of Abuse Claims and the Non-Settling Insurers who may have coverage obligations with respect thereto.

    9.2  **Notice of Interest in Litigation.**

Abuse Claimants who believe their claim is covered, in whole or in part, by Insurance Policies issued by one or more Non-Settling Insurers must submit to the Trustee written notice ("**Litigation Election Claimants**") of their election to move forward with litigation against the Diocese and/or Participating Parties, under the limitations and provisions of the Plan, by the Submission Deadline. To avoid doubt, all Abuse Claimants may pursue litigation against Co-Defendants without restriction by the Trustee.

    9.3  **Designation as Litigation Claimant.**

The Trustee will confirm which Litigation Election Claimants allege Abuse covered, in whole or in part, by Insurance Policies issued by one or more Non-Settling Insurers ("**Litigation Claimants**"). The Trustee may, but is not required to, consult with the

Diocese before making such a determination. The Trustee shall give written notice to all Litigation Election Claimants whether their claims are covered, in whole or in part, by Insurance Policies issued by one or more Non-Settling Insurers. Litigation Election Claimants may appeal the Trustee's determination to the Bankruptcy Court.

**9.4    Litigation Authorization.**

The Trustee may authorize up to twenty Litigation Claimants per month, at such Litigation Claimants' expense, to pursue their Claims in any court of competent jurisdiction, under the Plan, only to determine any liability that the Diocese and/or any Participating Party may have regarding an Abuse Claim and the amount of that liability. Within sixty days of the Submission Deadline, the Trustee shall, in consultation with the Trust Advisory Committee, prepare a six-month schedule of the claims authorized to begin litigation and provide notice of such schedule to all Litigation Claimants ("**Notice of Litigation Schedule**"). The Trustee shall prioritize claims with the highest valuations according to the Committee's valuation expert, but may consider additional factors such as age of Claimant and legal merits of Claimant's case.

**9.5    Just Cause for Expedition of Litigation.**

Litigation Claimants may, within 14 calendar days of receipt of the Notice of Litigation Schedule, submit a written statement to the Trustee explaining any specific cause requiring earlier authorization of their claims for pursuit of litigation. The Trustee, in consultation with the Trust Advisory Committee, shall review such statements and, if needed, provide an amended Notice of Litigation Schedule to all Litigation Claimants. If the Trustee does not schedule a Litigation Claimant to pursue his or her litigation on the Notice of Litigation Schedule, the Litigation Claimant may request mediation with the Trustee. If the mediation is unsuccessful, the Litigation Claimant may appeal to the Bankruptcy Court for just cause to be authorized to pursue his or her claim against the Diocese and/or Participating Party.

**9.6    Litigation Claims Enhancements.**

To the extent the Trustee enters into a settlement agreement (such settlement, a "**Trust Insurance Settlement**") with any Non-Settling Insurer that covers a Litigation Claimant's Abuse Claim (the policy or policies that cover such Claim(s) are a "**Target Policy**"), such Litigation Claimants shall receive a point enhancement (the "**Claim Enhancement**") to his or her point allocation. The Claim Enhancement shall be payable only from the proceeds of the applicable Trust Insurance Settlement. The Claim Enhancements are independent of one another and are not intended to be cumulative. The Trustee shall reserve sufficient amounts to fund such enhanced payments before distribution of Trust Insurance Settlement proceeds to Abuse Claimants who are not Litigation Claimants.

Claim Enhancements shall be applied as follows:

    a.   A Litigation Claimant shall receive an enhancement of 1.1 times their Allocated Payment if the Trust Insurance Settlement is entered into before the Litigation Claimant files a post-Notice of Litigation Schedule pleading or propounds post-Notice of Litigation Schedule discovery.

    b.   A Litigation Claimant shall receive an enhancement of 1.5 times their Allocated Payment if the Trust Insurance Settlement is entered into after a Litigation

Claimant files a post-Notice of Litigation Schedule pleading or propounds post-Notice of Litigation Schedule discovery but before a post-Notice of Litigation Schedule deposition or interview of the Litigation Claimant by opposing counsel.

c.  A Litigation Claimant shall receive an enhancement of 2 times their Allocated Payment if the Trust negotiates a Trust Insurance Settlement for a Target Policy if the Trust Insurance Settlement is entered into after a post-Notice of Litigation Schedule deposition of the Litigation Claimant by opposing counsel has occurred but before commencement of a trial in such Litigation Claimant's case.

d.  A Litigation Claimant shall receive an enhancement of 3 times their Allocated Payment if the Trust negotiates a Trust Insurance Settlement for a Target Policy if the Trust Insurance Settlement is entered into on or after the first day of a trial in such Litigation Claimant's case.

e.  A Litigation Claimant shall receive an enhancement of 4 times their Allocated Payment if the Trust negotiates a Trust Insurance Settlement for a Target Policy if the Trust Insurance Settlement is entered into after a Litigation Award is entered in favor of the Litigation Claimant in such litigation.

## 9.7    **Withdrawal of Litigation Election.**

A Litigation Claimant may withdraw his or her election to be a Litigation Claimant at any time.

## 9.8    **Withholding of Litigation Claimant's Allocated Payment.**

A Litigation Claimant's Allocated Payment shall be held in reserve by the Trustee until one of the below occur ("**Release Events**").  Following a Release Event, each Litigation Claimant shall receive his or her Allocated Payment (including any enhancement described above).

a.  A court of competent jurisdiction enters a final, nonappealable order determining that the Diocese and/or any Participating Party (as applicable) has no liability on account of such Litigation Claimant's Abuse Claim (any such order, a "**Denial Order**");

b.  The Trust enters into a Trust Insurance Settlement regarding the applicable Target Policy, in which case the Litigation Claimant's Abuse Claim shall be treated as a Channeled Claim under the Plan;

c.  A court enters a Litigation Award, in which case, at the election of the Litigation Claimant: (a) the Litigation Claimant retains the entirety of his or her Litigation Award and the Trustee shall release such Litigation Claimant's Allocated Payment reserve for distribution to other Abuse Claimants and the Litigation Claimant shall not be entitled to (i) any enhancement of his or her award and/or (ii) any Trust Insurance Settlement proceeds; or (b) the Litigation Claimant shall assign his or her Litigation Award to the Trust and participate in all distributions from the Trust with enhancement.  Such election must be made within 30 days of the Litigation Award or the Litigation Claimant shall be

deemed to have elected option (a) of this Paragraph. Notwithstanding the
forgoing, 10% of any Litigation Award, if collected from any Non-Settling
Insurer shall be paid by the Litigation Claimant to the Trust because of costs
and expenses incurred by the Trust in connection with the Litigation Claimant's
claim;

d.   The Litigation Claimant enters into a settlement regarding his or her Abuse
Claim, in which case: at the election of the Litigation Claimant: (a) the
Litigation Claimant retains the entirety of his or her Litigation Award and
Trustee shall release such Litigation Claimant's Allocated Payment reserve for
distribution to other Abuse Claimants and the Litigation Claimant shall not be
entitled to (i) any enhancement of his or her award and/or (ii) any Trust
Insurance Settlement proceeds; or (b) the Litigation Claimant shall assign his
or her settlement to the Trust and participate in all distributions from the Trust
with enhancement.    Such election must be made within 30 days of the
settlement or the Litigation Claimant shall be deemed to have elected option (a)
of this Paragraph. Notwithstanding the forgoing, 10% of any settlement, if
collected from any Non-Settling Insurer, shall be paid by the Litigation
Claimant to the Trust because of costs and expenses incurred by the Trust in
connection with the Litigation Claimant's claim.

If the Trustee, upon consultation with the Litigation Claimant, determines there is no
reasonable risk to the Litigation Claimant's and/or the Trust's ability to recover from a
Target Insurer, then the Trustee may, in his or her discretion, release the Litigation
Claimant's Allocated Payment to the Litigation Claimant; provided, however, that if the
Litigation Claimant's and/or the Trust's claim against a Target Insurer is not viable because
of such distribution to the Litigation Claimant, then the Litigation Claimant may not receive
any enhancement of his or her award.