**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.    21-20687 (JJT) |
| THE NORWICH ROMAN CATHOLIC ) | |
| DIOCESAN CORPORATION,[1] ) | Chapter    11 |
| ) | |
| Debtor. ) | Re: ECF Nos. 1439, 1440 |
| ) | |

**MEMORANDUM OF DECISION REGARDING OMNIBUS APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES BY THE DEBTOR'S PROFESSIONALS AND OMNI RELATED TO THE DISCHARGE OF EPIQ CORPORATE RESTRUCTURING**

**I.    INTRODUCTION**

The matter before this Court is the review and allowance of payment by Epiq Corporate Restructuring, LLC ("Epiq") of the fees and expenses claimed by Ice Miller LLP ("IM"), Robinson & Cole LLP ("R+C"), B. Riley Advisory Services ("B. Riley") (and, collectively with IM and R+C, "Debtor's Team"), and Omni Agent Solutions ("Omni") incurred as a result of the termination of Epiq and the transition of its duties and responsibilities as Claims and Noticing Agent for the Chapter 11 Debtor, Norwich Roman Catholic Diocesan Corporation ("Norwich Diocese"), under the terms of an order of this Court dated August 30, 2023 (ECF No. 1412). Epiq was initially approved and appointed by the Court to serve as the Chapter 11 Claims and Noticing Agent on August 20, 2021 (ECF No. 168) after notice and a hearing on that Motion of the Debtor (ECF No. 101). The terms of Epiq's Service Agreement with the Debtor, delineated in the Motion, were customary and consistent with its previous retentions in other Chapter 11

---

[1] The Debtor in this Chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a the Roman Catholic Diocese of Norwich. The last four digits of the Debtor's federal tax identification number are 7373.

cases, except for material provisions related to the maintenance of the confidentiality of the claims and identity of Survivor–Claimants in this case.

The termination of Epiq and its substitution were the consequence of the failure of its automated systems and human quality controls structured to assure such protections. The Court and the parties are fully aware of the events, facts and circumstances relating to the mistaken disclosures of the identity of Survivor–Claimants, which need not be expounded further. Once identified as a material concern by the Debtor and Creditors' Committee, upon a termination notice, Epiq promptly, voluntarily, efficiently, and professionally cooperated in an expeditious transition of its role to Omni as directed by the Court. That transition evoked the expedited efforts, scrutiny, and skills of the Debtor's Team, the Creditors' Committee, Omni, and the Court so as to assure enhanced confidentiality protocols and continuity in the performance of functions related to the administration of the Chapter 11 case. The Court notes that the Debtor's Team professes wide national bankruptcy experience, high capabilities, and effectiveness, and has assured this Court that appropriate case management, staffing, and nonduplicative service can be expected in its performance. The Debtor's Team crafted the Epiq engagement and accordingly could reasonably be expected to address the substitution of Omni for Epiq effectively and efficiently.[2]

A delineation of the material professional tasks performed in the substitution of Epiq assists the Court in its review and scrutiny of the reasonableness of the fees and expenses sought by the Debtor's Team and Omni. They include, but are not limited to, the material consideration

---

[2] The high hourly rates of the Debtor's Team and staff facilitate how readily tasks performed by multiple lawyers and local counsel can result in a significant accumulation of legal fees.

of the nature of the disclosures, the causes and remedial action, the accountability of Epiq, the identification and transition of duties and responsibilities, the enhanced protocols to assure confidentiality, the selection of a substitute Claims and Noticing Agent, and the negotiation of the terms of Epiq's termination and Omni's engagement. Although these tasks are serious and require due care, they do not require deep analytical, strategic, or drafting skills. They require the application of reasonable drafting and logical skills of a practical, experienced, knowledgeable, and efficient bankruptcy case manager to effectuate a repair of case administration machinery and redress. Searching the docket, doing research, extended or multiple conferences, and inventive drafting have but a minor role in these tasks. This dilemma does not present complex legal issues where the high-priced Debtor's Team seemingly needs a minor battalion and local counsel to draft legal pleadings, confer, and attend hearings. The Creditors' Committee, with equal—but lean—capabilities and more profound concerns, seemingly addressed these tasks for a fraction (a mere 15%) of the collective legal fees and expenses of the Debtor's Team; the Creditors' Committee accrued $15,183.20 in attorneys' fees compared to the Debtor's Team's hyperbolized total of $109,784.29 in fees and expenses.

Specifically, the constituent parties here have made the following requests for allowance and payment:

    a. IM seeks an award of fees in the amount of $65,904.25 in attorneys' fees and $447.54 in expenses and for a total award of compensation in the amount of $66,351.79 incurred for professional service rendered during the Application Period, which reflects an adjustment of $22,965.00;

    b. R+C seeks an award of fees in the amount of $36,645.00 in attorneys' fees and $0.00 in expenses for a total award of compensation in the amount of $36,645.00 incurred for professional services rendered during the Application Period, which reflects an adjustment of $7,960.00;

    c. B. Riley seeks an award of fees in the amount of $6,787.50 in professional fees and $0.00 in expenses for a total award of compensation in the amount of $6,787.50 incurred for professional services rendered during the Application Period, which reflects an adjustment of $1,060.50; and

> d. Omni seeks an award of fees in the amount of $33,169.50 in professional fees and $563.18 in expenses for a total award of compensation in the amount of $33,732.68 incurred for professional services sundered during the Application Period, which reflects an adjustment of $0.00.

(ECF No. 1439, p. 9, ¶ 19).

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and (B) ("allowance or disallowance of claims against the estate").

## III. STANDARD OF REVIEW

Under 11 U.S.C. § 330(a)(1), the Court may award:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.

Section 330(a)(2) allows the court to "award compensation that is less than the amount of compensation that is requested." To determine the reasonableness of compensation to be awarded, the Court considers, *inter alia*:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

>(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

"Under Section 330(a), the applicant bears the burden of proof on its claim for compensation. This burden is not to be taken lightly, especially given that every dollar expended on legal fees [usually] results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Nw. Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009) (cleaned up). "Even in the absence of an objection, the bankruptcy court has an independent duty to review fee applications to protect the estate[.]" *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). The fact that fees and expenses here are to be paid by Epiq does not mitigate the Court's duty of scrutiny for reasonableness in order to protect the integrity of the bankruptcy process. Furthermore, pursuant to this duty, "[h]ours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933) and *N.Y. Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

Section 330 applies to fees and expenses accrued by the debtor's estate in the employment of professionals. In this context, it is unclear whether these fees and expenses—which are to be paid by Epiq—can be properly categorized as due from the Chapter 11 estate and arising from the employment of professionals as opposed to fees awarded by the Court against a third-party. In any case, this Court's examination of legal fees to be paid by a third-party is substantially similar to the metrics advanced under Section 330. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186–190 (2d Cir. 2008); *see also*

5

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974) (enumerating factors to consider).[3]

The Second Circuit Court of Appeals has held that the guiding principle of a court's inquiry into the reasonableness of attorneys' fees is to determine the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. The presumptively reasonable fee is determined by multiplying the reasonable number of hours expended by a reasonable rate. *Id*. at 186. In determining the reasonable hourly rate, a "court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to [adequately pursue the desired outcome]." *Id*. at 190. A court may also "consider the complexity of a matter because a reasonable paying client would consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate with the proposed action." *Lilly v. City of New York*, 934 F.3d 222, 231–232 (2d Cir. 2019). Finally, a court's discretion in applying percentage reductions to fee claims also applies under this alternate standard of review. *See N.Y. Ass'n for Retarded Children*, 711 F.2d at 1146.

## IV.    DISCUSSION

Fees or expenses that, in this Court's review and judgment, are unreasonable, unnecessary, excessive, or simply disproportionate to the difficulty, complexity, and uniqueness of the underlying legal challenge should be disallowed in whole or part, as appropriate. Whether

---

[3] The *Johnson* factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fare, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–719.

this Court deploys the tests under Section 330, or the *Johnson* factors, it is not satisfied that the nature of this legal exercise was difficult or that the staffing, research, time expended, and tasks addressed were nonduplicative or necessary, or that the response was proportionate. Further, the rates associated with the Debtor's Team would suggest higher proficiencies and efficiencies in the performance of their duties.

Although the relationship of the fees of the Debtor's Team are significantly out of proportion with those of the Creditors' Committee who pursued a comparable role in this process, the Court is struck by billing entries of the Debtor's Team that evoke unease and the following concerns:

1. Does IM really have to research the authority, duty, and responsibilities of a Notice and Claims Agent?

2. Do several partners in two firms need to weigh in on the obvious concerns and logistics that must be addressed in this transaction?

3. Does the financial advisor have a substantive role other than to summarily confirm how much was paid to Epiq and how much more fees have accrued?

4. Are there genuinely challenging, complex, or novel issues that were negotiated or drafted in order to effectively transition the Notice and Claim Agent services?

5. Could the "moderate lifting" of these tasks be otherwise staffed or addressed in template orders or agreements, by less expensive lawyers, or by one law firm for the Debtor?

6. Why didn't Epiq's subsequent, prompt, and remedial cooperation, coordination, and responsiveness serve to reduce overall fees and expenses incurred?

Although lawyers and even judges might reasonably disagree on the answer to these questions and the weight accorded these concerns to justify reductions, this Court, as Judge and

as a business bankruptcy practitioner of 37 years in innumerable in Chapter 11 cases of all sizes throughout the country, is of the opinion that the aggregate fees of the Debtor's Team are plainly excessive, unnecessary, duplicative, incommensurate, and unreasonable when weighed in this context against the complexity, importance, and nature of the challenge and measured against the facility with which this Court stet the issue, also worked in its redress, and revised the terms of Epiq's termination, Omni's transition, and Omni's retention. Simply put, the fees and expenditures by Debtor's Team, without focus or better staff management seemingly resulted in exaggerated and excessive legal work, overstaffing, inefficiencies, duplications, and disproportionate and unnecessary legal work that cannot be endorsed by this Court, even if Epiq's payment of them does not affect the Chapter 11 estate. The Court's scrutiny here and the temperate exercise of its discretion militate in favor of a further equitable reduction of each of these fees by 20%. Any claimed expenses shall be allowed in full and be paid by Epiq.

As for the fees and expenses sought by Omni, its critical work, expedition, responsiveness, and reasonable collaboration at reasonably modest rates and its deference to the additional concerns of this Court validate its claim and rates as appropriate and beneficial to the Chapter 11 estate and its efficient administration. Accordingly, Omni's fees of $33,169.50 and expenses of $563.18 are allowed for payment in full by Epiq.

## V.    CONCLUSION

Accordingly, and consistent with the ruling and disposition herein, the fees and expenses of the Debtor's Team shall be allowed and paid by Epiq as follows:

IM: $53,081.43 in attorneys' fees

R+C: $29,316.00 in attorneys' fees

B. Riley: $5,430.00 in professional fees

The legal expenses sought by the Debtor's Team are fully allowed for payment by Epiq. Those fees not approved herein, are expressly disallowed and shall be disallowed in any order addressing final fee applications for the Debtor's Team. Any fees allowed and paid by Epiq pursuant to the Applications of the Debtor's Team shall not be the subject of further applications or order of allowance against the Debtor's Chapter 11 estate.

Epiq shall cause the aforesaid fees and expenses to be promptly paid in good funds and shall certify the same upon the docket.

**IT IS SO ORDERED** at Hartford, Connecticut this 19th day of October 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut