## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re:<br><br>The Norwich Roman Catholic Diocesan Corporation,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-20687 (JJT)<br><br>Re: ECF Nos. 1643, 1644, 1658 |

## MEMORANDUM OF DECISION AND ORDER
## DENYING UNKNOWN CLAIMS REPRESENTATIVE'S
## APPLICATION TO EMPLOY ELSAESSER ANDERSON CHTD.

Before the Court is the amended application ("Application," ECF No. 1658) to employ Elsaesser Anderson Chtd. (together with J. Ford Elsaesser, "Elsaesser"), filed by Michael R. Hogan, the Unknown Claims Representative ("UCR") in this Chapter 11 case. For the following reasons, the Application is DENIED.

The UCR was appointed on August 4, 2022 (ECF No. 753). On January 16, 2024, the UCR filed his report and recommendations ("Report," ECF No. 1622). The Court then entered its Order to Show Cause regarding the Report on January 24, 2024 ("Order," ECF No. 1640). The UCR shortly after filed his first application to employ Elsaesser (ECF No. 1644),[2] which was amended by the Application on February 5, 2024. No substantive objections were filed regarding the Application.

---

[1] The Debtor in this Chapter 11 case is The Norwich Roman Catholic Diocesan Corporation a/k/a the Roman Catholic Diocese of Norwich. The last four digits of the Debtor's federal tax identification number are 7373.

[2] Contemporaneous with the first application, the UCR filed an application (ECF No. 1645) to retain Neubert, Pepe & Monteith, P.C. ("Neubert") as local counsel and Douglas S. Skalka of Neubert filed a motion to admit Elsaesser *pro hac vice* (ECF No. 1643).

The Court then held a hearing on the Application on February 8, 2024, and took the

matter under advisement.[3]

Under Section 327(a) of the Bankruptcy Code:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 101(14), in turn, defines "disinterested person" as a

person that:

(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Section 327 is implemented by Rule 2014 of the Federal Rules

of Bankruptcy Procedure, which provides in pertinent part that:

The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

---

[3] The Court assumes familiarity with the Application and the February 8, 2024 hearing on it.

Strictly speaking, Section 327(a) applies to the trustee (here, the Debtor). But the order appointing the UCR (ECF No. 753) specifically stated the UCR could employ attorneys consistent with Section 327. The UCR was also appointed subject to Section 327, and any application for compensation would be made under Section 330. Given the UCR's role in this case, however, it is not merely sufficient that any attorney he employ be a disinterested person with regards to the Debtor, but also to the UCR—a fact acknowledged by the UCR in the Application. Thus, the Court must determine whether the relationship and connections between the UCR and Elsaesser are materially adverse.

In the declaration accompanying the Application, Elsaesser indicates that he has served as lead debtor's counsel in several prior diocesan bankruptcies and is currently serving as counsel to parishes in several pending diocesan bankruptcies. In those cases where Elsaesser served as debtor's counsel, the UCR was the unknown claims representative or the future claims representative.

In contrast to Elsaesser's prior roles, the UCR here stands in the shoes of unknown *creditors*.[4] The involvements of both the UCR and Elsaesser in prior diocesan cases have thus seemed at odds with one another. Moreover, representing the UCR here arguably puts Elsaesser at odds with his role as parish counsel in several other pending bankruptcies. Such representation also breaches the boundaries set by the Rules of Processional Conduct, which exclude an attorney from representing a client where there is a concurrent conflict of interest, including

---

[4] The Court recognizes that parishes in diocesan cases often make claims, but their institutional alignment is squarely with the debtor.

the "a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Conn. Practice Book Rule 1.7(a).[5]

The Court may disqualify an attorney based upon actual or potential conflicts. *See In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998). Disqualification based upon potential conflicts is discretionary; disqualification based upon actual conflicts is mandatory. *See id.* Although Elsaesser may represent the UCR only in this matter, it is evident that he has and will continue to represent various interests adverse to unknown claims in other diocesan cases—cases in which an unknown claims representative may be appointed. *Cf. In re Premier Farms, L.C.*, 305 B.R. 717, 720–21 (Bankr. N.D. Iowa 2003). That alone is at least a potential conflict of interest, if not an actual conflict. Coupled with their prior adverse alignments in related cases, the Court determines that a potential conflict of interest exists here. *See* 11 U.S.C. § 101(14)(C) (person may have materially adverse interest "for any other reason"). Without deciding whether the conflict is also an actual conflict, the Court declines to approve the Application.

The Court recognizes Elsaesser's incomparable experience representing bishops, dioceses, parishes, and other Catholic entities in prominent diocesan bankruptcy cases over time across the country. Elsaesser's capabilities, however, are not the issue before the Court. The issue is what the need of the UCR is given

---

[5] Although Rule 1.7(b) would allow concurrent representation under certain circumstances, Section 327(a) does not.

4

his posture on the proposed plan, his role, and his Report, and whether proposed counsel can satisfy the disinterestedness and professional responsibility mandates and the best interests of the estate and unknown claimants. Elsaesser's deep and historical and current alignment and advocacy for Catholic leadership and institutions and his inevitable and frequent wrestling with unknown claims in myriad Chapter 11 cases is logically antithetical to the needed objectivity, advocacy, and transparency that unknown claimants and their representative need and deserve. Further, the experience, credentials, and scope of responsibilities of the UCR suggests that, as a fiduciary, a former jurist, and expert, he should be, at least initially, able to address the Court's Order in a direct and forthright manner without a major role for legal counsel.[6]

For the foregoing reasons, the Application is DENIED. Because the Court denies the Application, the motion to admit Elsaesser *pro hac vice* is DENIED as moot. The Court will keep the application to employ Neubert under advisement, so as to allow the UCR to decide if he would like to retain Neubert as consulting counsel or to take some other course of action.

IT IS SO ORDERED at Hartford, Connecticut this 9th day of February 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[6] The Court notes that, per information provided by Elsaesser, the UCR has only had counsel in one other diocesan case, *In re The Diocese of Camden, New Jersey*, No. 20-21257 (Bankr. D.N.J.). The Court notes that Elsaesser is not the UCR's counsel in that case. The corollary to this is that the UCR has proceeded effectively without counsel in almost all other diocesan cases in which he has been appointed.