**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>THE NORWICH ROMAN CATHOLIC DIOCESAN CORPORATION,[1]<br><br>Debtor. | Chapter 11<br><br>Case No:  21-20687 (JJT)<br><br>April 20, 2026 |

**FIRST PLAN STATUS REPORT**

The Norwich Roman Catholic Diocesan Corporation (the "Diocese"), by and through its undersigned counsel, hereby submits this first summary status report (this "Status Report") as required under the Court's *Findings of Fact, Conclusions of Law, and Order Confirming the Seventh Amended Joint Chapter 11 Plan of Reorganization Proposed by the Norwich Roman Catholic Diocesan Corporation, the Official Committee of Unsecured Creditors, the Catholic Mutual Relief Society of America, And the Association of Parishes of the Roman Catholic Diocese of Norwich, Connecticut* [Docket No. 2053] (the "Confirmation Order"), and respectfully represents as follows:

**Background**

1. On July 15, 2021 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Court entered the Confirmation Order on June 13, 2025, confirming the *Seventh Amended Joint Chapter 11 Plan of Reorganization Proposed by the Norwich Roman Catholic Diocesan Corporation, the Official Committee of Unsecured Creditors, the Catholic*

---

[1] The Debtor in this chapter 11 case is The Norwich Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Diocese of Norwich.  The last four digits of the Debtor's federal tax identification number are 7373.

*Mutual Relief Society of America, and the Association of Parishes of the Roman Catholic Diocese of Norwich* [Docket No. 1935] (the "Plan").[2]

3.      The Effective Date of the Plan occurred on July 22, 2025 [Docket No. 2065] (the "Effective Date").

4.      The Confirmation Order requires the Diocese to file periodic summary status reports "of the implementation or completion of material provisions or undertakings of the Plan." Confirmation Order at ¶ 57.

### Status Report

5.      The Diocese hereby submits this Status Report for the period of June 13, 2025, through March 31, 2026 (the "Status Period").

**A.  Contributions to the Trust and Unknown Abuse Claims Trust**

6.      During the Status Period, the Diocese, Catholic Mutual, and the other Participating Parties effectuated the contributions to the Trust and the Unknown Abuse Claims Trust contemplated by the Plan:

   a.  The Diocese caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $1,000,000 in accordance with Plan Sec. 7.1(a)(3)(i).

   b.  The Diocese caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $6,763,190 in accordance with Plan Sec. 7.1(a)(3)(ii).

   c.  The Diocese caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $637,663.24 in accordance with Plan Sec. 7.1(a)(3)(iii).

   d.  Oceania caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $7,000,000 in accordance with Plan Sec. 7.1(a)(3)(iv).

   e.  The Association of Parishes caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $2,700,000 in accordance with Plan Sec. 7.1(a)(3)(v).

---

[2] Capitalized terms used but not defined herein shall have such meaning ascribed to them in the Plan.

f.  Catholic Mutual caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $5,300,000 in accordance with Plan Sec. 7.1(a)(3)(vi).

g.  Mercy caused a wire transfer to be made to the Effective Date Escrow Agent in the amount of $50,000 in accordance with Plan Sec. 7.1(a)(3)(vii).

h.  The Diocese caused a transfer to be made to the Trustee in the aggregate amount of savings realized from the Professionals' waiver of 10% of their Allowed Professional Claims in accordance with Plan Sec. 7.1(a)(4).

i.  The Diocese executed and delivered a Promissory Note in the original principal amount of $1,730,000 Dollars due and payable to the Trustee two years after the Effective Date, along with collateral and documents necessary to secure such debt, in accordance with Plan Sec. 7.1(a)(5).

j.  The Diocese transferred the Net Proceeds for sold, and title for unsold, Transferred Real Estate identified in in Exhibit O to the Plan in accordance with Plan Secs. 7.1(a)(6) and 7.3.

k.  The parties have fulfilled their obligations under the Mount St. John Settlement Agreement in accordance with Plan Sec. 7.1(a)(8).

l.  The parties have fulfilled their obligations under the Xavier Settlement Agreement, including by effectuating the closing of the Xavier Property and the transfer of $2,500,000 paid by Xavier to the Trust in accordance with Plan Sec. 7.1(a)(9).

m.  The Diocese transferred $100,000 to the Unknown Abuse Claims Trust in accordance with Plan Sec. 7.1(b) and Unknown Abuse Claims Trust Agreement Sec. 3.4(a).

n.  The Effective Date Escrow Agent [Dkt. No. 2059] and the Trustee and Unknown Abuse Claims Trustee [Dkt. No. 2066] posted bonds in accordance with Plan Sec. 7.4.

o.  The parties have performed their respective obligations under the Mercy Settlement Agreement, St. Bernard Settlement Agreement, Xavier Settlement Agreement, Mount St. John Settlement Agreement, and Catholic Mutual Settlement Agreement.

## B.  Plan Distributions

7.  During the Status Period, the parties complied with their obligations to effectuate Distributions under the Plan as follows:

3

a. The Diocese paid all unpaid Allowed Administrative Claims, excluding Professional Claims, in full in accordance with Plan Sec. 3.1(a).

b. The Diocese paid all unpaid Allowed Professional Claims in accordance with Plan Secs. 3.1(b) and (f), reduced by the Professionals' voluntary 10% waiver of their Allowed Professional Claims, which was contributed to the Trust (*see* ¶ 7(h) herein).

c. The Diocese paid all unpaid Allowed Priority Tax Claims in accordance with Plan Sec. 3.2.

d. Based upon the invoices received from the United States Trustee, the Diocese believes that it has paid all unpaid quarterly fees due to the U.S. Trustee under applicable law in accordance with Plan Sec. 3.3.

e. The Diocese paid all Allowed Class 1 Claims in accordance with Plan Sec. 5.1(c).

f. The Abuse Claims Reviewer has completed his assessment of the Abuse Claims classified in Class 4-A of the Plan to arrive at a Point Total Award in accordance with the protocols in the Trust Distribution Plan and on January 30, 2026, timely provided notice of such Point Total Awards to the Trustee. The Trustee thereafter timely provided notice of each Point Total Award as well as each Initial Distribution that would be paid to each such Abuse Claimant. After the deadline for Requests for Reconsideration expired, the Trustee on March 30, 2026 made the Initial Distributions (aggregating approximately $25 million and does not include Distributions already made to Convenience Claimants classified in Class 4-B of the Plan) to all Abuse Claimants holding Allowed Abuse Claims classified in Class 4-A in accordance with Sec. 5.4(c)(i) of the Plan.

g. The Diocese paid all Allowed General Unsecured Claims in full in accordance with Plan Sec. 5.6(c).

## C. The Diocese's Compliance with Non-Monetary Commitments

8. During the Status Period, the Diocese continued to comply with the Non-Monetary Commitments to Healing and Reconciliation (the "Non-Monetary Commitments") in accordance with Plan Sec. 15.1, including as follows:

a. The Diocese continues to comply with the Diocesan Policies in accordance with Non-Monetary Commitments Sec. B(1).

4

b. The Diocese continues to comply with the Improved Reporting Mechanisms provided in Non-Monetary Commitments Sec. B(4), including, but not limited to, by:

    i. providing a one-click link on the Diocese's website's homepage that provides a phone number and email to which allegations of Abuse can be made (Non-Monetary Commitments Sec. B(4));

    ii. publishing prominent statements urging any Persons subjected to or aware of Abuse by anyone acting in the name of or associated with the Diocese to report such Abuse (Non-Monetary Commitments Sec. B(4)(a));

    iii. complying with mandated reporter statutes and other reporting and investigation requirements (Non-Monetary Commitments Sec. B(4)(c)-(e)); and

    iv. publishing a list of former personnel with an Allegation of Substance of Abuse  of Minors (Non-Monetary Commitments Sec. B(4)(g)).

c. The Diocese maintains a whistle-blower policy in accordance with Non-Monetary Commitments Sec. B(5).

d. The Diocese continues to implement and monitor its safe environments policies and practices in accordance with Non-Monetary Commitments Sec. B(6).

e. The Diocese ordered and displayed the Anti-Abuse Plaques in accordance with Non-Monetary Commitments Sec. B(7).

f. The Diocese continues its efforts to prohibit all individuals communicating on any of the Diocese Parties' behalf from referring to survivors as "alleged" and requiring them to refer to such individuals as "survivors" in accordance with Non-Monetary Commitments Sec. B(8).

g. The Bishop has convened multiple private meetings with survivors upon their request in accordance with Non-Monetary Commitments Sec. C(1).

h. The Diocese sent letters to all Abuse Claimants professing the Diocese's sincere empathy and compassion for the suffering of all survivors, and its commitment to healing and reconciliation, personally signed by the Bishop in accordance with Non-Monetary Commitments Sec. C(2).

i. The Diocese consulted with the TAC and issued a public letter to all Abuse Claimants professing the Diocese's sincere empathy and compassion for the suffering of all survivors, and its commitment to healing and reconciliation,

personally signed by the Bishop and published in accordance with Non-Monetary Commitments Sec. C(3).

j.  The Diocese has confirmed that no past or present credibly accused perpetrators has received honors, awards and other public recognitions of praise in accordance with Non-Monetary Commitments Sec. C(4).

k.  The Diocese continues to comply with the record keeping requirements provided in Non-Monetary Commitments Sec. D(2).

## Conclusion

The foregoing summarizes the implementation and completion of material provisions and undertakings of the Plan during the Status Period.

Dated: April 20, 2026

/s/ *Annecca H. Smith*
**ROBINSON & COLE LLP**
Patrick M. Birney (ct19875)
Annecca H. Smith (ct31148)
One State Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
        asmith@rc.com

- and –

**ICE MILLER LLP**
Louis T. DeLucia (admitted *pro hac vice*)
Alyson M. Fiedler (admitted *pro hac vice*)
1500 Broadway, 29th Floor
New York, NY 10036
Telephone: (212) 824-4940
Facsimile: (212) 824-4982
E-Mail: louis.delucia@icemiller.com
        alyson.fiedler@icemiller.com

*Counsel for the Diocese*

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, a copy of the foregoing was filed electronically, with notice of this filing being sent by email to all Notice Parties by operation of the Court's electronic filing system.  Parties in interest may access this document through the Court's CM/ECF System.

*/s/ Annecca H. Smith*
Annecca H. Smith